## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Brian Walker, as Parent and Natural Guardian of M.W., et al., <br><br>            Plaintiffs, <br><br>       -v- <br><br> The New York State Department of Health, et al., <br><br>            Defendants. | 2:24-cv-6836 <br> (NJC) (LGD) |

## <u>OPINION AND ORDER</u>

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

JURISDICTION ............................................................................................................. 9

FACTUAL BACKGROUND ......................................................................................... 11

    I.    The New York School Immunization Requirements ............................................. 12

    II.    Facts Alleged in the Amended Complaint ........................................................... 16

        A.    DOH's Cancellation of Pediatric Vaccination Records for Plaintiffs' Children ......... 16

        B.    DOH Directive to School Defendants ........................................................... 18

        C.    DOH and School District Notices to Plaintiffs ............................................. 19

        D.    Plaintiffs' Affidavits ................................................................................... 24

    III.    Additional Facts Alleged in Motion to Dismiss Declarations ......................... 27

    IV.    Facts Alleged in the Parties' Submissions on the PI Motion .......................... 30

PROCEDURAL HISTORY ........................................................................................... 31

    I.    Original Complaint and TRO Motion ................................................................. 31

    II.    Amended Complaint and Pending Motions ......................................................... 33

    III.    The Court's Order to Show Cause ................................................................... 37

STANDARDS OF REVIEW ......................................................................................... 38

    I.    Lack of Subject Matter Jurisdiction Under Rule 12(b)(1) ................................ 38

    II.    Lack of Personal Jurisdiction for Insufficient Service of Process Under Rule 12(b)(5) .. 40

    III.    Failure to State a Claim Under Rule 12(b)(6) ................................................. 41

DISCUSSION ............................................................................................................... 42

    I.    Justiciability .......................................................................................................... 42

        A.    Standing and Mootness ................................................................................ 43

            i.    Fourteenth Amendment Due Process Claims ....................................... 44

                1.    Injury in Fact ............................................................................. 44

                2.    Traceability ................................................................................ 46

                    a.    State Defendants ................................................................ 51

                    b.    School Defendants ............................................................. 58

                3.    Redressability .............................................................................. 63

                    a.    Injunctive Relief ................................................................ 65

                    b.    Declaratory Relief ............................................................. 67

            ii.    Education Law Section 3214(3)(c)(1) Claims .................................... 68

            iii.    Mootness ......................................................................................... 71

        B.    Eleventh Amendment Sovereign Immunity ................................................. 73

   i. Claims Against the Department of Health ................................................. 76

   ii. Claims Against Commissioner McDonald ............................................. 77

 II. Personal Jurisdiction Over State Defendants ................................................. 80

 III. Defendants' Rule 12(b)(6) Motions for Failure to State a Claim .................... 83

  A. Fourteenth Amendment Due Process Claims .......................................... 84

   i. Procedural Due Process ..................................................................... 85

    1. Deprivation of a Protected Property Interest ........................... 86

    2. Notice and Opportunity to be Heard ........................................ 92

     a. Notice .......................................................................... 93

     b. Opportunity to be Heard ............................................ 102

      (i) Pre- and Post-Deprivation Opportunities to be Heard ......... 104

      (ii) Mathews Balancing Analysis .......................... 111

      (iii) Plaintiffs' PI Reply ....................................... 114

   ii. Substantive Due Process ................................................................. 117

  B. Education Law Section 3214(3)(c)(1) Claims ..................................... 120

 IV. Plaintiffs' Preliminary Injunction Motion ................................................. 125

 CONCLUSION ......................................................................................... 126

NUSRAT J. CHOUDHURY, United States District Judge:

## INTRODUCTION

Plaintiffs in this case are fourteen parents (the "parents") of children who, until the 2024–2025 school year, had attended public schools in eleven different school districts in Suffolk County, New York. (Am. Compl. ¶¶ 1–14, 17–38, 46, ECF No. 74.) They bring this action on behalf of their minor children (the "children") against the New York Department of Health (the "DOH") and DOH Commissioner James McDonald, in his official capacity (collectively the "State Defendants"), and against the public school district for each respective child (the "School District Defendants") and the superintendent of each school district (the "Superintendent Defendants"), sued in their official capacities (collectively the "School Defendants"). (Am. Compl. ¶¶ 15–38.) The Amended Complaint alleges that Defendants excluded the children from public school following the DOH's determination that the children's vaccination records had been falsified. (Am. Compl. ¶¶ 55, 61, 67.) Plaintiffs bring claims against all Defendants under 42 U.S.C. § 1983 ("Section 1983") to enforce their children's rights under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and bring claims against only the School Defendants for violation of New York Education Law (the "Education Law") § 3214(3)(c)(1) ("Section 3214(3)(c)(1)"). (Am. Compl. ¶¶ 85–108.)[1]

Before me are three fully-briefed motions:

> (1) **the State Defendants' Motion to Dismiss the Amended Complaint** under Rules 12(b)(1), (b)(5), and (b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.")

---

[1] Although the parents bring this action, the children are "the real parties in interest." *See Patrick v. Success Acad. Charter Sch., Inc.*, 354 F. Supp. 3d 185, 208 (E.D.N.Y. 2018) (recognizing that when a student is removed from school, "it is the *student* who is entitled to due process because it is the student—not his parents—who has a right to a free public education" (emphasis in original)). Additionally, although the Amended Complaint identifies the relevant provision of the statute as "NYS Education Law § 3214(c)(a)," the provision at issue is actually Section 3214(3)(c)(1). (*See, e.g.*, Am. Compl. ¶ 97.)

(State Defs.' Mot. Dismiss ("State Defs.' MTD"), ECF No. 96; State Defs.' Mem. Supp. Mot. Dismiss ("State Defs.' MTD Mem."), ECF No. 96-1);

(2) **the School Defendants' Motion to Dismiss the Amended Complaint** under Rules 12(b)(1) and (b)(6) (School Defs.' Mot. Dismiss ("School Defs.' MTD"), ECF No. 98; School Defs.' Mem. Supp. Mot. Dismiss ("School Defs.' MTD Mem."), ECF No. 100); and

(3) **Plaintiffs' Motion for Preliminary Injunction** ("PI Motion") (Pls.' Mem. Supp. Mot. Prelim. Injunction ("Pls.' PI Mem."), ECF No. 75).[2]

The children's alleged exclusion from school stems from the fact that the same former nurse practitioner, Julie DeVuono ("DeVuono"), and her Suffolk County-based practice, Wild Child Pediatrics ("Wild Child"), administered the children's vaccinations. (Am. Compl. ¶ 48; DOH Form Notice, ECF No. 74-4; School Notices, ECF No. 74-4.)[3] After DeVuono was convicted of several crimes for receiving payment for falsified COVID-19 vaccination cards, including money laundering, the State and School Defendants sent Plaintiffs notices that their children would be "excluded from school" beginning on various dates in September and October

---

[2] As recounted in the procedural history below, Plaintiffs neglected to file an actual motion for a preliminary injunction as required by Local Rule 7.1(a)(1) of the Southern and Eastern Districts of New York. On September 30, 2024, Plaintiffs filed a motion for a Temporary Restraining Order ("TRO") (ECF No. 7), which Plaintiffs voluntarily withdrew and which I therefore dismissed as moot on October 3, 2024. (Min. Entry, Oct. 3, 2024.) I set a deadline of October 23, 2024 for Plaintiffs to file a motion for a preliminary injunction. Instead of filing a motion, Plaintiffs filed a memorandum of law titled "First Motion for Preliminary Injunction" on that date. (*See* ECF No. 75.)

[3] Plaintiffs attach to their Amended Complaint notices sent to them by the DOH and their children's schools. (*See* ECF No. 74-4.) These DOH and school notices are intermixed in a single document located at ECF No. 74-4. For the sake of clarity, however, in this Opinion and Order, I cite these notices separately as "DOH Notices" and "School Notices." When I cite the notices sent to a specific parent/child, I refer to the notice by type, i.e., "DOH Notices" or "School Notices," and the page number in the combined document at ECF No. 74-4. As I explain below, the DOH notices are identical other than the date and the name of the child to whose parent the notice was sent. As a result, where I discuss the contents of the DOH notices, as opposed to which specific Plaintiff received the DOH notice or the date of the notice, I use the citation "DOH Form Notice."

2024, if they did not provide valid proof of immunity through serologic testing records, new vaccination records, or proof that their child was in the process of being immunized. (Am. Compl. ¶¶ 69–82; School Notices; DOH Notices.) Subsequently, one plaintiff, Gina Larsen ("Larsen"), submitted valid proof that her child, A.L., had been vaccinated, and A.L. was permitted to remain in school. (Harris Aff. ¶¶ 15–16, ECF No. 99-23.) No other plaintiff claims to have provided any serologic testing records, vaccination records, or proof that their child was in the process of being immunized as required to prevent the child's exclusion from public school. All children other than A.L. are allegedly being homeschooled or have otherwise been excluded from school. (Plaintiff Affs., ECF No. 74-3.)

The Amended Complaint alleges that the children were denied the due process required under the Fourteenth Amendment because Defendants deprived them of their property interest in free public education without "any pre or post deprivation due process." (Am. Compl. ¶¶ 93–94.) Specifically, it alleges, "No Defendant provided a single Plaintiff with the bare minimum of notice and an opportunity to be heard." (Am. Compl. ¶ 95.)

Likewise, Plaintiffs bring claims under Section 3214(3)(c)(1), which provides that "[n]o pupil may be suspended" for more than five days unless the pupil and their parent are given a "fair hearing, upon reasonable notice, at which such pupil shall have the right of representation by counsel, with the right to question witnesses." N.Y. Educ. Law § 3214(3)(c)(1); Am. Compl. ¶¶ 96–108. The Amended Complaint alleges that this statutory provision governs the children's exclusion and that they were suspended from school without a fair hearing. (Am. Compl. ¶¶ 96–108.)

On October 23, 2024, Plaintiffs filed the PI Motion, claiming that the children were being irreparably harmed by their alleged exclusion from school. (Pls.' PI Mem.) Defendants opposed

3

this motion on January 8, 2025 (State Defs.' PI Opp'n, ECF No. 95; School Defs.' PI Opp'n, ECF No. 101), and Plaintiffs submitted a reply on January 31, 2025 (PI Reply, ECF No. 103).

On January 8, 2025, the State and School Defendants also filed separate Motions to Dismiss the Amended Complaint. (State Defs.' Mot. Dismiss, ECF No. 96; School Defs.' Mot. Dismiss, ECF No. 98.) The State Defendants move for dismissal under Rules 12(b)(1), (b)(5), and (b)(6), Fed. R. Civ. P., on the following bases: (1) that Plaintiffs lack standing to sue the State Defendants because any injuries the children suffered were self-inflicted; (2) that Plaintiffs' claims are barred by Eleventh Amendment sovereign immunity because the requested relief is purely retrospective; (3) that the Court lacks personal jurisdiction over the State Defendants because Plaintiffs failed to properly serve process on them; and (4) that the Amended Complaint fails to state a claim under the Due Process Clause of the Fourteenth Amendment. (State Defs.' MTD Mem.) The School Defendants move to dismiss under Rules 12(b)(1) and (b)(6), arguing: (1) that A.L.'s claims are moot; (2) that the Amended Complaint fails to state a claim under either the Fourteenth Amendment Due Process Clause or Section 3214(3)(c)(1); (3) that the claims against the Superintendent Defendants should be dismissed as duplicative of the claims against the School District Defendants; (4) that the Superintendent Defendants are entitled to qualified immunity from Plaintiffs' due process claims; and (5) that Plaintiffs have not pleaded the personal involvement of the Superintendent Defendants as required for the due process claims. (School Defs.' MTD Mem.)

Both Motions to Dismiss are fully briefed. On January 27, 2025, Plaintiffs opposed both motions in a single memorandum of law. (Pls.' MTD Opp'n, ECF No. 102.) On February 7, 2025, the State Defendants and School Defendants each served reply briefs on Plaintiffs. (State Defs.' MTD Reply, ECF No. 104; School Defs.' MTD Reply, ECF No. 105.)

For the reasons addressed in this Opinion and Order, I grant the State Defendants' and the School Defendants' Motions to Dismiss in part and deny each motion in part as follows:

**1. Plaintiff Gina Larsen's Claims.** I grant the School Defendants' Rule 12(b)(1) Motion to Dismiss Larsen's claims against them as moot. Because Larsen provided proof of her child's immunity to the relevant diseases, A.L. was permitted to remain in school and continues to attend public school in person. A.L. therefore has not suffered and does not presently suffer any injury as a result of the determination made by the DOH and/or the Smithtown Central School District that A.L. would be excluded from school unless Larsen provided proof of immunity, new vaccination records, or proof that A.L. was in the process of being immunized within a certain time period. Although the State Defendants do not move to dismiss Larsen's claims against them as moot, I sua sponte dismiss these claims as moot because A.L. lacks Article III standing to support Larsen's ability to bring claims against any defendant in this action.

**2. Justiciability.** I deny the State Defendants' Rule 12(b)(1) Motion to Dismiss Plaintiffs' claims against Commissioner McDonald and the School Defendants on standing and Eleventh Amendment sovereign immunity grounds. However, I grant the State Defendants' Rule 12(b)(1) Motion to Dismiss Plaintiffs' due process claims against the DOH because these claims are barred by Eleventh Amendment sovereign immunity.

Plaintiffs have standing to sue both the State and School Defendants on behalf of their children for each of their claims. Although Plaintiffs did not avert the alleged injury their children suffered by having them tested for antibodies to confirm their immunity or by getting their children vaccinated by other health care providers, Plaintiffs were not required to do so before challenging the procedures that preceded their children's alleged exclusion from school. I dismiss the requests for declaratory and injunctive relief against the State and School Defendants

set forth in paragraphs 109, 112, and 113 of the Amended Complaint because the requested relief would not redress the injuries at issue. Nevertheless, because the Amended Complaint requests at least one form of relief concerning each claim against each Defendant that is redressable, Plaintiffs have standing to bring due process claims against all Defendants and Section 3214(3)(c)(1) claims against the School Defendants.

Plaintiffs' claims against Commissioner McDonald are not barred by Eleventh Amendment sovereign immunity because the Amended Complaint alleges a continuing deprivation of the children's right to a free public education and the Amended Complaint seeks prospective relief for Plaintiffs' due process claims against the State Defendants. By contrast, the doctrine of sovereign immunity bars Plaintiffs' claims against the DOH because it is an arm or instrumentality of New York, which has not consented to waiving its immunity to such claims in federal court, and Congress has not abrogated New York's sovereign immunity from due process claims.

**3. Personal Jurisdiction/Service of Process.** The State Defendants move to dismiss the due process claims against them under Rule 12(b)(5), arguing that there was insufficient service of process as required for personal jurisdiction.[4] I deny this motion. On May 2, 2025, I held that Plaintiffs failed to properly serve process on the State Defendants. (Show Cause Order, ECF No. 108.) However, I extended Plaintiffs' time to effect service under Rule 4(m) until May 19, 2025.

---

[4] A court cannot exercise personal jurisdiction over a defendant unless "the procedural requirement of service of summons [is] satisfied." *Buon v. Spindler*, 65 F.4th 64, 73 (2d Cir. 2023). Therefore, although a Rule 12(b)(5) motion is the "proper procedural vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint," a dismissal for lack of service of process is also a dismissal for a lack of personal jurisdiction. *Tevdorashvili v. Qatar Airway*, No. 24-cv-1379, 2024 WL 4955260, at *2 (E.D.N.Y. Dec. 3, 2024) ("Though Defendant frames his motion as a motion to dismiss for lack of personal jurisdiction pursuant to 12(b)(2), it can also be classified as a motion to dismiss under Rule 12(b)(5).").

(ECF No. 110.) Plaintiffs effected service of process upon the State Defendants prior to that deadline.

**4. Section 1983 Due Process Claims.** I grant the State and School Defendants' Rule 12(b)(6) Motions to Dismiss Plaintiffs' due process claims for failure to state a claim. The Amended Complaint does not plead a plausible procedural due process claim against Commissioner McDonald or the School Defendants. It plausibly alleges that Commissioner McDonald and the School Defendants deprived the children of their protected property interest in a free public education. However, it does not plausibly allege that these defendants provided the children with inadequate notice or an opportunity to be heard concerning Defendants' determination that the children would be excluded from public school for lack of proof of immunization.

Accepting the facts alleged in the Amended Complaint and the documents attached or integral to it as true and drawing all reasonable inferences in favor of Plaintiffs, the DOH and/or the School Defendants notified Plaintiffs that their children would be excluded from school unless Plaintiffs provided either records showing that the children were vaccinated (or in the process of receiving vaccinations) for specific diseases by health care providers other than DeVuono/Wild Child or serologic test records showing the children's immunity against those diseases. Significantly, Defendants provided each Plaintiff the opportunity to prove that the DOH's invalidation of their child's vaccination records was incorrect by providing serologic test records showing their child's immunity against the diseases at issue—*before* the child was excluded from school. Additionally, under Education Law § 310(6-a) and New York Public Health Law § 2164(7)(b), the children have the right to appeal a finding of insufficient proof of immunization to the New York Commissioner of Education ("Commissioner of Education"), but

7

there is no allegation that any parent or child pursued an administrative appeal whether before or after the child's alleged exclusion from school for failure to show sufficient proof of the immunizations required for school attendance under New York law. Finally, all Plaintiffs could have availed themselves of post-deprivation relief through an Article 78 proceeding in state court, which affords a hearing and other robust protections, and all but two Plaintiffs did in fact bring an Article 78 action in state court. Thus, through these numerous pre-deprivation and post-deprivation procedures, Defendants afforded Plaintiffs adequate notice and opportunities to be heard as required for procedural due process.

Moreover, although the Amended Complaint does not plead any substantive due process claims and Plaintiffs forfeited any such argument, to the extent that it may be construed as doing so, it fails to state such a claim. The U.S. Constitution does not provide a fundamental right to a free public education. Even if it did, Commissioner McDonald and the School Defendants' alleged exclusion of Plaintiffs' children from school following the invalidation of their DeVuono/Wild Child vaccination records and Plaintiffs' subsequent failure to provide proof of their children's immunity through serologic testing records, new vaccination records, or proof that the children were in the process of being immunized is not outrageous, arbitrary, or conscience shocking. Finally, to the extent that Plaintiffs' claims against the DOH are not barred by Eleventh Amendment sovereign immunity, the Amended Complaint fails to state a procedural or substantive due process claim against the DOH for the same reasons.

**5. Education Law Section 3214(3)(c)(1) Claims.** I grant the School Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiffs' Section 3214(3)(c)(1) claims because Plaintiffs failed to exhaust the children's administrative remedies as required to bring such a claim. In the alternative, the Amended Complaint fails to state a Section 3214(3)(c)(1) claim because

exclusion from school for insufficient proof of compliance with New York's school immunization law is not a "suspension" on the basis that a student "is insubordinate or disorderly or violent or disruptive, or whose conduct otherwise endangers the safety, morals, health, or welfare of others." N.Y. Educ. Law § 3214(3).[5]

Finally, Plaintiffs have failed to meet the standard required for the extraordinary remedy of a preliminary injunction. Because all claims set forth in the Amended Complaint are dismissed, Plaintiffs have no chance of success on the merits and therefore cannot make the showing of either a likelihood of success on the merits or a serious question on the merits and a balance of the equities as required for a preliminary injunction. I therefore deny the PI Motion.

## JURISDICTION

The Amended Complaint invokes this Court's federal question jurisdiction under 28 U.S.C. § 1331 and § 1343 over Plaintiffs' Section 1983 claims to enforce the children's rights under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. (Am. Compl. ¶ 39.) The Amended Complaint asserts that the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiffs' claims under Education Law Section 3214(3)(c)(1). (Id.) These state law claims are part of the same case or controversy and arise out of the same common nucleus of operative facts as the federal claims.

As detailed below, however, the State Defendants challenge Plaintiffs' standing to bring claims on behalf of their children under Article III of the U.S. Constitution and argue that the

---

[5] In light of my rulings, I do not reach the School Defendants' arguments that all claims against the Superintendent Defendants in their official capacities should be dismissed on the grounds that the claims are duplicative of the claims against the School District Defendants. I also do not reach the School Defendants' arguments that the due process claims against the Superintendent Defendants in their official capacities should be dismissed as barred by qualified immunity or due to the Amended Complaint's failure to plead the Superintendent Defendants' personal involvement.

claims against the State Defendants are barred by Eleventh Amendment sovereign immunity. (*See infra*, Discussion § I.B.) "If [a] plaintiff[] lack[s] Article III standing, a court has no subject matter jurisdiction to hear their claim." *Bohnak v. Marsh & McLennan Cos., Inc.*, 79 F.4th 276, 283 (2d Cir. 2023). The same is true where sovereign immunity applies. *Gille v. Stony Brook Univ.*, No. 2:22-cv-2974, 2025 WL 850420, at *4 (E.D.N.Y. Mar. 18, 2025) (holding that a claim barred by a state's sovereign immunity "should be dismissed for lack of subject matter jurisdiction" (quoting *Hamm v. United States*, 483 F.3d 135, 137 (2d Cir. 2007)).

The State Defendants also challenge this Court's personal jurisdiction and invoke Rule 12(b)(5), arguing that there was insufficient service of process as required for personal jurisdiction. *See infra*, Discussion § II; *Buon*, 65 F.4th at 73 ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."). By contrast, the School Defendants do not raise the defenses of personal jurisdiction under Rule 12(b)(2) or insufficient service of process under Rule 12(b)(5), and such defenses are therefore waived. *See* Fed. R. Civ. P. 12(b) ("A motion asserting [a Rule 12(b)(2) or (b)(5) defense] must be made before pleading if a responsive pleading is allowed."); Fed. R. Civ. P. 12(h)(1)(B) ("A party waives any defense listed in Rule 12(b)(2)–(5) by . . . failing to . . . make it by motion under this rule.").

Venue is proper under 28 U.S.C. § 1391(b)(2) in this judicial district because "it is where a substantial part of the events giving rise to Plaintiffs' claims occurred." (*See* Am. Compl. ¶ 15; *id.* ¶¶ 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37 (alleging that each of the school districts in which the children were excluded from attending school are located within Suffolk County, New York).)

## FACTUAL BACKGROUND

For the purpose of evaluating Defendants' Motions to Dismiss the Amended Complaint under Rule 12(b)(6), I assume as true all well-pled allegations in the Amended Complaint, including allegations made in attached exhibits, and draw all reasonable inferences in Plaintiffs' favor. *See Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020); *Pac. Life Ins. Co. v. US Bank Nat'l Ass'n*, 636 F. Supp. 3d 366, 389 (S.D.N.Y. 2022) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004))).[6]

As discussed in the Legal Standards section below, for the purpose of evaluating the State Defendants' and the School Defendants' Rule 12(b)(1) Motions, I accept the Amended Complaint's factual allegations as true except where evidence in the record directly contradicts a specific factual allegation; where there is such a contradiction, I consider whether Plaintiffs have proven the alleged facts by a preponderance of the evidence. *See Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022). So too, in evaluating Defendants' Rule 12(b)(5) Motion and Plaintiffs' PI Motion, I "need not accept as true the well-pleaded allegations" in the Amended Complaint, but rather must consider the parties' factual submissions. *Nat'l Coalition on Black Civic Participation v. Wohl*, 498 F. Supp. 3d 457, 469 (S.D.N.Y. 2020) (considering matters outside the pleadings on a preliminary injunction motion); *Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 332 (E.D.N.Y. 2021) (holding that the "court must look to matters outside the complaint to determine whether it has jurisdiction" when assessing a Rule 12(b)(5) motion).

[6] Unless otherwise indicated, case quotations omit all internal quotation marks, brackets alterations, and citations.

11

Therefore, I first provide legal background regarding New York's Public Health Law (the "Public Health Law") and its imposition of school immunization requirements, then describe the facts alleged in the Amended Complaint, and finally describe the parties' factual submissions on the State and School Defendants' Rule 12(b)(1) and (b)(5) Motions to Dismiss and Plaintiffs' PI Motion.

## I.    The New York School Immunization Requirements

"For more than a century, the State [of New York] has required mandatory immunization for children to attend school." *Goe v. Zucker*, 43 F.4th 19, 25 (2d Cir. 2022). New York Public Health Law Section 2164 (the "school immunization law" or "Section 2164") requires children aged two months to eighteen years to be immunized from certain diseases before they can attend "any public, private or parochial . . . kindergarten, elementary, intermediate or secondary school." N.Y. Pub. Health Law ("PHL") § 2164(1)(a). The school immunization law requires children to be immunized against poliomyelitis, mumps, measles, diphtheria, rubella, varicella, hepatitis B, pertussis, tetanus, and where applicable, Haemophilus influenzae tybe b (Hib), meningococcal diseases, and pneumococcal disease. *Id*. § 2164(7)(a). Under Section 2164(7)(a), no school may permit a child "to be admitted to a school, or to attend such school" for more than fourteen days without showing that the child was immunized or is in the process of complying with the immunization series. *Id*. § 2164(7)(a). Section 2164 also authorizes the Commissioner of Health to adopt regulations giving effect to the statute, and those regulations prohibit school principals from admitting or "permit[ting] a child to continue to attend" school for more than

fourteen days without proof of immunization or proof that the child is "in process" of receiving the required immunizations. *See id*. § 2164(10); 10 N.Y. C.R.R. §§ 66-1.3, 66-1.4.[7]

Historically, Section 2164 provided two exemptions from New York's school immunization requirements—a medical exemption and a religious exemption—but the New York Legislature repealed the religious exemption in 2019. *See* PHL § 2164(9) (repealed 2019); *id.* § 2164(8). As a result, a child is only exempt from the school immunization requirement "[i]f any physician licensed to practice medicine in [New York] certifies that such immunization may be detrimental to a child's health . . ." PHL § 2164(8); *see also* 10 N.Y. C.R.R. § 66-1.3(c).

Separate from the school immunization requirement, the Public Health Law also directs the DOH to establish and administer an "electronic immunization information system." PHL § 2168(1). Pursuant to that directive, the DOH created a statewide "computerized database of immunizations developed and maintained by [the DOH]" called the New York State Immunization Information System ("NYSIIS"). 10 N.Y. C.R.R. § 66-1.2(a)(1). New York health care providers who administer immunizations to children under the age of nineteen must report those immunizations to the NYSIIS database within fourteen days of administration. *See* PHL § 2168(3)(a); *see also* 10 N.Y. C.R.R. § 66-1.2. Schools have access to the NYSIIS database "for the purpose of verifying the immunization status [of children] for eligibility for admission" to school, but their access is "read-only" and limited to "registrants enrolling or already enrolled in a particular school or school system." PHL § 2168(8)(d)(i); 10 N.Y. C.R.R. §§ 66-1.2(d)(1)(ii), (2)(ii). By contrast, only health care providers and DOH staff can "enter" and "change

---

[7] These rules provide only one exception: if a student transfers from out-of-state and shows a good faith effort to get vaccinated, the school may extend the time for proof of immunization "not more than 30 calendar days." 10 N.Y. C.R.R. § 66-4.

immunization information" in the NYSIIS system. 10 N.Y. C.R.R. § 66-1.2(d)(1)(i). (*See also* Am. Comp. ¶ 15 (acknowledging that the DOH operates the NYSIIS database).)

In order for a child to comply with the state-mandated school immunization requirement, a "person in parental relation to the child" must submit (1) a certificate of immunization from a health care practitioner or from NYSIIS documenting that the child is fully immunized; (2) documentation showing that the child is "in process" to receive the required immunizations; or (3) a valid medical exemption. 10 N.Y. C.R.R. § 66-1.3. The certificate of immunization, if not located in NYSIIS, must be "prepared and signed by a health practitioner licensed in New York State and shall specify the products administered and the dates of administration." *Id.* § 66-1.6; *see also id.* § 66-1.1 (defining health practitioner to include nurse practitioners "authorized by law to administer an immunization"). Additionally, immunization can be established by vaccination or by proof of immunity through positive serologic test, which refers to a blood test for antibodies confirming that an individual has immunity to a given disease. *Id.* § 66-1.1(f)–(g).

A child is "in process" of receiving required immunizations when the child: (1) has received at least the first dose in each immunization series and has appropriate follow-up appointments to complete the immunization series according to the Advisory Committee on Immunization Practices Recommended Child and Adolescent Immunization Schedule ("ACIP catch-up schedule"); (2) has received a serologic test blood draw and is awaiting test results within fourteen days; or (3) has received a negative serologic test result and has appointments to be immunized within 30 days of notification of the ACIP catch-up schedule. *Id.* § 66-1.1(j). A school cannot continue to admit a child who is "in process" if the child fails to receive subsequent doses according to the ACIP catch-up schedule. *Id.* § 66-1.1(j)(4).

14

When a child is prohibited from attending school "for lack of acceptable evidence of immunization," school staff must: (1) notify the person with a parental relationship to the child of their responsibility to have the child immunized—which may be satisfied by submitting a positive serologic test confirming a child's immunity—and of public resources available for ensuring immunization; (2) notify the local health authority; and (3) "provide, with cooperation of the local health authority, for a time and place" at which the required immunization may be administered. *Id.* §§ 66-1.6, 66-1.8. If, on the other hand, a child lacking acceptable immunization records is allowed to attend school in willful violation of the school immunization law, the school district may be subject to civil penalties. *See* PHL § 12(b) (providing that "any person" who violates or disregards a statutory provision, "lawful notice, order, or regulation" issued pursuant to the Public Health Law is subject to civil penalty). Indeed, although the DOH website does not indicate whether the penalty is imposed on the school district, the school, or its staff, the website warns that for each child without proper immunization records who is permitted to attend school in violation of the school immunization law the DOH may impose a civil penalty of up to $2,000.[8]

---

[8] N.Y. Dep't of Health, Dear Superintendent/Principal/School Nurse Regarding Public Health Law 2164(7)(a) ("Dear Superintendent Letter") (Aug. 2019), https://www.health.ny.gov/ prevention/immunization/schools/public_health_law_section_2164_letter.htm. Although the DOH website is not incorporated into the Amended Complaint, courts may take judicial notice of "documents retrieved from official government websites" when considering a Rule 12(b)(6) motion if the facts of which the court takes judicial notice are "not subject to reasonable dispute." *See Does 1-2 v. Hochul*, 632 F. Supp. 3d 120, 127 n. 1 (E.D.N.Y. 2022) *aff'd in part, vacated in part on other grounds*, No. 22-2858, 2024 WL 5182675 (2d Cir. Dec. 20, 2024) (collecting cases). Here, the parties dispute whether the School Defendants did more than "blindly follow" the DOH's orders. (Am. Compl. ¶ 60.) But there can be no "reasonable dispute" that the DOH website warns schools of the penalties that the DOH could pursue under the Public Health Law for noncompliance with the requirement that students provide "acceptable evidence of immunization" against specific diseases. 10 N.Y. C.R.R. § 66-1.6.

A parent who believes that their child was erroneously denied "admission to, or continued attendance at" a public school due to "lack of proof of required immunizations" may appeal such a finding to the New York Commissioner of Education. N.Y. Educ. Law § 310(6-a). The Commissioner is "authorized and required to examine" the appeal and may "institute[] such proceedings . . . as may be necessary to properly enforce" the provision. *Id.* § 308; *id.* § 311 (giving the Commissioner the power to "regulate the practice therein"); PHL § 2164(7)(b). Pursuant to that authority, the Commissioner issues written opinions resolving appeals under the statute. *See, e.g.*, *Appeal of E.Y.*, 60 Educ. Dep't Rep., Decision No. 17,891 (July 30, 2020) (Weisbord Decl. Ex. E, ECF No. 99-5); *Appeal of S.G.*, 60 Educ. Dep't Rep., Decision No. 17,830 (April 13, 2020) (Weisbord Decl. Ex. F, ECF No. 99-6); *Appeal of J.K.*, 60 Educ. Dep't Rep., Decision No. 17,967 (March 17, 2021) (Weisbord Decl. Ex. G, ECF No. 99-7); *Appeal of M.D.*, Decision No. 18,491 (September 9, 2024) (Weisbord Decl. Ex. H, ECF No. 99-8).[9]

## II.    Facts Alleged in the Amended Complaint

### A.    DOH's Cancellation of Pediatric Vaccination Records for Plaintiffs' Children

"Unvaccinated children pose a health threat to other students because they can spread diseases to other students, thereby endangering their health and safety." (Am. Compl. ¶ 64.) In recognition of this factual allegation, Plaintiffs maintain that their children were in compliance with the Public Health Law and its school immunization requirements at the start of the 2024–2025 school year. (Am. Compl. ¶ 42.) Each parent had submitted records of vaccines

---

[9] Although the general rule is that a court may not consider records outside of the complaint when considering a Rule 12(b)(6) motion to dismiss, I take judicial notice of these public records. *See Phillips v. City of New York*, No. 21-cv-08149, 2024 WL 4307923, at *2 (S.D.N.Y. Sept. 26, 2024).

administered to their children by nurse practitioner DeVuono through her Suffolk County-based practice, Wild Child. (Am. Compl. ¶ 48.)[10]

However, on a date not identified in the Amended Complaint, DeVuono was "convicted of several crimes, including money laundering, for receiving payment from undercover detectives in exchange for falsified COVID-19 vaccination cards." (Am. Compl. ¶ 49.) According to the Amended Complaint, DeVuono has not been found guilty of criminal conduct related to pediatric vaccines, as opposed to COVID-19 vaccines. (Am. Compl. ¶ 52.) But following these events, on September 9, 2024, the DOH issued a press release announcing that it had investigated DeVuono and had voided "pediatric immunization records" issued by DeVuono/Wild Child "for approximately 135 children." (Am. Compl. ¶ 45.)[11]  The press release claims that DeVuono "falsified over 1,500 vaccinations" and states that the investigation of those immunization records "follows DeVuono's arrest in January 2022 on charges related to her large-scale COVID-19 vaccination card scheme." (Weisbord Decl., Ex. B, ECF No. 99-2 ("DOH Sept. 9, 2024 Press Release").) Stemming from that investigation, the DOH filed administrative charges against DeVuono for alleged violations of the school immunization law and, according to the press release, DeVuono was scheduled for a November 19, 2024 hearing and could face "a

---

[10] The Amended Complaint does not explicitly refer to DeVuono or Wild Child by name, but it alleges that all Plaintiffs "used the same former nurse practitioner to administer their children's immunizations" and both names appear in documents attached to the Amended Complaint. (Am. Compl. ¶ 48; see, e.g., DOH Form Notice; School Notices at 1.) Specifically, the Amended Complaint attaches notices that the DOH and School Defendants sent to inform Plaintiffs that their children's vaccination records reported "by Wild Child Pediatrics/Julie DeVuono . . . are invalid." (DOH Form Notice; see also School Notices.)

[11] Because Plaintiffs quote a line from the press release, they make a "clear, definite and substantial reference to the" press release. Trump v. Vance, 977 F.3d 198, 210 (2d Cir. 2020). The press release is therefore incorporated by reference into the Amended Complaint, and I may consider its full contents.

17

penalty of up to $2,000 per falsified entry of a vaccination in NYSIIS." (*Id.*; *see also* Am. Compl. ¶¶ 53–55.)

Plaintiffs' children are among those whose vaccination records the DOH voided. In fall 2024, following an investigation, the DOH announced that it determined that the children's immunization records "were falsified" and that it therefore erased those records from NYSIIS. (Am. Compl., Preliminary Statement; *Id.* ¶¶ 43–44.) The DOH also "instructed Defendant School Districts to refuse certificates of immunization signed by [DeVuono]." (*Id.* ¶ 59.)

B.  DOH Directive to School Defendants

Having voided and removed specific pediatric vaccination records from NYSIIS, on August 2, 2024, the DOH sent a directive to the School Defendants informing them of its investigation (the "DOH Directive"). (Giovannetti Decl., Ex. N, ECF No. 96-21.)[12] The DOH Directive stated that the DOH's investigation had found that "in addition to creating thousands of fraudulent pediatric vaccine records, Wild Child legitimately administered some vaccinations." (*Id.*) Therefore, the DOH reported that it was *not* removing "all Wild Child/Julie DeVuono records" from NYSIIS. (*Id.*) Rather, the DOH had invalidated immunization records "known to be fraudulent" and would notify the schools separately with a list of students who "must be excluded from school until they provide valid proof of vaccination or immunity." (*Id.*) The DOH also gave the School Defendants the following instructions:

> At your discretion taking into account your obligation to reject immunization records you believe to be fraudulent based on your knowledge and assessment of

---

[12] The DOH Directive is not attached to, or reproduced within, the Amended Complaint but rather is submitted by the State Defendants in support of both their Motion to Dismiss and their opposition to the PI Motion. (*See* Giovannetti Decl., Ex. N.) The DOH Directive is "integral" to the Amended Complaint, which refers to it throughout and even seeks a declaration that "the DOH's directive to the School Districts instructing the Districts to exclude students and reject their certificates of immunization [is] unconstitutional." *See* Am. Compl. ¶¶ ii., vi., 18, 20, 22, 24, 26, 28, 30, 32, 34, 36, 38, 110 114; *Pac. Life Ins. Co.*, 636 F. Supp. 3d at 389.

the facts you may decide to consider current NYSIIS records from Wild Child/Julie Devuono as valid proof of immunizations. **However, you must not accept any paper records from Wild Child that are not already recorded by NYSIIS.**

(*Id.* (bold typeface in original).) The children are among those students whose vaccination records the DOH erased from NYSIIS. (Am. Compl. ¶ 44.)

     C.  <u>DOH and School District Notices to Plaintiffs</u>

On September 9, 2024, the DOH sent notices to the parents of at least ten of the fourteen children: M.W., R.J., S.J., S.T., L.D., V.F., L.S., A.M, A.H., and A.C. (DOH Notices at 2, 4, 10, 13, 18, 20, 22, 24, 31; McKeon Aff. ¶ 4, Plaintiff Affs. at 5–7.)[13] The DOH sent a notice to the parent of C.O. on September 16, 2024 and C.O.'s parent received the notice that same day. (DOH Notices at 27; Orlowski Aff. ¶ 4, Plaintiff Affs. 32–34.) The Amended Complaint alleges that the parent of N.P. did not receive any notice from the DOH regarding its decision to invalidate N.P.'s DeVuono/Wild Child vaccination records. (Pieper Aff. ¶ 4, Plaintiff Affs. at 39–41.) The Amended Complaint does not explicitly allege whether or when the two remaining Plaintiffs—the parents of G.H. and A.L.—received a DOH notice, but it implies that G.H.'s parents received a DOH notice in August or September 2024.[14]

---

[13] The Amended Complaint does not include the DOH notice sent to the parents of A.C. but A.C.'s parent attests on a form affidavit that "I have/have not received a letter from the New York State Department of Health on or about September 9, 2024." (McKeon Aff. ¶ 4.) The date of notice is handwritten onto the form affidavit, implying that McKeon did receive notice from the DOH but failed to circle one of two options in what is otherwise a nonsensical statement from McKeon that "I have/have not received" notice. (*Id.*)

[14] Plaintiff Amy Habel submitted an affidavit in which she attests: "I have/have not received a letter from the New York State Department of Health on or about August 5th, 2024" notifying Habel that the DOH had voided her child's, G.H.'s, records. (Habel Aff. ¶ 4, Plaintiff Affs. at 8–10.) As in the McKeon affidavit, the date of notice is written onto a form affidavit, implying that Habel received notice, and the date of that notice is more than one month before any of the other

The ten DOH notices attached to the Amended Complaint are identical. (*See* DOH Notices at 2, 4, 10, 13, 18, 20, 22, 24, 27, 31.) Each notice consists of two paragraphs, which state in relevant part:

> [The DOH] has deleted some or all of your child's immunizations reported to [NYSIIS] by Wild Child Pediatrics/Julie DeVuono. The Department has determined that these vaccinations . . . are invalid and do not satisfy New York's requirements . . . If your child has attended school for more than 14 days using these fraudulent vaccination records as proof of meeting vaccination requirements, they must immediately be excluded until and unless valid proof of vaccination or immunity is provided to the school.

(DOH Notices.) The DOH notices also include a web link to a document titled "2024-25 School Year New York State Immunization Requirements for School Entrance/Attendance,"[15] which identifies the immunizations required for school attendance and describes the procedures for submitting serologic evidence of immunity. (*Id.*) However, the DOH notices sent to each Plaintiff do not identify the specific immunizations at issue (e.g., varicella, measles/mumps/rubella, etc.) or the specific date on which the child would be excluded absent the provision of proof of immunity. (*Id.*) Nor do they inform Plaintiffs of their children's right to appeal a finding of "lack of proof of required immunizations" to the Commissioner of Education under Education Law § 310(6-a). (*Id.*)

---

Plaintiffs received notice and more than one month before Habel received notice from her child's school on September 11, 2024. (*See* Habel Aff. ¶ 4; Am. Compl. ¶ 71.) Plaintiffs do not submit the notice that the DOH sent Habel. Similarly, Plaintiffs do not submit either a notice or an affidavit from Plaintiff Gina Larsen, although the Amended Complaint cites an affidavit from Larsen that does not appear in Plaintiffs' submissions. (*See* Am. Compl. ¶ 75.) Therefore, the Plaintiffs fail to plead if and when Larsen received notice from the DOH on behalf of her child A.L.

[15] New York State Dep't of Health, 2024-25 School Year New York State Immunization Requirements for School Entrance/Attendance, https://www.health.ny.gov/publications/2370.pdf.

On September 9, 2024, the same day that the DOH sent notices to most Plaintiffs, the DOH also sent an email to at least some staff administrators of the School District Defendants with an attached list of students who "will need to be excluded as of the fourteenth calendar day after the start of the school year." (Sept. 9 DOH Ltr. to Schools, ECF No. 74-4 at 30.)[16] That email is attached to the Amended Complaint. (*Id.*) The email also informed school administrators, "Your school must notify the person in parental relation to each of these children of their responsibility to vaccinate . . . The Department has informed the parents of these students that these invalid vaccinations will be deleted from NYIIS . . . however, you are still responsible for completing the steps detailed in this letter." (*Id.*)

Between September 4, 2024 and September 18, 2024, each Plaintiff received a notice from their child's school or school district notifying them that the DOH had invalidated their child's DeVuono/Wild Child vaccination records and that their child would be "excluded" from school on various dates between September 17, 2024 and October 1, 2024 absent proof of immunity. (*See, e.g.*, Plaintiffs Affs. at 40 ¶ 7; School Notices at 14.)

Although the content and length of the school notices vary by school, ranging from one to two pages in length, they provide Plaintiffs with significantly more information than the DOH

---

[16] The DOH sent the email to two individuals with email addresses associated with Three Village Central School District. (*See* Sept. 9 DOH Ltr. to Schools.) However, the email is addressed "Dear school administrator" and is written in general language such that it could have been sent to other school districts as well. I draw the reasonable inference in Plaintiffs' favor that the DOH sent similar emails to the other School District Defendants, either on September 9, 2024 or on another date, naming the children with voided vaccination records because the DOH Directive, which is integral to the Amended Complaint, states: "If NYSDOH has identified particular students in your school whose Wild Child/Julie DeVuono vaccination records are known to be fraudulent, we will notify you separately." (Giovannetti Decl., Ex. N.) The Amended Complaint also alleges that the DOH "instructed Defendant School Districts to refuse certificates of immunization signed by" DeVuono/Wild Child, but it does not allege how the School District Defendants knew which children's records were voided. (Am. Compl. ¶ 59.) This inference fills that logical gap.

21

notices. For example, all but one school notice informed parents of the specific vaccinations at issue in the vaccination records voided by the DOH (e.g., varicella, measles/mumps/rubella, etc.), and the only notice that did not contain this information stated that the school nurse had already contacted the parent regarding the required immunizations. (*See* School Notices at 1, 3, 5, 6, 11–12, 14–17, 19, 21, 23, 25–26, 28–29, 32.) Collectively, the school notices informed Plaintiffs that they were required to demonstrate that their children had received immunizations for diphtheria/tetanus/pertussis (DTaP or Tdap), polio, measles/mumps/rubella (MMR), hepatis B, varicella (chickenpox), meningococcal conjugate (MenACWY), haemophilus influenzae (HIB), and pneumococcal conjugate (PCV). (DOH Sept. 9, 2024 Press Release; *see also* School Notices at 5, 11, 16, 23, 28 (listing all immunizations required for school attendance).)

All but two of the school notices notified parents that they could also satisfy the requirement for acceptable proof of immunization by showing that their child was "in process" of receiving the required immunizations, though the notices provide varying levels of specificity about what it means for a child to be "in process" of being immunized. (*See* School Notices at 1, 3, 5, 6, 8, 11, 14, 16, 19, 21, 25, 28.) Eight of the fourteen notices—those sent to the parents of L.S., A.M., S.T., A.L., L.G., C.O., A.H., and S.J.—informed parents that they had a "right to appeal this determination, within thirty (30) days, to the Commissioner of Education." (*Id.* at 9, 12, 15, 17, 23, 26, 29; ECF No. 99-24 at 11.)[17] Seven of the school notices informed parents that their children could remain in school either by submitting positive serologic test results showing

---

[17] The Amended Complaint only attaches the first page of the school notice sent to the parents of child L.S. (*See* School Notices at 21.) The second page of that notice includes information regarding the right to an appeal and is provided by the School Defendants in support of their Motion to Dismiss and in opposition to the PI Motion. (*See* ECF No. 99-24 at 11.) Because Plaintiffs attach the first page of the school notice sent to the parent of L.S., the second page is incorporated by reference into the Amended Complaint. *See Pac. Life Ins. Co.*, 636 F. Supp. 3d at 389.

immunity or by providing new proof of vaccination. (*See id.* at 1, 8–9, 14–15, 19, 21, 23, 25–26.)[18] Finally, three of the school notices informed parents that "your child may be immunized with your consent and without charge by the county health official" and provided contact information for the Suffolk County Department of Health, which could "assist you in obtaining these immunizations." (*Id.* at 12, 17, 29.)

The amount of notice that each Plaintiff received before their child would allegedly be excluded from school also varied. The school immunization law prohibits school staff from permitting a child to attend a school "in excess of fourteen days" without a valid certificate of immunization. PHL § 2164 (7)(a). The DOH's email to schools construed those fourteen days as running from the "start of the school year" rather than the date on which a parent received notice that their child's records had been voided. Sept. 9 DOH Ltr. to Schools. As a result, at the high end, the parents of four children—S.T., L.D., K.P., and A.L.—received around two weeks or more advance notice that their children would be excluded from school if they did not provide sufficient immunization records by the exclusion date in the letter. (Plaintiff Affs. at 18 ¶ 7, 21 ¶ 7, 40 ¶ 7; School Notices at 11, 14, 16, 32.)[19] Seven parents received around one week of notice,

---

[18] As stated below, although only seven of the notices included this information, all Plaintiffs but one attest to having received this notice. (*See infra*, Factual Background § II.D.)

[19] Eleven of the fourteen Plaintiffs attest in their affidavits that they received notice from their child's school on the date that appears on the school notice. (*Compare* Plaintiff Affs., *with* School Notices.) One Plaintiff attests to receiving notice from her child's school the day before the school sent her a notice. (*Compare* Halpin Aff. ¶ 7, Plaintiff Affs. at 35–37, *with* School Notices at 28.) Another Plaintiff—Noreen Pieper—attests to receiving notice from her child's school two days after the school sent her the notice, (Pieper Aff. ¶ 7), but that is contradicted by the school notice sent to Pieper, which states that the school nurse had already contacted a parent "in regards to the immunization records needed for your child." (School Notices at 32.) Regardless, even had Pieper not received the school notice until the date in her affidavit, she still would have received notice thirteen days before her child's alleged exclusion from school.

with six days of notice to the parent of G.H, seven to the parents of R.J., L.S., and S.J., eight days to the parents of M.W. and A.H., and nine days to the parent of A.C. (Plaintiff Affs. at 2 ¶ 7, 6 ¶ 7, 9 ¶ 7, 12 ¶ 7, 15 ¶ 7, 27 ¶ 7, 36 ¶ 7; School Notices at 1, 3, 5–6, 8, 21, 28.) V.F.'s and A.M.'s parents received two and four days of notice respectively from their children's schools, though V.F.'s parent attests to receiving four days of notice from the DOH and A.M's parent attests to receiving a week of notice from the DOH. (Randazzo-Fuca Aff. ¶¶ 4, 7, Plaintiff Affs. at 23–25; Merckling Aff. ¶¶ 4, 7, Plaintiff Affs. at 29–31; School Notices at 19, 23.) Finally, C.O.'s parents received only one day of notice from either C.O.'s school or the DOH before C.O. was excluded for lack of adequate immunization records. (School Notices at 25; Orlowski Aff. ¶¶ 4, 7; DOH Notices at 27.)

Consistent with the DOH and school notices, the Amended Complaint pleads that, on their respective exclusion dates, each child was allegedly "removed from school," and that the children allegedly remain "fully excluded from school." (Am. Compl. ¶¶ 67, 69–82.) The Amended Complaint uses the passive voice, and therefore does not specifically allege which Defendants excluded the children from school. (*Id.*)

D.  Plaintiffs' Affidavits

Attached to the Amended Complaint are affidavits signed by each Plaintiff with the exception of Larsen, which were created from a template that includes a small number of blank spaces for providing personal information, including the date on which each affiant received notice from a school regarding their children's potential exclusion from school for lack of

---

(*Compare* Pieper Aff. ¶ 7, *with* School Notices at 32.) Finally, Gina Larsen does not submit an affidavit, but the record contains a school notice addressed to her, which is dated sixteen days before her child's alleged exclusion from school. (School Notices at 16.)

adequate proof of immunization and a description of the "irreparabl[e] harm" that such exclusion was causing their children. (*See, e.g.,* Walker Aff., Plaintiff Affs. at 1–3.)[20]  Although only seven of the notices informed parents that their children could remain in school either by submitting positive serologic test results or by providing new proof of immunization, every parent who submitted an affidavit attests that the school district informed the parent that "to remain in school—my child would need to be revaccinated against certain diseases and either submit serological samples of antibodies (titers) or get revaccinated for others." (*See, e.g.*, Walker Aff. ¶ 7; School Notices at 1, 8–9, 14–15, 19, 21, 23, 25–26.) The DOH had also already notified most of the parents that they could show their children's immunity by submitting a positive serologic test result. (*See* DOH Notices at 2, 4, 10, 13, 18, 20, 22, 24, 27, 31 (linking to 2024-25 New York School Immunization Requirements Document); McKeon Aff. ¶ 4 (attesting that she received notice from the DOH); Habel Aff. ¶ 4 (same).)

On their face, the Plaintiffs' affidavits appear to have been sloppily prepared and include statements that are flatly contradicted by the DOH and school notices attached to the Amended Complaint. For example, most of the affidavits bizarrely state, "I have/have not received a letter from [the DOH]" stating that it erased "my child's electronic vaccination records" from NYSIIS and "I have/have not submitted paper certificate of immunization to my child's school district." (*See, e.g.*, Walker Aff. ¶¶ 4–5.) Some Plaintiffs either circled an option for whether they "ha[d]" or "ha[d] not" received a notice letter, (*see, e.g.*, Stubbmann Aff. ¶¶ 4–5, Plaintiff Affs. at 26–28.), or signed affidavits without this language (*see, e.g.*, Merckling Aff. ¶ 4, Plaintiff Affs. at 29–31.)—but most did not. (*See generally* School Notices.)

---

[20] Because the affidavits were created based on a template with fillable blanks, many of the factual assertions made in the affidavits are identical. I therefore cite Brian Walker's affidavit for the identical language that appears verbatim in each Plaintiff's affidavit. (*See* Walker Aff. ¶ 6.)

Plaintiffs object to their children's alleged exclusion from school on the basis that, allegedly, none of the Defendants "provide[d] Children with any process whatsoever. Plaintiffs were not even provided notice and an opportunity to be heard" before being excluded from school. (Am. Compl. ¶ 65–66, 84.) The Amended Complaint alleges that Plaintiff's children are "up to date on [their] vaccinations" and that they simply "chose a provider who went rogue." (Am. Compl. ¶ 51; *see, e.g.*, Walker Aff. ¶ 6.) I understand the Amended Complaint to allege that DeVuono may have falsified certain immunization records but that the records indicating that DeVuono/Wild Child administered vaccinations to Plaintiffs' children were not fraudulent, despite the DOH's determination to the contrary. I accept this allegation as true for purposes of resolving Defendants' Rule 12(b)(6) Motions. *See Melendez*, 16 F.4th at 1010 (directing that courts "accept[] all factual allegations [in the Amended Complaint] as true" for purposes of a 12(b)(6) motion and "draw[] all reasonable inferences in favor of the plaintiffs").

By contrast, the Amended Complaint's allegation that Plaintiffs' children did not receive "any process whatsoever" before being excluded from school is flatly contradicted by the DOH and school notices attached to the Amended Complaint. (*See* Am. Compl. ¶ 65; DOH Notices; School Notices.) In fact, just a few paragraphs later, the Amended Complaint alleges that Plaintiffs *all* received some form of notice from the School Defendants. (*See* Am. Compl. ¶¶ 69–82; *e.g.*, *id.* ¶ 69 ("Plaintiff Brian Walker received notice from Defendant Sachem Central School District by letter dated September 10, 2024.").) Moreover, as noted above, most Plaintiffs *also* received notice from the DOH, and only N.P.'s parent attests that she did not receive any form of notice from the DOH, although she did receive notice from the School Defendants. (*See supra*, Factual Background § II.C; Pieper Aff. ¶ 4.) Although school notices informed eight of the fourteen Plaintiffs that they had a "right to appeal" the DOH's determination that their children

26

lacked adequate proof of immunizations, the Amended Complaint does not allege that any Plaintiff appealed the DOH's determination to the Commissioner of Education. (*See* School Notices at 9, 12, 15, 17, 23, 26, 29; ECF No. 99-24 at 11.) Given these contradictions between the Amended Complaint's allegations and information set forth in documents attached to or integral to it, drawing all inferences in Plaintiffs' favor, I understand the Amended Complaint to allege that the children did not receive sufficient notice or opportunity to be heard as required by the Fourteenth Amendment Due Process Clause prior to their alleged exclusion from school for lack of proof of immunization.

### III.    Additional Facts Alleged in Motion to Dismiss Declarations

When considering a motion to dismiss for failure to state a claim, "district courts may review only a narrow universe of materials, which includes facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, matters of which judicial notice may be taken, [and] documents . . . integral to the complaint." *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023). A court therefore "errs when it considers affidavits and exhibits submitted by defendants" or "factual allegations contained in legal briefs or memoranda" unless those materials fall into one of the exceptions identified above. *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106–07 (2d Cir. 2021).

Nonetheless, in support of its Motion to Dismiss, the State Defendants submit two declarations to which are attached twenty-two different exhibits. (Fattorusso Decl., ECF No. 96-2; Giovannetti Decl., ECF No. 96-8) The first declaration is signed by Stephanie Fattorusso, an Assistant Attorney in the Bureau of Litigation, Division of Legal Affairs at the DOH, and attaches five exhibits, marked Exhibits A–E. (Fattorusso Decl., Exs. A–E, ECF Nos. 96-3–7) As discussed in the May 2, 2025 Order to Show Cause, the Fatturosso Declaration and attached

27

exhibits concern the State Defendants' 12(b)(5) Motion to Dismiss for Insufficient Service of Process, and the Court may consider facts outside the complaint in resolving such a motion. *See* Show Cause Order; *Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 332 (E.D.N.Y. 2021). The State Defendants submit the second declaration, made by Joseph Giovannetti, the Director of the Bureau of Investigations within the Division of Legal Affairs at the DOH, in support of their Rule 12(b)(6) Motion for failure to state a claim. (Giovannetti Decl.) It contains fifteen exhibits, which are marked Exhibits A–O. (*Id.*, Exs. A–O, ECF Nos. 96-9–22.) They include:

> (1) a press release from the Suffolk County District Attorney concerning DeVuono's criminal case (*id.*, Ex. A, ECF No. 96-9);
>
> (2) the sentencing minutes, plea transcript, and plea agreement from DeVuono's criminal case (*id.*, Ex. D–F, ECF Nos. 96-12–13)[21];
>
> (3) the DOH's notice of charges and notice of an administrative hearing against DeVuono on charges of violating the school immunization law by falsely reporting to NYSIIS 1,898 vaccinations to 164 pediatric patients (*id.*, Ex. G–H, ECF Nos. 96-14–15);
>
> (4) the NYSIIS User Agreement (*id.*, Ex. I, ECF No. 96-16);
>
> (5) various letters from county health departments and letters to parents and schools regarding DeVuono and Wild Child (*id.*, Exs. B–C, J–M, ECF Nos. 96-10–11, 96-17–20);
>
>  (6) the DOH Directive, which is discussed above (*id.*, Ex. N, ECF No. 96-21); and
>
> (7) a placeholder for a witness statement that the DOH submits under seal. (*Id.*, Ex. O, ECF Nos. 96-22, 97.) This witness statement provides "the bases as to how the Department identified particular immunization records as fraudulent." (State Defs.' MTD Mem. at 9.)

Although the State Defendants rely on these exhibits throughout their Motion to Dismiss, they provide no legal authority showing that the court may consider these factual exhibits outside

---

[21] Although the Giovannetti Declaration states that DeVuono's plea agreement is attached as Exhibit F, it is not attached to the State Defendants' Motion to Dismiss. (Giovannetti Decl. ¶ 10,) However, the plea agreement is attached to the State Defendants' opposition to Plaintiffs' PI Motion. (*See* ECF No. 95-7.)

of the Amended Complaint when resolving a Rule 12(b)(6) motion.[22] The DOH Directive is integral to the Amended Complaint for the reasons explained above. (*See supra*, Factual Background § II.B.) However, I do not consider the remainder of this factual information outside of the Amended Complaint because the State Defendants fail to provide any reason why I should consider this information in analyzing their Rule 12(b)(6) motion and because such consideration is unnecessary to resolve the motion.

The School Defendants likewise submit the declaration of Chelsea Weisbord, which attaches 28 exhibits both to support their Motion to Dismiss and to oppose the PI Motion. (*See* Weisbord Decl., ECF No. 99.) They submit the following eight of those 28 exhibits in support of their Rule 12(b)(6) Motion to Dismiss and explain why the Court should consider them:

> (1) a copy of Plaintiff's Amended Complaint (Weisbord Decl., Ex. A, ECF No. 99-1);
>
> (2) the DOH press release described above, which is incorporated by reference into the Amended Complaint (*id.*, Ex. B., ECF No. 99-2 ("DOH Sept. 9, 2024 Press Release"));
>
> (3) school notices to the parents of A.C. and A.L. (*id.*, Exs. C–D, ECF Nos. 99-3–4), which are also incorporated by reference into the Amended Complaint; and
>
> (4) the appellate decisions by the Commissioner of Education, of which I took judicial notice above (*id.*, Exs. E–H., ECF Nos. 99-5–8).

In support of their Rule 12(b)(1) Motion to Dismiss, the School Defendants submit an affidavit from Accompsett Middle School Nurse Jennifer Harris. (*See* Harris Aff.) I address the

---

[22] Many of the factual materials submitted by the State Defendants are public records, and "[j]udicial notice may be taken of public records, including arrest reports, criminal complaints, indictments, and criminal disposition data" to determine "what statements the public records contained [and] not for the truth of the matters asserted." *Phillips*, 2024 WL 4307923, at *2. Defendants do not explain, however, what statements contained in the public records, such as the sentencing minutes, plea transcript, and plea agreement from DeVuono's criminal case or DOH's notice of charge and notice of an administrative hearing against DeVuono, are necessary for the resolution of their Rule 12(b)(6) Motion.

factual allegations in the Harris Affidavit because courts may consider facts outside the complaint in resolving a factual challenge to subject matter jurisdiction under Rule 12(b)(1). *See Harty*, 28 F.4th at 442. According to Harris, Accompsett Middle School sent Plaintiff Gina Larsen a letter on September 4, 2024, which stated that the records of vaccinations administered by Wild Child to her child, A.L., had been invalidated, and that A.L. would be excluded from school as of September 20, 2024, unless her parents provided new proof that she had received Tdap and Meningococcal immunizations. (Harris Aff. ¶¶ 11–12.) On Friday, September 20, 2024, A.L. missed school because, according to Larsen, A.L. was sick with pneumonia. (*Id.* ¶ 16.) Larsen submitted a doctor's note from medical practitioner Victoria Vamos, which stated that A.L. was being treated for pneumonia and should not be administered any vaccinations until she recovered. (*Id.* ¶ 12.) Harris informed Larsen that this note did not satisfy the medical exemption to the school immunization law, and that Larsen would still need to comply with the Section 2164's school immunization requirements. (*Id.* ¶¶ 13–14.) On the next school day— Monday, September 23, 2024—A.L. brought a signed NYSIIS report showing that she had received one of the two outstanding vaccines and a letter informing Harris that A.L was scheduled to receive the last outstanding vaccine. (*Id.* ¶ 15.) As a result, A.L. was permitted to resume school attendance on September 23, 2024, and only missed one day of school— September 20, 2024. (*Id.* ¶ 16.) In support of these facts, Harris submits nine exhibits of her own. (*See id.*, Exs. A–I.)

**IV.    Facts Alleged in the Parties' Submissions on the PI Motion**

As noted above, attached to the Amended Complaint are Plaintiffs' affidavits and the DOH and school notices they received. Plaintiffs do not submit any additional factual material in support of the PI Motion. In opposition, Defendants submit most of the same exhibits attached in

support of their Motions to Dismiss the Amended Complaint. The School Defendants submit nineteen exhibits attached to the Weisbord Declaration in opposition to the PI Motion, a number of which consist of affidavits from the various School District Defendants, which themselves attach numerous supporting exhibits. (*See* Weisbord Decl. ¶¶ 5–15.)[23]

For the reasons set forth below, I grant Defendants' Motion to Dismiss for failure to state a claim and dismiss the PI Motion as moot, and therefore do not consider the factual material offered by either party in support of their positions on the PI Motion.

## PROCEDURAL HISTORY

### I.      Original Complaint and TRO Motion

The Complaint in this action was filed on September 27, 2024 by 32 parents of students who had, until the 2024–2025 school year, attended public schools within school districts in Suffolk County, New York. The Complaint brought claims against the DOH and the students' respective school districts under Section 1983 to enforce rights under the Fourteenth Amendment Due Process Clause, the New York Constitution's due process provision, and Section 3214(3)(c)(1). (Compl., ECF No. 1.) On September 30, 2024, the original Plaintiffs filed

---

[23] *See* Antonetti Aff., Exs. A–B, ECF No. 99-9; Monsen Aff., Exs. A–C, ECF No. 99-10; Onesto Aff., Exs. A–B, ECF No. 99-11; Giardina Aff., Exs. A–E, ECF No. 99-12; Millan Aff., Exs. A–C, ECF No. 99-13; Campbell Aff., ECF No. 99-14; Exs. A–E, Fabian Aff., Exs. A–D, ECF No. 99-15; Cortes Aff., Exs. A–C, ECF No. 99-16; Dantuono Aff., Exs. A–E, ECF No. 99-17; Enright Aff., ECF No. 99-18; Castoro Aff., Exs. A–D, ECF No. 99-19; Ferris Aff., Exs. A–B, ECF No. 99-20; Foy Aff., Exs. A–C, ECF No. 99-21; McDonald Aff., Exs. A–C, ECF No. 99-22; O'Callaghan Aff., Exs. A–F, ECF No. 99-24; Cortes Aff., Exs. A–F, ECF No. 99-25; Petretti Aff., Exs. A–C, ECF No. 99-26; Jantzen Aff., Exs. A–D, ECF No. 99-27; Trentini Aff., ECF No. 99-28. Although I do not describe each specific exhibit attached to the Weisbord Declaration, some of them attach copies of the school notices sent to Plaintiffs, which are incorporated by reference into Plaintiffs' Amended Complaint. Above, I note several instances in which I have considered the school notices that are attached to affidavits submitted with the Weisbord Declaration because of Plaintiffs' failure to attach to the Amended Complaint all pages of the school notices for specific children.

31

an ex parte Motion for a Temporary Restraining Order ("TRO") against the DOH and School District Defendants. (TRO Mot., ECF No. 7.) However, those Plaintiffs did not serve any of the original Defendants with the Complaint, TRO Motion, or a summons. (Elec. Order, Oct. 3, 2024.)

Nonetheless, on September 30, 2024, counsel for the DOH entered an appearance and filed a letter requesting a "limited appearance [before this Court] in opposition" to Plaintiffs' ex parte TRO Motion. (DOH Ltr., Sept. 30, 2024, ECF No. 10.) The DOH's letter also notified the court of an action by some of the same plaintiffs, premised on identical facts and circumstances, pending in the Supreme Court of the State of New York, County of Nassau, *Mule v. New York State Dep't of Health*, Index No.: 616552/2024 (Sup. Ct., Nassau Cnty.). (*Id.*)

On October 1, 2024, I granted the DOH's request to enter a limited appearance in order to oppose the TRO Motion and ordered Plaintiffs to serve the TRO Motion on Defendants by October 2, 2024. (Elec. Ord., Oct. 1, 2024.) Later that day, the DOH filed a letter attaching the state court's most recent order in *Mule*. (DOH's Ltr., Oct. 1, 2024, ECF No. 15.) In that order, the court denied the petitioners' application for preliminary and permanent injunction and dismissed the petition in its entirety. (Mot. Seq. No. 1 Decision and Order, *Mule*, Index No.: 616552/2024 (Sup. Ct., Nassau Cnty. Oct. 1, 2024), NYSCEF No. 45 ("*Mule* Order"), ECF No. 15-1.). It concluded, among other things, that the petitioners failed to state a claim that their due process rights under either the United States or New York Constitution had been infringed by the DOH and School Districts' alleged conduct. (*Id.* at 14.)

Several days later, on October 3, 2024, the parties appeared for a video conference in this Court on the TRO Motion, at which time "Plaintiffs' counsel informed the Court that no defendant . . . had been served with a summons, the Complaint, or the TRO Motion, despite the

Court's Order" requiring such service by October 2, 2024. (Min. Entry, Oct. 3, 2024.) I heard from each party regarding the decision in *Mule* and "additionally raised concerns that Plaintiffs failed to demonstrate standing for injunctive relief and that Plaintiffs' claims against Defendant New York State Department of Health are precluded by Eleventh Amendment Sovereign Immunity." (Min. Entry, Oct. 3, 2024.) After oral argument, Plaintiffs represented that they would serve the original Defendants the following day, i.e., by October 4, 2024. (*Id.*) They also informed the Court that they voluntarily withdrew the TRO Motion and intended to file an amended complaint and a motion for a preliminary injunction. (*Id.*) As a result, I ordered Plaintiffs to serve any amended complaint and motion for a preliminary injunction on all Defendants by October 23, 2024, and issued a briefing schedule for Plaintiffs' anticipated motion for a preliminary injunction. (*Id.*)

Despite Plaintiffs' representations during the video conference, on the next day, October 4, 2024, Plaintiffs filed a motion for a two-week extension of time to serve Defendants. (ECF No. 44.) I granted the request in part and ordered that service be effected by October 14, 2024. (Elec. Order, Oct. 7, 2024.) Nevertheless, three days before this deadline, Plaintiffs requested another extension of time to serve the Defendants, this time until October 16, 2024. (ECF No. 50; Elec. Order, Oct. 15, 2024.) I granted that motion but informed Plaintiffs that I was "unlikely to grant any further extensions." (Elec. Order, Oct. 15, 2024.)

## II.    Amended Complaint and Pending Motions

On October 23, 2024, Plaintiffs served their Amended Complaint, which dropped eighteen of the original Plaintiffs and the New York state constitutional claims and added as Defendants Commissioner McDonald and the superintendents of the school districts for Plaintiffs' children, sued in their official capacities. (Am. Compl. ¶¶ 15–38.) Attached to the

Amended Complaint, Plaintiffs submitted a civil cover sheet, a rider naming all Defendants in the action, an exhibit containing affidavits from each Plaintiff except Larsen, and an exhibit containing the DOH and school notices sent to Plaintiffs regarding their children's potential exclusion from school for lack of adequate proof of required immunizations. (ECF Nos. 74-1–2; Plaintiff Affs.; DOH Notices; School Notices.)

The Amended Complaint is the operative complaint in this action. It seeks three forms of relief. First, it requests that the Court issue the following declaratory relief under 28 U.S.C. § 2201:

1. a declaration stating that "Defendants deprived Plaintiffs of their property right to a free public education without due process of law as required under the Fourteenth Amendment" (Am. Compl. ¶ 109);

2. a declaration stating that "the DOH's directive to the School Districts instructing the Districts to exclude the students and reject their certificates of immunization to be unconstitutional" (*id.* ¶ 110);

3. a declaration stating that "Defendant School Districts violated the NYS Education Law by barring students from attendance in school upon full instruction without providing the process required under the Education Law" (*id.* ¶ 111); and

4. a declaration "[a]s to the Second Cause of Action" for violation of the NYS Education Law, stating that the "School Districts' letters and instruction excluding Students from school to be unconstitutional." (*id.* ¶ 112.)

Second, Plaintiffs request under 28 U.S.C. § 1343(a) a *preliminary* injunction that would restrain:

1. the DOH from "unilaterally excluding Students unless and until it provides the process due under the Fourteenth Amendment" (Am. Compl. ¶ 113); and

2. the School District Defendants from "enforcing the DOH's directives or otherwise excluding Students from school based on mere allegations that Students' immunization records are falsified unless and until School Districts provide Students

with the process due under the Fourteenth Amendment and NYS Education Law" (*id.* ¶ 114).[24]

Plaintiffs do not explicitly request a permanent injunction, but generally request "[s]uch other and fuller relief as" the Court deems "just, proper and equitable." (Am. Compl. ¶¶ 109–15.) Nonetheless, I construe the requests for a preliminary injunction set forth in the Amended Complaint to seek both preliminary and permanent relief because both requests seek to enjoin Defendants conduct "unless and until" they provide the children with additional process. (Am. Compl. ¶¶ 113–14.)

On October 23, 2024, Plaintiffs filed a memorandum of law in support of their PI Motion without an accompanying motion as required by Local Civil Rule 7.1(a)(1). (Pls.' PI Mem.) Several weeks later, the State Defendants filed a motion to file certain documents under seal, which the Court granted in part and denied in part. (Elec. Order, Jan. 6, 2025.) After receiving several extensions of briefing deadlines, on January 8, 2025, both the State and School Defendants filed briefs in opposition to the PI Motion, along with the exhibits discussed in the Factual Background. (State Defs.' PI Opp'n; School Defs.' PI Opp'n; Weisbord Decl.)[25] On January 31, 2025, Plaintiffs submitted a reply brief in support of the PI Motion. (PI Reply.)

---

[24] Although Plaintiffs do not identify the specific provision of 28 U.S.C. § 1343(a) that provides the basis for the requested preliminary injunction, it appears that they rely on 28 U.S.C. § 1343(a)(3), which provides: "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person . . . [t]o redress the deprivation, under color of any State law . . . of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States." 28 U.S.C. § 1343(a)(3).

[25] On October 11, 2024, all Defendants jointly requested a three-week extension of the briefing schedule to respond to the motion, and after it was granted, the State Defendants requested a second extension. (ECF Nos. 87–88; Elec. Order, Nov. 18, 2024.) Plaintiffs initially consented to the State Defendants' second request, which I granted, but afterwards, withdrew their consent

When the State Defendants and School Defendants filed their briefs in opposition to the PI Motion on January 8, 2025, they also filed separate motions to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1), (b)(5), and (b)(6). (State Defs.' Mot. Dismiss; School Defs.' Mot. Dismiss.) In support of the motions, each set of Defendants submitted a memorandum of law. (State Defs.' MTD Mem.; School Defs.' MTD Mem.) Likewise, Defendants re-submitted most of the exhibits that they had attached to their oppositions to the PI Motion, including the State Defendants' sealed exhibit.

On January 27, 2025, Plaintiffs served on Defendants one memorandum of law in opposition to both Motions to Dismiss and did not submit any new factual materials. (Pls.' MTD Opp'n.) The Factual Background in Plaintiffs' opposition brief and the sections of the brief opposing Defendants' 12(b)(6) Motions do not cite a single case and are nearly identical to the Statement of Facts and the First and Second Causes of Action in the Amended Compliant. (*Compare* Pls.' MTD Opp'n at 4–11, 13–16 *with*, Am. Compl. ¶ 42–108.) The remainder of the memorandum responds to the various defenses raised by Defendants and, aside from the legal standards section, cites only four cases. (*See* Pls.' MTD Opp'n at 12–13, 16–19.) On February 7, 2025, the State Defendants and School Defendants each served on Plaintiffs reply briefs in further support of their Motions to Dismiss. (State Defs.' MTD Reply; School Defs.' MTD Reply.) Plaintiffs' PI Motion and Defendants' Motions to Dismiss are therefore fully briefed.

---

and moved for reconsideration of the Court's order granting a second extension. (ECF Nos. 89–90; Elec. Order, Dec. 10, 2024.) Plaintiffs withdrew their prior consent because they objected to an additional reason set forth in the DOH's second extension request: that the DOH needed additional time to submit certain evidence in opposition to the PI Motion in advance of the opposition brief deadline. (ECF No. 90.) I denied that motion for reconsideration because the DOH provided good cause for the second extension of time—counsel's unexpected illness—notwithstanding their request for time to submit evidence in opposition to the PI Motion. (Elec. Order, Dec. 12, 2024.)

### III.    The Court's Order to Show Cause

On May 2, 2025, I held that Plaintiffs failed to establish that they had properly served process on the State Defendants under Rule 4(j)(2), Fed. R. Civ. P., and Section 307(2) of the New York Civil Procedure Rule and Laws ("N.Y. C.P.L.R."). (*See* Show Cause Order.) My order identified two independent deficiencies in Plaintiffs' service: (1) Plaintiffs did not mark their envelope mailing service to the State Defendants "URGENT LEGAL MAIL"; and (2) Plaintiffs did not submit a sworn statement or some other evidence showing that they delivered a summons to an assistant attorney general, as required in order to effect service "upon the state." (*Id.* at 12.) I also found that Plaintiffs' deadline to serve Defendants had passed because Rule 4(m), Fed. R. Civ. P., requires service "within 90 days after the complaint is filed." *Id.* at 13; *see* Fed. R. Civ. P. 4(m). I therefore ordered Plaintiffs to show cause why their claims against the State Defendants should not be dismissed for these reasons. (*Id.* at 17.) Although Plaintiffs had not requested an extension of time to effect service under Rule 4(m), I also ordered Plaintiffs to explain why they would merit such an extension of time, to the extent that their response to the Order to Show Cause sought such an extension. (*Id.*)

On May 9, 2025, Plaintiffs filed a Motion to Extend Time Limit for Service, with an accompanying declaration from Plaintiffs' counsel, James G. Mermigis, and a supporting memorandum of law. (Mot. Extend Time, ECF No. 109; Pls.' Mem. Supp. Mot. Extend Time ("Mem. Extend Time"), ECF No. 109-2; Mermigis Decl., ECF No. 109-1). On May 14, 2025, I issued an order finding that Plaintiffs had failed to follow several of the instructions in the May 2, 2025 Order and had failed to "cite any authority whatsoever regarding the circumstances under which district courts may grant an extension of time for service." (Order at 7–8, ECF No. 110.) Nevertheless, I granted Plaintiffs' request for an extension of time and gave Plaintiffs until

37

May 19, 2025 to serve the State Defendants and file on ECF a sworn affidavit demonstrating

both personal service of the summons and Amended Complaint upon the State and mailed

service of the summons and Amended Complaint upon the State Defendants. (*Id.* at 11.)

Later on May 14, 2025, Mermigis filed a letter in which he stated, "I did personally serve

the Summons and Amended Complaint upon the Attorney General's Office." (ECF No. 111.)

Mermigis attached a time-stamped copy of the summons, which he had hand-delivered to the

Attorney General's Office on October 31, 2024. (*Id.*) However, the letter did not follow the

directions in the May 14, 2025 Order, which required that Plaintiffs effect mail service upon the

State Defendants and file on ECF a *sworn affidavit* demonstrating personal service on an

assistant attorney general in the Attorney General's Office in compliance with Section 307(2)(2),

N.Y. C.P.L.R. Accordingly, on the following day, May 15, 2025, I ordered that "Plaintiff must

still comply with the Court's May 14, 2025 Order." (Elec. Order, May 15, 2025.)

On May 16, 2025, Plaintiffs filed a timely affidavit from Mermigis, with supporting

factual materials. (Mermigis Aff. & Exs. A–C, ECF Nos. 112, 112-1–4.) Mermigis attested that

he had effected service upon the State Defendants by mailing the Summons and Amended

Complaint by certified legal mail, marked "URGENT LEGAL MAIL," to Commissioner

McDonald and had "personally served" the summons and Amended Complaint upon "Tashi

Lhewa, Assistant Attorney General by hand delivery." (Mermigis Aff. ¶¶ 4, 7; ECF No. 112-2.)

**STANDARDS OF REVIEW**

I.    **Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)**

"Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper

when the district court lacks the statutory or constitutional power to adjudicate it." *Green v.*

*Dep't of Educ. of the City of New York*, 16 F.4th 1070, 1075 (2d Cir. 2021); *see also Russo v.*

*United States*, No. 22-cv-1869, 2024 WL 726884, at *1 (2d Cir. Feb. 22, 2024) (summary order). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A court considers a Rule 12(b)(1) challenge before other arguments for dismissal because dismissal for lack of subject matter jurisdiction renders a defendant's defenses and objections moot. *Daly v. Citigroup Inc.*, 939 F.3d 415, 426 (2d Cir. 2019); *see also Pressley v. City of New York*, No. 11-cv-03234, 2013 WL 145747, at *5 (E.D.N.Y. Jan. 14, 2013) ("A court faced with a motion to dismiss pursuant to both Rule 12(b)(1) and (b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction.").

When a party raises a facial challenge to the court's subject matter jurisdiction, "the plaintiff has no evidentiary burden"; the district court need only "determine whether the [p]leading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016); *see also Lugo v. City of Troy*, 114 F.4th 80, 87 (2d Cir. 2024). In assessing a facial challenge to standing, a court "must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

When a party has placed jurisdictional facts into dispute by "offer[ing] extrinsic evidence that contradicts the material allegations of the complaint," however, "the court has the obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Harty*, 28 F.4th at 442. For example, when the extrinsic evidence "reveals the existence of factual problems" related to standing, the plaintiff "will need to come forward with evidence controverting that presented by the defendant regarding standing." *Lugo*, 114 F.4th at 87. "In that

39

case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon*, 752 F.3d at 243; *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 120 (2d Cir. 2017) (same). "[I]f the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing," the plaintiffs "are entitled to rely" on the complaint's allegations. *Carter*, 822 F.3d at 57–58.

## II.    Lack of Personal Jurisdiction for Insufficient Service of Process Under Rule 12(b)(5)

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Buon*, 65 F.4th at 73. "Therefore, to survive a motion to dismiss based on lack of personal jurisdiction and insufficient service of process" pursuant to Rule 12(b)(5), Fed. R. Civ. P., "the plaintiff must demonstrate that she adequately served the defendants." *Id.* In doing so, the "plaintiff bears the burden of establishing that service was sufficient." *See Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010) (citing *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005)). However, a defendant waives their right to contest service of process if the defense is not raised by a responsive pleading, or, if by "submission through conduct," the defendant "leads the plaintiff to believe that service was adequate." Fed. R. Civ. P. 12(h)(1); *Buon*, 65 F.4th at 74.

When deciding a Rule 12(b)(5) motion, the court considers whether the "plaintiff has complied with Rule 4, Fed. R. Civ. P., which governs the content, issuance and service of a summons," and "must look to matters outside the complaint to determine whether it has jurisdiction." *Grp. One Ltd.*, 523 F. Supp. 3d at 332. The court must also consider the timeliness of service, which is governed by Rule 4(m). Rule 4(m) provides, in relevant part:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4.

### III.    Failure to State a Claim Under Rule 12(b)(6)

A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Green*, 16 F.4th at 1076–77 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In determining if a claim is sufficiently plausible to withstand dismissal," a court "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in favor of the plaintiff[s] . . . ." *Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 91 (2d Cir. 2021). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord We The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130, 144 (2d Cir. 2023). While "detailed factual allegations" are not required, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.*

41

## DISCUSSION

### I.    Justiciability

Before considering the merits, I first determine whether I have subject matter jurisdiction over Plaintiffs' claims. Plaintiffs have standing to bring due process claims against all Defendants and to bring claims under Education Law Section 3214(3)(c)(1) against the School Defendants. However, Larsen's claims on behalf of A.L. are moot because A.L. continues to attend public school in person. I therefore grant the School Defendants' motion to dismiss Larsen's claims as moot and sua sponte dismiss Larsen's claims against the State Defendants as moot. I also dismiss the requests for declaratory and injunctive relief against the State and School Defendants set forth in paragraphs 109, 112, and 113 of the Amended Complaint because the requested relief, as framed, would not redress the alleged injuries to Plaintiffs' children. Finally, Plaintiffs' due process claims against the DOH are barred by Eleventh Amendment sovereign immunity but the claims against Commissioner McDonald are permitted under the *Ex parte Young* doctrine. Accordingly, Plaintiffs' due process claims against Commissioner McDonald and the School Defendants and Plaintiffs' Section 3214(3)(c)(1) claims against the School Defendants survive Defendants' Motions to Dismiss under Rule 12(b)(1).[26]

---

[26] On February 25, 2025 and April 8, 2025, Plaintiffs inquired about oral argument on the PI Motion. (ECF Nos. 106–07.). I have carefully considered the parties' submissions and find that oral argument would not be helpful because Plaintiffs' claims are dismissed either under Rule 12(b)(1) or Rule 12(b)(6). *See Dotson v. Griesa*, 398 F.3d 156, 159 (2d Cir. 2005) ("[A] district court acts well within its discretion in deciding dispositive motions on the parties' written submissions without oral argument."); *G.B. v. Nassau Cnty.*, 751 F. Supp. 3d 56, 62 n.4 (E.D.N.Y. 2024) (holding oral argument unnecessary on a preliminary injunction motion because it "would not assist the Court").  Moreover, Plaintiffs have not requested an evidentiary hearing on the PI Motion, and even if they had, it would be unnecessary because Plaintiffs' claims do not survive the Motions to Dismiss. *See Wall v. Constr. & Gen. Laborers' Union*, 80 F. App'x 714, 716 (2d Cir. 2003) ("[T]he district court did not abuse its discretion in denying [the] plaintiffs'

A.  Standing and Mootness

The State Defendants argue that Plaintiffs lack standing to challenge the determinations that their children are ineligible for in-person school attendance due to insufficient proof of immunization. The School Defendants argue that Larsen's claims on behalf of A.L. are moot. Because courts have "an independent duty to consider" questions of subject-matter jurisdiction, I consider standing and mootness as they relate to Plaintiffs' claims against all Defendants. *Doe v. McDonald*, 128 F.4th 379, 384 (2d Cir. 2025); *Williams v. Harry's Nurses Registry, Inc.*, No. 24-34-CV, 2025 WL 842041, at *2 (2d Cir. Mar. 18, 2025) (summary order) (citing *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009)).

Article III of the Constitution "limits the federal judicial power to deciding 'Cases' and 'Controversies.'" *Soule v. Conn. Ass'n of Sch.*, 90 F.4th 34, 45 (2d Cir. 2023) (citing U.S. Const. art. III § 2). A case or controversy only exists when the plaintiff has "standing" to sue because they have "a personal stake in the outcome of the litigation." *Id.* (citing *United States v. Texas*, 599 U.S. 670 (2023)). Where a parent asserts a claim in federal court on behalf of their minor children, the court considers whether the child "meet[s] the requirements for standing." *McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 284 (2d Cir. 2004); *see also Blakeman v. James*, No. 2:24-cv-1655, 2024 WL 3201671, at *17 (E.D.N.Y. Apr. 4, 2024) (citing *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 70 (2d Cir. 2001)). In order to establish Article III standing, a plaintiff must show: "(1) that they suffered an injury in fact, (2) that the injury is fairly traceable to Defendants' challenged conduct, and (3) that the injury is

---

motion for a preliminary injunction without a hearing" because the plaintiffs "could not demonstrate that an evidentiary hearing would help resolve any factual issues."); *Cano v. City of New York*, No. 1:22-cv-10557, 2024 WL 3905474, at *4 (S.D.N.Y. Aug. 22, 2024) (denying a plaintiff's request for a PI hearing because there were "no factual issues to resolve.").

likely to be redressed by a favorable judicial decision." *Soule*, 90 F.4th at 45 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). A "plaintiff must demonstrate standing for each claim that they press and for each form of relief that they seek." *Id.* (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)).

The doctrine of mootness also limits a federal court's jurisdiction. "While standing doctrine focuses on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed . . . mootness doctrine ensures that a litigant's interest in the outcome continues to exist throughout the life of the lawsuit." *Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 444 (2d Cir. 2021). The question of mootness concerns whether "as a result of changed circumstances, a case that presented an actual redressable injury at the time it was filed ceases to involve such an injury." *Id.*

For the reasons explained below, Plaintiffs have standing to bring Fourteenth Amendment due process claims against all Defendants and Section 3214(3)(c)(1) claims against the School Defendants, but Larsen's claims on behalf of A.L., who lacks an injury in fact, are moot.

### i. *Fourteenth Amendment Due Process Claims*

#### 1. *Injury in Fact*

Defendants do not contest that Plaintiffs' children have suffered an injury in fact for purposes of Plaintiffs' standing to bring Fourteenth Amendment claims. In order to demonstrate an "injury in fact," a plaintiff must establish "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *see also Soule*, 90 F.4th at 45, 50 (citing *TransUnion*, 594 U.S. at 423). A concrete injury is one that is "real, and not abstract." *Soule*, 90

44

F.4th at 45 (quoting *TransUnion*, 594 U.S. at 424). It does not necessarily have to be "tangible," but a "bare procedural violation" of a statutory right is insufficient when "divorced from concrete harm." *Spokeo*, 578 U.S. at 341. To be "particularized," an injury "must affect the plaintiff in a personal and individual way." *Soule*, 90 F.4th at 45–46. Finally, an injury is "actual or imminent" if it has "actually happened or is certainly impending." *Id.* at 46 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

Plaintiffs' Fourteenth Amendment claims allege an invasion of their children's legally protected interest in attending free public schools, and that injury meets each of the injury-in-fact requirements. As the Second Circuit has recognized, New York law "create[s] a property interest" in "free public [K-12] education" that is protected by the Fourteenth Amendment. *Handberry v. Thompson*, 446 F.3d 335, 353 (2d Cir. 2006) (citing *Goss v. Lopez*, 419 U.S. 564 (1975)); *Kajoshaj v. New York City Dep't of Educ.*, 543 F. App'x 11, 16 (2d Cir. 2013). The Amended Complaint alleges that the children suffered an imminent deprivation of their concrete property interest in a "free public education." (Am. Compl. ¶ 83.) Following the DOH's invalidation of the children's DeVuono/Wild Child vaccination records, Plaintiffs received notices from the DOH and the School Defendants informing them that their children had fourteen days or less to provide proof of immunity through serological testing or valid proof of vaccination, or the children would be "excluded from school." (Am. Compl. ¶¶ 69–82, 109; School Notices; DOH Notices.) The DOH and school notices therefore made clear that all of the children faced "certainly impending" removal from school unless the parents took specific steps to avert such a result. *Soule*, 90 F.4th at 46. The parties also agree that "all students-plaintiffs," with the exception of A.L., "are currently being homeschooled, or have otherwise withdrawn from school." (*See* State Defs.' MTD Mem. at 15–16; School Defs.' MTD Mem. at 13–25; Pls.'

MTD Opp'n at 9.)[27] Thus, all of the children have suffered an injury in fact with respect to Plaintiffs' Fourteenth Amendment due process claims.

## 2. *Traceability*

The principal standing question in this action centers on whether the children's injury meets the "traceability" requirement of Article III for each of the Defendants. Defendants argue that Plaintiffs have inflicted upon their children any injury in the form of school exclusion because Plaintiffs could have avoided this result after the invalidation of the children's DeVuono/Wild Child vaccination records by providing either serologic testing records showing their children's immunity from specific diseases, new proof of the required vaccinations, or proof that their child was in the process of being immunized. The question of standing therefore turns on whether the alleged injuries in fact—the children's exclusion from school—are traceable to the challenged conduct of the State and School Defendants or whether the injuries are self-inflicted.

To satisfy the traceability requirement, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged

---

[27] The parties use different language to describe Defendants' alleged conduct. (*See* State Defs.' MTD Mem. at 15–16 (arguing, without citing evidence in the record, that Plaintiffs "withdrew" their children from school under threat of exclusion unless Plaintiffs provided new proof of compliance with the school immunization law), *with* Pls.' MTD Opp'n at 9 (arguing that Defendants "excluded" the children from school).) Defendants' factual submissions reveal that while some Plaintiffs may have withdrawn their children from school, others likely did not. For example, Plaintiff Arianna Stubbman sent a letter to her child's school informing the school that she was "*withdrawing* L.S. from enrollment in the District and intended to homeschool L.S." (O'Callaghan Aff. ¶ 17 (emphasis supplied)). By contrast, after Plaintiff Ann Marie DeGregoria sent her child, L.D., to school without providing new proof of immunization, the school called DeGregoria and required that she pick up her child because the school was "required to exclude L.D." (Castro Aff. ¶ 18, ECF No. 99-19.) Afterwards, L.D. "transitioned to homeschool." (Castro Aff. ¶ 20.) I need not resolve at this stage whether each child withdrew or was excluded from school because, for the reasons discussed below, this question does not alter the standing analysis.

action of the defendant." *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 84 (2d Cir. 2013) (citing *Lujan*, 504 U.S. at 560). The traceability requirement seeks to ensure that the plaintiff's injury is "not the result of the independent action of some third party not before the court." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) (citing *Lujan,* 504 U.S. at 560–61). However, it "does not create an onerous standard." *Id.* All the plaintiff must establish is a "line of causation" between the defendant's conduct and the alleged injury that is not too speculative or attenuated. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024). "[This] is a lower bar than proving causation on the merits. So long as there is a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant, traceability can be satisfied." *In re Unite Here Data Sec. Incident Litig.*, 740 F. Supp. 3d 364, 376 (S.D.N.Y. 2024).

"To be sure, a plaintiff may not establish injury for standing purposes based on a self-inflicted injury." *Nat. Res. Def. Council*, 710 F.3d at 85.  Nevertheless, a plaintiff is not required for standing purposes to take every "legally available 'alternative'" course of action that might avert injury, if doing so would "require [a plaintiff] to subject itself to the very framework it says unconstitutionally burdens" its constitutional rights. *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 297–98 (2022). In *Federal Election Commission v. Cruz*, the Supreme Court "made clear that an injury resulting from the application or threatened application of an unlawful enactment remains fairly traceable to such application even if the injury could be described in some sense as willingly incurred." 596 U.S. at 297. For an injury to be self-inflicted, it must be "so completely due to the plaintiff's own fault as to break the causal chain." *St. Pierre v. Dyer*, 208 F.3d 394, 402 (2d Cir. 2000); *see also Backer ex rel. Freedman v. Shah*, 788 F.3d 341, 344 (2d Cir. 2015).

Put differently, "[s]o long as the defendants have engaged in conduct that may have contributed to causing the injury, it would be better to recognize standing." *St. Pierre*, 208 F.3d at 402.

In *Cruz*, the Supreme Court applied these standards to find standing where a party had purposely incurred injury in the form of loaning his Senate reelection campaign $10,000 more than he could legally be repaid from post-election funds in order to challenge the threatened enforcement of Section 304 of the Bipartisan Campaign Reform Act. 596 U.S. at 294–95. The government argued that the plaintiffs lacked standing to challenge the loan-repayment limitation because (1) the candidate had purposefully incurred the injury and (2) the campaign could have avoided any liability through the "legally available alternative" of repaying the loan in full from pre-election funds within 20 days of the election. *Id.* at 298. However, the Supreme Court held there was standing even though the plaintiffs "knowingly triggered the application of the loan-repayment limitation." *Id.* at 297. Additionally, because compliance with the government's "alternative" would "require [the campaign] to subject itself to the very framework it says unconstitutionally burdens" its First Amendment rights, the campaign was not required to "forgo the exercise of" those rights in order to assert standing. *Cruz*, 596 U.S. at 298; *cf., St. Pierre*, 208 F.3d at 403 (finding "instructive" for purposes of assessing traceability in the standing analysis the torts principle that a "defendant is not liable for consequences preventable by action that reason requires the plaintiff to take").

Consistent with the rules set out in *Cruz*, the Second Circuit has drawn a distinction between claims that challenge "a rule that limits *eligibility* for a" benefit, as opposed to claims that challenge "a component of the application process itself." *Antonyuk v. James*, 120 F.4th 941, 976, 979 (2d Cir. 2024), *cert. denied*, No. 24-795, 2025 WL 1020368 (U.S. Apr. 7, 2025) (emphasis in original). With respect to the former category of claims, the Second Circuit has held

48

that "[a]s a general matter, to establish standing to challenge an allegedly unconstitutional policy, a plaintiff must submit to the challenged policy" unless the plaintiff "makes a substantial showing that application for the benefit . . . would have been futile." *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997) (citing *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 167–68 (1972)). Thus, "[t]he Second Circuit has repeatedly . . .  conclude[d] that a plaintiff who fails to submit to the procedural requirements of a law or policy that offers an exemption or other relief from its mandate does not have standing to challenge the restrictions imposed by the law or policy," unless the plaintiff shows that application for the exemption was futile. *Wade v. Univ. of Conn. Bd. of Trs.*, 554 F. Supp. 3d 366, 377 (D. Conn. 2021) (citing *Jackson-Bey*, 115 F.3d at 1095, and *United States v. Decastro*, 682 F.3d 160 (2d Cir. 2012)). By contrast, "when the plaintiff challenges [an] application itself (or . . . a portion thereof)," and submitting to the application process would cause injury, the plaintiff "is not required to first comply with the objected-to component before bringing suit." *Antonyuk*, 120 F.4th at 980 (emphasis in original).

For example, in *Jackson-Bey*, the Second Circuit held that an incarcerated man lacked standing to bring a First Amendment free exercise claim against the application of a correctional institution policy that prohibited him from wearing certain religious clothes to his father's funeral. 115 F.3d at 1094–95. The standing analysis turned on the fact that the plaintiff had neither "follow[ed] the simple procedure of registering his religion" with the prison—which would have enabled him to request permission to wear his religious garb—nor established that registration would have been futile in that he would still have been denied the requested religious accommodation. *Id.* at 1095–96. The Second Circuit reasoned that the "injury suffered by [the plaintiff] result[ed] from his own decision not to follow" the prison's registration procedure. *Id.* at 1095. Similarly, in *United States v. Decastro*, the Second Circuit, relying on *Jackson-Bey*, held

49

that a criminal defendant challenging his conviction for unlawful transport of a firearm across state lines lacked standing to argue that New York's firearms licensing scheme was unconstitutionally restrictive because he had neither applied for the firearms license at issue nor shown that he would have been denied the license had he applied. 682 F.3d at 164.

By contrast, in *Antonyuk*, the Second Circuit held that a plaintiff had standing to challenge the same firearms licensing scheme at issue in *Descastro*, even though he had not applied for a license, because the claim challenged the constitutionality of a disclosure requirement within the firearm licensing application process. 120 F.4th at 977. The plaintiff did not want to provide information about his "associates," turn over his social media, or submit to an interview in which there "did not appear to be any limits on the questions he [could] be asked," as required by the application process. *Id.* at 977. The Second Circuit acknowledged that the plaintiff's injury—the inability to exercise his Second Amendment rights—"stems from his own unwillingness to comply with the challenged requirements." *Id.* However, because the court must assume as valid the merits of a plaintiff's claim when assessing standing, the Second Circuit assumed the disclosure requirement was unconstitutional. *Id.*; *see also Cruz*, 596 U.S. at 298 ("For standing purposes we accept as valid the merits of appellees' legal claims."). It reasoned that it would "contravene[] common sense" if the plaintiff had to "first comply with the objected-to component before bringing suit" because this would mean that "the only way a plaintiff can challenge an application process is to do exactly what the plaintiff claims that he may not be required to do." *Antonyuk*, 120 F.4th at 980. Thus, the Second Circuit held that the plaintiff could challenge the disclosure requirement without first complying with it.

Under these standards, Plaintiffs have met the traceability requirement with respect to their due process claims against both the State and School Defendants for the reasons discussed below.

a.  <u>State Defendants</u>

The State Defendants argue that the children's injury was self-inflicted, but do not cite any specific authority in support. (State Defs.' MTD Mem. at 16.) If successful, their argument would liken the claims of Plaintiffs in this action to those of the plaintiff in *Jackson-Bey*. The State Defendants contend that the children "have benefitted from months" within which they could have "quickly and easily [brought] themselves into compliance with the Public Health Law by undergoing serologic testing or receiving their necessary vaccinations." State Def's MTD Mem. at 16–17; *see Jackson*-Bey, 115 F.3d at 1095–96 (requiring a plaintiff to "follow the simple procedure of registering his religion" with officials at the correctional facility as a "threshold for standing").

The record supports the State Defendants' argument that Plaintiffs failed to bring their children into compliance with the school immunization law after being notified of the invalidation of the children's DeVuono/Wild Child vaccination records in the NYSIIS. After voiding these records, the DOH instructed each of the School Defendants to "notify the person in parental relation" to each child of the "responsibility to vaccinate" and that failure to provide "new proof of vaccination or immunity by the fourteen-day deadline" would result in exclusion from school. (Sept. 9 DOH Ltr. to Schools.) Consistent with that directive, all Plaintiffs (with the exception of Gina Larsen, who did not submit an affidavit) attest in their affidavits that they received notice from their child's school that "to remain in school—my child would need to be revaccinated against certain diseases and either submit serological samples of antibodies (titers)

51

or get revaccinated." (*See, e.g.*, Walker Decl. ¶ 7.)[28] Larsen followed these procedures, and her daughter, A.L., was allowed to attend school after submitting valid immunization records. (Harris Aff. ¶¶ 10–11, 14–17). The School Defendants argue that "[i]nstead of attempting this simple fix, [the remaining] Plaintiffs withdrew their children from the School Districts and/or transferred them to homeschooling." (School Def's PI Opp'n at 49.)[29]

Contrary to Defendants' characterization, Plaintiffs argue that their children were "removed" from school in what they liken to suspensions, citing a New York statute governing school suspensions as well as language in the School Defendants' notices stating that the children would be "excluded" if they did not show proof of vaccination or serologic testing confirming immunity to certain diseases. (Am. Compl. ¶ 67, 69–82; Pls' MTD Opp'n at 15–17; *see, e.g.*, School Notices at 1 ("Your child . . . will be excluded from school beginning September 18, 2024, until such a time that they are in compliance with the immunization requirements of New York State").)

Whether the children's injuries are traceable to the State Defendants challenged conduct presents a close question. On the one hand, the State Defendants "may have contributed to causing the injury"—the children's alleged exclusion from school—through the DOH's

---

[28] This statement appears in the affidavits of the other Plaintiffs at Plaintiff Affs. at 6 ¶ 7, 9 ¶ 7, 12 ¶ 7, 15 ¶ 718 ¶ 7, 21 ¶ 7, 24 ¶ 7, 27 ¶ 7, 30 ¶ 7, 33 ¶ 7, 36 ¶ 7, 40 ¶ 7. The record also shows that the DOH sent identical notices to the parents, which also informed them of the option to show their children's immunity through serologic testing. (*See* DOH Form Notice (linking to the 2024-25 New York School Immunization Requirements Document).) However, the parties contest whether the DOH notified the parent of child K.P. that it had voided K.P.'s vaccination records. (Pieper Aff. ¶ 4; Giovannetti Decl. ¶ 25.)

[29] Although the School Defendants make this specific argument in opposition to Plaintiffs' PI Motion, it also applies to the question of whether Plaintiffs have standing to bring due process claims against the State Defendants.

invalidation of the children's DeVuono/Wild Child vaccination records and accompanying requirement that Plaintiffs provide proof of immunity through serologic testing records, new vaccination records, or proof that their children were in the process of being immunized. *St. Pierre*, 208 F.3d at 402.[30] On the other hand, all Plaintiffs, with the exception of Larsen, failed to follow available procedures for ensuring their children remained in school—i.e., by either showing their children's immunity through serological testing or presenting new proof of vaccination or proof their children were in the process of being immunized.

Nowhere in their briefing or factual submissions do Plaintiffs explain *why* they did not avail themselves of any of the options for bringing their children into compliance with New York's school immunization requirements. Defendants submit evidence that some of the children applied for religious exemptions to the immunization requirement before the New York State Legislature repealed the religious exemption in 2019, but Plaintiffs do not make any explicit religious, medical, or other objection to providing new or updated proof of immunity following the invalidation of their children's DeVuono/Wild Child vaccination records. *See* PHL § 2164(9) (repealed 2019); *id.* § 2164(8); *see, e.g.*, Monsen Aff. ¶ 10 (M.W. previously received religious exemption); Giardina Aff. ¶ 5 (same for A.C.); Cortes Aff. ¶ 5 (same for R.J.).[31] Rather,

---

[30] Whether the School District Defendants affirmatively took action to disenroll Plaintiffs' children from school following receipt of the DOH Directive or whether Plaintiffs withdrew their children under the threat of exclusion does not alter the traceability analysis. "[A]n injury resulting from the application or *threatened application* of" a challenged policy "remains fairly traceable to such application, even if the injury could be described in some sense as willingly incurred." *Cruz*, 596 U.S. at 298 (emphasis added).

[31] One Plaintiff, Amy Habel, attests that "it's a lot [of vaccinations] in a short period of time and this accelerated schedule poses a risk to an already sick child." (Habel Aff. ¶10.) However, Habel attests that her child G.H. is "up to date on his or her vaccinations" and does not explicitly object to the requirement to provide updated proof of immunity through serologic testing or a

Plaintiffs simply argue that they "*did* comply with PHL § 2614" by "provid[ing] Defendants with certificates of immunization signed by a New York licensed health care practitioner," referring to the DeVuono vaccination records for their children, which were invalidated by the DOH. (*See* Pl.'s PI Mem. at 14 (emphasis supplied).)[32] Plaintiffs' due process claims boil down to the argument that the DOH's requirement that Plaintiffs take additional steps to comply with New York's school immunization law violated their children's procedural due process rights to notice and a pre-deprivation opportunity to be heard and substantive due process right to be protected from conduct that is outrageous or arbitrary or that shocks the conscience. (Pls.' PI Mem. at 14.) Thus, even though Plaintiffs do not *explicitly* object to the DOH's requirement that they provide proof of their children's immunity apart from the invalidated DeVuono/Wild Child vaccination records, Plaintiffs' due process claims against the State Defendants are entirely premised on such an objection.

---

certificate of immunization from a different medical provider. (*See id.* ¶ 6.) Likewise, Plaintiff Noreen Pieper attests in her affidavit that her child K.P. had missed "considerable school time due to health issues related to her Asthma." (Pieper Aff. ¶ 10.) However, Pieper does not offer this statement as a reason why K.P. cannot be vaccinated, but rather as a basis for arguing that missing additional school would cause K.P. irreparable harm. (*See id.*)

[32] Plaintiffs' brief in opposition to Defendants' Motions to Dismiss only briefly responds to Defendants' arguments and instead largely restates verbatim the factual and legal assertions pleaded in the Amended Complaint. (*See* Pls.' MTD Opp'n.) Instead, Plaintiffs make most of their substantive arguments in opposition to the Motions to Dismiss in their reply brief filed in support of the PI Motion. As discussed in Discussion § III.A *infra*, Plaintiffs forfeited these arguments by failing to make them in their brief in opposition to Defendants' Motions to Dismiss. However, because of the Court's "independent duty" to assess subject matter jurisdiction, for the purpose of resolving the question of Plaintiffs' standing, I will consider arguments made in Plaintiffs' briefing on the PI Motion in order to assess standing. *See Doe*, 128 F.4th at 384. This does not unduly prejudice Defendants because briefing on the PI Motion concluded before briefing on Defendants' Motions to Dismiss. Additionally, in the School Defendants' reply brief in support of their Motion to Dismiss, the School Defendants responded to some of the arguments made in Plaintiffs' PI reply brief. (*See, e.g.*, School Defs.' MTD Reply at 1–3.)

As a result, Plaintiffs' due process claims challenge the very requirements that Plaintiffs failed to follow. In determining whether the children's injury is entirely self-inflicted so as to "break the causal chain" between the State Defendants' conduct and the children's injuries, I must assume that the State Defendants failed to afford Plaintiffs notice and an opportunity to be heard before enforcing the children's alleged exclusion from school for failure to provide proof of immunity apart from the invalidated DeVuono/Wild Child records. *See Cruz*, 596 U.S. at 298 (accepting as valid, for purposes of the standing analysis, the merits of appellees' claim that the challenged loan-repayment limitation unconstitutionally burdens speech even if appellees knowingly triggered application of the limitation).

Like the plaintiffs in *Cruz* and *Antonyuk*, the children allege "that a portion of [the school vaccination scheme's] *process* is unconstitutional" and that their injuries flow from that allegedly unconstitutional process. *See Antonyuk*, 120 F.4th at 979–80. Assuming for the purposes of standing that the children were in fact denied due process when the State and School Defendants notified Plaintiffs that their children would be excluded from school unless they provided new proof of immunity, the children's alleged exclusion from school is traceable to the State Defendants' act of invalidating the children's DeVuono/Wild Child vaccination records and requiring alternative proof of immunity in the form of serologic testing records, new vaccination records, or records showing that the children were in the process of being immunized. In this context, the children's injuries are not entirely self-inflicted because requiring Plaintiffs to provide such alternative proof of immunity would force them to "do exactly what [they] claim[] that [they] may not be required to do": remedy immunization records that they maintain are already sufficient. *See id.* at 980. Thus, Plaintiffs failure to take steps to prevent their children's alleged exclusion from school—providing proof of immunity through serologic testing records,

55

new vaccination records, or records showing the children were in the process of being immunized—does not render the children's injuries entirely self-inflicted so as to defeat traceability to the State Defendants' alleged conduct. Accordingly, the traceability requirement is satisfied.

This case is therefore distinguishable from *Jackson-Bey*. There, the plaintiff's free exercise claim challenged the prohibition on his ability to wear religious garments to a funeral, but did *not* challenge the prison's process for incarcerated persons to register their religion in order to request such religious accommodations. 115 F.3d at 1096. Because Plaintiffs here *are* challenging the alleged lack of notice and opportunity to be heard preceding their children's exclusion from school absent the provision of new proof of immunity, unlike *Jackson-Bey*, they are not required to "subject [themselves] to the very framework that [they] say[] unconstitutionally burdens" their due process rights *before* challenging the State Defendants' conduct. *See Cruz*, 596 U.S. at 298.

This conclusion is somewhat in tension with decisions by courts in this Circuit prior to the Supreme Court's decision in *Cruz*. For example, in *Wade v. University of Connecticut Board of Trustees*, a district court held that one plaintiff lacked standing to challenge a university COVID-19 vaccination requirement where she had not applied for a medical or non-medical exemption to the vaccination requirement. 554 F. Supp. 3d 366 at 377. The court relied on the Second Circuit's longstanding rule that "[a]s a general matter, to establish standing to challenge an allegedly unconstitutional policy, a plaintiff must submit to the challenged policy." *Id*. (citing *Libertarian Party v. Cuomo*, 970 F. 3d 106, 121 (2d Cir. 2020), and discussing *Jackson-Bey*, 115 F.3d 1091, and *DeCastro*, 682 F.3d 160). Like the plaintiff in *Wade*, Plaintiffs here did not apply for an available exemption to the school immunization requirement set forth in Section 2164,

which only permits an exemption where a licensed physician certifies that "such immunization may be detrimental to a child's health." PHL § 2164(8). The Amended Complaint does not allege that any Plaintiff applied for this exemption for their child. Nor do Plaintiffs provide any factual submissions on the Motions to Dismiss or the PI Motion showing that any Plaintiff applied for such an exemption or that such an application would be futile. *Jackson-Bey*, 115 F.3d at 1096 (holding that futility is the "only" exception to the "threshold requirement" that "a plaintiff must submit to the challenged policy" in order to have standing to challenge the policy").

*Wade* is distinguishable for two reasons. First, whereas Plaintiffs here argue that the children *did* submit valid proof of immunization and therefore object to "do[ing] exactly what [they] claim[] that [they] may not be required to do," *Antonyuk*, 120 F.4th at 980, in *Wade* the plaintiff's only objection to applying for an exemption was that the criteria for granting such an exemption was unconstitutionally vague. *See Wade.*, 554 F. Supp. 3d at 378. Second, the plaintiff in *Wade* was ineligible for a medical exemption and could have applied for a non-medical exemption but failed to do so. 554 F. Supp. 3d at 377. Here, the only exemption to the school immunization requirement is a medical exemption. *See* PHL § 2164(8). Because Plaintiffs maintain that they are already vaccinated, it is unclear how they could show that vaccination would be detrimental to their children's health so as to merit a medical exemption.[33]

Accordingly, in the factual context presented here, Plaintiffs failure to apply for a medical exemption to the school immunization requirement in Section 2164 does not defeat

---

[33] Although Plaintiff Amy Habel attests that the requirement that her child, G.H., be vaccinated on an "accelerated schedule poses a risk to an already sick child," she also attests that G.H. is "up to date on his or her vaccinations," which suggests that he does not seek or warrant a medical exemption. (Habel Aff. ¶¶ 6, 10.)

57

traceability. In *Cruz*, the Supreme Court held, "[t]hat appellees chose to subject themselves to the [challenged] provisions does not change the fact that they *are* subject to them, and will face genuine legal penalties if they do not comply." 596 U.S. at 297. By that same logic, Plaintiffs have met the traceability requirement with respect to the State Defendants' challenged conduct.

b.  <u>School Defendants</u>

Although the School Defendants do not challenge Plaintiffs' standing, the Court has an "independent duty" to consider a plaintiff's standing when the issue appears within the record. *Doe*, 128 F.4th at 384; *Williams*, 2025 WL 842041, at *2. I therefore consider whether the traceability element is met with respect to Plaintiffs' due process claims against the School Defendants, who argue that they had "nothing to do" with the DOH's decision to invalidate the DeVuono/Wild Child immunization records for Plaintiffs' children. (School Defs.' MTD Mem. at 12–13.) According to the School Defendants, they "simply followed the Public Health Law and complied with DOH's strongly worded directives detailing that they were required" to exclude Plaintiffs' children from school lest they "violat[e] the Public Health Law" and thereby "subject the School District taxpayers to civil penalties from the State." *Id.* at 13.

Plaintiffs disagree. The Amended Complaint alleges that the School Defendants did "more than blindly follow" the DOH directives and that they "adopted the DOH's conclusions and explicitly determined that [the] Children were not vaccinated." (Am. Compl. ¶¶ 60–61; *see also* Pls.' PI Mem. at 7.) However, this allegation is both conclusory and contradicted by Plaintiffs' own admission that the DOH "erased Children's electronic immunization records" and "instructed Defendant School Districts to refuse certificates of immunization signed by [Julie DeVuono]." (Am. Compl. ¶¶ 57–59.) Moreover, when extrinsic evidence "reveals the existence of factual problems" concerning the existence of subject matter jurisdiction, the plaintiff "will

need to come forward with evidence controverting that presented by the defendant regarding standing." *See Lugo*, 114 F.4th at 87. Here, the record contains uncontroverted evidence that the School Defendants followed the State Defendants' orders, rather than exercising independent discretion, in invalidating the DeVuono/Wild Child vaccination records for the children and requiring Plaintiffs to show proof of their children's immunity through serologic test records, new vaccination records, or records showing that the children were "in process" of being immunized. *See, e.g.*, Dear Superintendent Letter, *supra* note 8 (DOH advising schools that they would face a penalty of up to $2,000 for each student permitted to attend school in violation of Section 2164); 10 N.Y. C.R.R. §§ 66-1.2(d)(1)(i)–(ii), (2)(ii) (indicating that medical practitioners and DOH staff can edit records in the NYSIIS database, but schools have only "read-only" access).[34]

Nonetheless, Plaintiffs have satisfied the traceability requirement for their Fourteenth Amendment due process claims against the School Defendants because these issues with respect to causation are better suited for consideration on the merits for two reasons.

---

[34] The record also contains the DOH Directive, which provided the School Defendants some discretion in making exclusion decisions in limited circumstances where the DOH had *not* voided pediatric immunization records issued by DeVuono/Wild Child that reflected "legitimately administered . . . vaccinations"—a situation that does not apply to the Plaintiffs in this action. (Ex. N, Giovannetti Decl.) As a result, the DOH informed the School Defendants that "[a]t your discretion taking into account your obligation to reject immunization records you believe to be fraudulent . . . you may decide to consider current NYSIIS records from Wild Child/Julie Devuono as valid proof of vaccinations." (*Id.*) However, this section of the directive did *not* apply to the vaccination records for Plaintiffs' children because the Amended Complaint alleges, and the record on the Rule 12(b)(1) Motion indicates, that the DeVuono/Wild Child vaccination records for Plaintiffs' children were voided and removed from NYSIIS. (Am. Compl. ¶ 44; *see also* DOH Notices at 2, 4, 10, 13, 18, 20, 22, 24, 27, 31 (showing that every Plaintiff but Noreen Pieper, Amy Habel, and Kelly McKeon received a notice from the DOH that their child's records had been removed from NYSIIS); Habel Aff. ¶ 4 (stating that Habel received the DOH notice); McKeon Aff. ¶ 4 (stating that McKeon received the DOH notice); Harris Decl. ¶ 20 (stating that the DOH erased from NYSIIS immunization records belonging to Noreen Pieper's child).)

First, although the School Defendants may have been legally required to exclude the children from school absent new proof of compliance with the school immunization law, the DOH delegated to the School Defendants the responsibility to provide some of the notice that Plaintiffs challenge in this action. Indeed, the DOH notified parents that it had deleted "some or all of your child's immunizations" from NYSIIS and that if the issue was not remedied within fourteen days from the start of the school year, the children "must immediately be excluded [from school]." (DOH Form Notice.)  However, it told the School Defendants that they were "still responsible for completing" various steps for enforcing New York's school immunization requirements, including notifying "the person in parental relation" to each child "of their responsibility to vaccinate." (Sept. 9 DOH Ltr. to Schools.) Pursuant to that direction, the School Defendants provided more personalized notice to the parents, which included information about the specific vaccination records that the DOH had voided and the steps parents could take to keep their children in school. (*See generally* School Notices.) The School Defendants also provided notice of the right to appeal the DOH's decision to eight of the fourteen Plaintiffs. (*Id.* at 9, 12, 15, 17, 23, 26, 29; ECF No. 99-24 at 11.) And some School Defendants also gave the parents more advance notice of their children's impending exclusion from school than others. (*See supra*, Factual Background § II.C.) Because Plaintiffs challenge the adequacy of the notice that they received, the School Defendants' "conduct [] may have contributed to causing the injury" of the children's alleged exclusion from school by providing insufficient notice to the parents—as I must assume for the purpose of standing. *See St. Pierre*, 208 F.3d at 402; *Cruz*, 596 U.S. 298.

Additionally, the School Defendants allegedly contributed to the children's injury by enforcing the DOH Directive that Plaintiffs argue deprived their children of their property

60

interest in free public education. Not only did the School Defendants provide notice to Plaintiffs, but staff members for the School District Defendants communicated directly with many of them by email or phone or in-person regarding their children's impending exclusion from school. (Ferris Aff. ¶¶ 6–7; O'Callaghan Aff. ¶ 10; Foy Aff. ¶ 7; Harris Aff. ¶¶ 22–24.) With respect to two children, staff of the School District Defendants also emailed the DOH to inquire whether they could accept specific vaccination records signed by DeVuono/Wild Child. (Harris Aff. ¶¶ 22–24; Farris Aff. ¶ 7–10.) With respect to children S.T. and L.S., staff of the School District Defendants gave the children brief extensions of time to submit valid proof of vaccination or immunization. (Foy Aff. ¶ 8; O'Callaghan Aff. ¶ 8.) Notwithstanding the School Defendants' possible defense on the merits that they had no choice but to exclude the children due to the DOH's decisions and directives, the School Defendants' alleged conduct is traceable to the children's injuries for the purposes of standing analysis.

This conclusion is supported by the decisions of other district courts that have rejected the "[governmental defendant]-made-us-do-it defense" to traceability. *Isabel v. Reagan*, 394 F. Supp. 3d 966, 972 (D. Ariz. 2019). For example, in *Isabel v. Reagan*, a court held that a voter had standing to bring a lawsuit against several counties that implemented a policy that deemed invalid any ballot cast after a date set by the Arizona Secretary of State. *Id.* at 972–73. Although the counties argued that the voter's injury was caused by the Secretary of State and that they were simply required to "abide by this deadline by the threat of criminal penalties," the court nonetheless concluded that the voter's injury was fairly traceable to the county's alleged "enforce[ment] and implement[ation of] the Secretary's allegedly unconstitutional directions." *Id.* at 973. As a result, it reasoned, the counties' enforcement of the policies placed them in the "line of causation" that resulted in the plaintiff's injury, which was sufficient for standing. *Id.*

61

So too in *Republican National Committee v. Pelosi*, 602 F. Supp. 3d 1, 23 (D.D.C. 2022), *vacated on other grounds*, No. 22-5123, 2022 WL 4349778 (D.C. Cir. Sept. 16, 2022), a court held that the Republican National Convention ("RNC") had standing to sue Salesforce in a challenge to a congressional subpoena requiring Salesforce to turn over certain materials that would injure the RNC. *Id*. at 23–24. Although Salesforce's disclosure of the materials "flow[ed] from a legal duty to comply with a subpoena—rather than a voluntary choice," it was a "necessary link in the fair-traceability chain" because the RNC's injury would not occur "without Salesforce's compliance with the subpoena." *Id.* at 23. The court relied on *Powell v. McCormack*, where the Supreme Court held that a congressional representative could maintain an action against House employees over a resolution calling for his "exclusion" even though the House employees were "simply acting pursuant to express orders of the House." *Id.* (citing *Powell v. McCormack*, 395 U.S. 486, 492–94, 501–06 (1969)). Although *Powell* did not concern standing, the D.C. Circuit has considered the implication of the decision in the standing context and held that the "causal connection [in *Powell*] was . . . obvious." *See Common Cause v. Biden*, 748 F.3d 1280, 1284 (D.C. Cir. 2014).

By contrast, a plaintiff lacks standing to sue a separate defendant for the government's refusal to grant the plaintiff a benefit when the plaintiff cannot "identify anything the defendant[] did (or refrained from doing) to cause the alleged injuries." *Common Cause*, 748 F.3d at 1284–85; *see id*. (holding that standing did not exist because the defendant could only advise the presiding officer of the Senate how the presiding officer should rule, but that there may have been standing if the defendant had "enforced or executed" the challenged rules); *Kurtz v. Baker*, 829 F.2d 1133, 1145 (D.C. Cir. 1987) (holding that standing did not exist where defendants lacked authority to act but suggesting that standing would exist if the challenged congressional

employees' inaction was "pursuant to express orders of the House" or if the defendants were "implementing an unconstitutional directive from their supervisors"); *cf. Johnson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 719 F.3d 601, 606–07 (7th Cir. 2013) (holding that Merrill Lynch's freezing of a retirement account was not traceable to the plaintiff's injuries because it "simply followed the directions of [a] court order—even though Merrill Lynch disagreed with it"); *Doe v. Holcomb*, 883 F.3d 971, 978 (7th Cir. 2018) (finding that a plaintiff lacked standing to sue a defendant who processed name-change applications through an allegedly unconstitutional system but had "no power to grant or deny a petition" and was tasked "only with accepting and processing petitions without any authority to screen them").

Not only did the School Defendants send Plaintiffs notices informing them of their children's impending exclusion from school absent proof of immunity, but they also allegedly "enforce[ed] and implement[ed]" the State Defendants' directive to exclude the children in the event Plaintiffs failed to provide such proof in the form of serologic testing records, new vaccination records, or records showing that the children were in the process of being immunized. *See Isabel*, 394 F. Supp. 3d at 973. This conduct places the School Defendants within the "line of causation" that resulted in the alleged exclusion of Plaintiffs' children from school. *Food & Drug Admin.*, 602 U.S. at 383. Finally, because my finding that the children's injuries were not entirely self-inflicted applies with equal force to Plaintiffs' claims against the School Defendants, the injuries to Plaintiffs' children from their alleged exclusion from free, public schooling are also traceable to the School Defendants. *See supra*, Discussion § I.A.i.2.a.

### 3. Redressability

"A plaintiff makes [a] showing [of redressability] when the relief sought would serve to eliminate any effects of the alleged legal violation that produced the injury in fact." *Soule*, 90

F.4th at 47 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 105–06 (1998)).

"Plaintiffs must separately establish standing for each form of relief sought." *Id.* (citing

*TransUnion*, 141 S. Ct. at 2208, and concluding that the plaintiff had standing to seek "some, but

not all, of [the] requested injunctive relief"). A plaintiff's "generalized grievance" that a

defendant's conduct violated the law is "too abstract to constitute a case or controversy

appropriate for judicial resolution," so the "remedy sought must redress the particularized harm

that Plaintiffs allege." *Id.* (citing *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208,

217, 227 (1974)).

As discussed, Plaintiffs seek five forms of relief with respect to their Fourteenth

Amendment due process claims:

1. a declaration pursuant to 28 U.S.C. § 2201 that "Defendants deprived Plaintiffs of their property right to a free public education without due process of law as required under the Fourteenth Amendment" (Am. Compl. ¶ 109);

2. a declaration pursuant to 28 U.S.C. § 2201 "that the DOH's directive to the School Districts instructing the Districts to exclude the students and reject their certificates of immunization to be unconstitutional" (Am. Compl. ¶ 110);

3. a preliminary injunction pursuant to 28 U.S.C. § 1343(a), which I also construe as a request for a permanent injunction for the reasons previously discussed, "restraining the Defendant DOH from unilaterally excluding Students unless and until it provides the process due under the Fourteenth Amendment" (Am. Compl. ¶ 113; *see supra*, Procedural History § II);

4. a preliminary injunction pursuant to 28 U.S.C. § 1343(a), which I also construe as a request for a permanent injunction, "restraining Defendant School Districts from enforcing the DOH's directives or otherwise excluding Students from school based on mere allegations that Students immunization records are falsified unless and until School Districts provide Students with the process due under the Fourteenth Amendment and NYS Education Law" (Am. Compl. ¶ 114); and

5. "[s]uch other and fuller relief as this Court deems just, proper and equitable" (Am. Compl. ¶ 115).

For the reasons discussed below, the second and fourth forms of requested relief, set forth in Amended Complaint paragraphs 110 and 114 respectively, satisfy the requirements of redressability because they would remedy specific conduct by the DOH and the School Defendants alleged to cause Plaintiffs' children to be excluded from free public education: (1) the DOH's issuance of a directive requiring the School Districts Defendants to reject the children's DeVuono/Wild Child vaccination records and to exclude the children from school absent alternative proof of immunity, and (2) the School Defendants' compliance with the DOH Directive. By contrast, the first, third, and fifth forms of requested relief, set forth in Amended Complaint paragraphs 109, 113, and 115, are framed at a very high a level of generality and do not identify or redress any specific conduct by Defendants.

### a. Injunctive Relief

"[T]he Supreme Court has always 'rejected claims of standing predicated on the right, possessed by every citizen, to require that the Government be administered according to law.'" *Johnson v. Becerra*, 111 F.4th 1237, 1246 (D.C. Cir. 2024) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 482–83 (1982)). Accordingly, to satisfy the redressability requirement for standing, the "remedy sought must redress the particularized harm that Plaintiffs allege," rather than a plaintiff's "generalized grievance" that a defendant's conduct violated the law. *Soule,* 90 F.4th at 47. Although the Second Circuit has not squarely addressed this issue, where it presents an "insurmountable obstacle for a court to fashion an injunction that accomplishes anything beyond abstractly commanding" a defendant to "obey the law," the putative injury lacks redressability. *Elend v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006); *see also Johnson v. Becerra*, 668 F. Supp. 3d 14, 22 (D.D.C. 2023) (holding that "a generalized injunction to obey the law" did not satisfy the

redressability requirement where the plaintiffs could not clarify the specific conduct that they

sought to enjoin when asked at oral argument), *aff'd*, 111 F.4th 1237, 1246 (D.C. Cir. 2024)

(quoting *Valley Forge Christian Coll.*, 454 U.S. at 482–83 (1982)).

Here, Plaintiffs' third request for relief—a preliminary and permanent injunction

"restraining the Defendant DOH from unilaterally excluding Students unless and until it provides

the process due under the Fourteenth Amendment" (Am. Compl. ¶ 113)—amounts to an "obey

the law" injunction, *Elend*, 471 F.3d at 1209, because it is not specific and definite enough to

apprise the DOH as to what process it unlawfully failed to provide or even what it means to

"exclude[e]" students. *See* Fed. R. Civ. P. 65(d) (requiring injunctive relief to "describe in

reasonable detail . . . the act or acts sought to be restrained"); *S.C. Johnson & Son, Inc. v. Clorox

Co.*, 241 F.3d 232, 240–41 (2d Cir. 2001) ("To comply with the specificity and clarity

requirements" of Rule 65(d), "an injunction must be specific and definite enough to apprise those

within its scope of the conduct that is being proscribed."); *Am. Soc'y for the Prevention of

Cruelty to Animals v. Animal & Plant Health Inspection Serv.*, 60 F.4th 16, 22 (2d Cir. 2023).

The fifth request for relief does even less to apprise Defendants of their allegedly unlawful

conduct because it only asks the Court to fashion "other and fuller relief." Am. Compl. ¶ 115; *see

Scott v. DiGuglielmo*, 615 F. Supp. 2d 368, 373 (E.D. Pa. 2009) (finding that "[m]erely asking

that the Court grant any additional relief it deems 'just, proper and equitable' is not sufficient to

meet the redressability prong of standing" where a plaintiff had not identified any other

redressable forms of relief). Thus, Plaintiffs' third and fifth requests for relief do not satisfy the

redressability requirement for standing.

By contrast, Plaintiffs' fourth request for relief meets the threshold of apprising the

School District Defendants of the "conduct being prescribed." *S.C. Johnson & Son*, 241 F.3d at

240–41. Although the fourth request for relief does not specify the alleged "process due under the Fourteenth Amendment," it does seek to enjoin the School District Defendants from excluding the children from school "on mere allegations [from the DOH] that Students immunization records are falsified . . . ." (Am. Compl. ¶ 114.) The requested injunction would redress the children's injuries by preventing the School District Defendants from excluding the children from school based on the DOH Directive, and therefore "describe[s] in reasonable detail . . . the act or acts sought to be restrained." Fed. R. Civ. P. 65(d).

b.  <u>Declaratory Relief</u>

A similar analysis applies to Plaintiffs' requests for declaratory relief on the due process claims. The first request for relief in the Amended Complaint is for a declaration that all Defendants "deprived Plaintiffs of their property right to a free public education without due process of law as required under the Fourteenth Amendment." (Am. Compl. ¶ 109.) This request is "too abstract" to "redress the particularized harm that Plaintiffs allege" because it gives no indication of what notice or opportunity to be heard Defendants failed to provide. *Soule*, 90 F.4th at 47; *see also Khalid v. Microsoft Corp.*, No. 19-cv-130, 2020 WL 1674123, at *10 (W.D. Wash. Apr. 6, 2020) (holding that a request for a declaratory judgement that the defendant had engaged in "inequitable conduct" was too broad and vague to warrant declaratory relief.), *aff'd*, No. 20-35921, 2023 WL 2493730 (9th Cir. Mar. 14, 2023).

Finally, Plaintiffs' second request for declaratory relief—that the "DOH's directive to the School Districts instructing the Districts to exclude the students . . . [is] unconstitutional" (Am. Compl. ¶ 110) satisfies the redressability requirement because a declaration invalidating the DOH Directive would redress the alleged harm by permitting the children to attend public school without providing new proof of immunization.

### ii. Education Law Section 3214(3)(c)(1) Claims

The School Defendants do not challenge Plaintiffs' standing to bring claims under Education Law Section 3214(3)(c)(1). But as with Plaintiffs' Fourteenth Amendment due process claims against the School Defendants, the Court has an "independent duty" to consider Plaintiffs' standing. *See Williams*, 2025 WL 842041, at *2.

First, the children suffered an injury in fact. Plaintiffs' Section 3214(3)(c)(1) claims are predicated on the alleged infringement of the children's "legally protected interest," *Lujan*, 504 U.S. at 560, in not being removed from school without the "fair hearing upon reasonable notice" required by the statute, N.Y. Educ. Law § 3214(3)(c)(1). This satisfies the injury-in-fact standard because the alleged procedural violation caused the children the concrete harm of exclusion from school. *See Spokeo*, 578 U.S. at 341 (recognizing that a "bare procedural violation" of a statutory right is insufficient to satisfy the injury-in-fact requirement when that violation is "divorced from concrete harm").[35] This injury is also particularized because the Amended Complaint alleges that each child was excluded from public school without receiving their statutory right to a hearing. The injury is "actual" because the children (other than A.L.) were in fact excluded from school or else withdrew from school under threat of exclusion.

Second, the children's injuries are traceable to the School Defendants because, as Plaintiffs argue, the School Defendants allegedly excluded the children from school without providing a hearing upon reasonable notice as required under Section 3214(3)(c)(1). (Pls.' PI Mem. at 12–14.) Traceability is also not defeated by the fact that the School Defendants may

---

[35] Although the parties dispute whether the alleged exclusion of Plaintiffs' children from school qualifies as a "suspension" that would trigger the rights set forth in Section 3214(3)(c)(1), that question concerns whether the Amended Complaint states a claim for relief under Rule 12(b)(6), and not whether Plaintiffs have standing to bring such a claim.

have a defense on the merits that they were legally required to exclude the children from school under Section 2164 or by the fact that Plaintiffs did not provide alternate proof of immunity through serologic testing records, new vaccination records, or records showing that their children were in the process of being immunized for the same reasons identified with respect to Plaintiffs' due process claims. (*See supra*, Discussion § I.A.i.2.b.)

Finally, as with Plaintiffs' Fourteenth Amendment claims, only some of the relief requested on the Section 3214(3)(c)(1) claims satisfies the requirements of redressability. The Amended Complaint seeks four forms of relief with respect to the Section 3214(3)(c)(1) claims:

1. a declaration pursuant to 28 U.S.C. § 2201 that the "Defendant School Districts violated the NYS Education Law by barring students from attendance in school upon full instruction without providing the process required under the Education Law" (Am. Compl. ¶ 111);

2. a declaration pursuant to 28 U.S.C. § 2201 that the "School Districts' letters and instruction excluding Students from school to be unconstitutional" (Am. Compl. ¶ 112);

3. a preliminary injunction pursuant to 28 U.S.C. § 1343(a), which I also construe as a request for a permanent injunction, "restraining Defendant School Districts from enforcing the DOH's directives or otherwise excluding Students from school based on mere allegations that Students immunization records are falsified unless and until School Districts provide Students with the process due under the Fourteenth Amendment and NYS Education Law" (Am. Compl. ¶ 114); and

4. "[s]uch other and fuller relief as this Court deems just, proper and equitable" (Am. Compl. ¶ 115).

The third and fourth forms of requested relief were discussed in the analysis of Plaintiffs' standing to bring due process claims against the School Defendants. (*See supra*, Discussion § I.A.i.3.a.) Because the alleged injuries underlying the Section 3214(3)(c)(1) claims are similar to the injuries underlying the due process claims—exclusion from school without sufficient notice and a hearing—the result is the same here: the third request for relief satisfies the redressability requirement for standing, but the fourth request for relief does not. As noted

previously, the third request for relief apprises the School Defendants of the specific conduct Plaintiffs seek to enjoin—the children's exclusion from school based on the School District Defendants' enforcement of the DOH's determination that their DeVuono/Wild Child vaccination records were fraudulent—whereas the fourth request for relief does not. (*See id.*)

The first request for relief is poorly worded but satisfies the redressability requirement. Although the first request for relief does not identify the "process" that the School Defendants allegedly failed to provide the children or even cite Section 3214(3)(c)(1)—the specific provision of the Education Law at issue—it does identify the challenged conduct: the School District Defendants' act of allegedly "barring students from school attendance." (Am. Compl. ¶ 111.)  In the context of the entire Amended Complaint, the first request for relief apprises the School Defendants of the process Plaintiffs allege they must provide because Section 3214(3)(c)(1) itself clearly requires that children must receive a "fair hearing upon reasonable notice" before suspension from school for more than five school days. N.Y. Educ. Law § 3214(3)(c)(1).

Finally, Plaintiffs' second request for relief on the Section 3214(3)(c)(1) claims is nonsensical and does not satisfy redressability. Paragraph 112 of the Amended Complaint explicitly seeks a declaration "[a]s to the Second Cause of Action"—Plaintiffs' Section 3214(3)(c)(1) claims against the School Defendants—that the "School District's letters and instruction excluding the children from school to be *unconstitutional*." (Am. Compl. ¶ 112 (emphasis supplied)). The requested declaration cannot redress an injury stemming from the alleged violations of Section 3214(3)(c)(1) by making a declaration about the *constitutionality* of the School Districts' actions. The relief requested does not match the nature of the claims. Therefore, the second request for relief does not satisfy the requirements of redressability.

### iii. *Mootness*

The School Defendants correctly argue that Gina Larsen's claims on behalf of her daughter A.L. are moot. The School Defendants submitted evidence that after Larsen received notice that she would be excluded from school absent new proof of immunization, she submitted new records showing that A.L. had received one of her missing immunizations and was scheduled to receive another. (Harris Aff. ¶¶ 15–16.)[36] As a result, A.L. was permitted to remain in school. (*Id.* ¶ 16.)

Given that A.L. came into compliance with Section 2164, she has "no continuing real or expected imminent injury from [her school's] vaccination requirement." *Wade*, 554 F. Supp. 3d at 376. The alleged injury suffered by A.L.—the threat of imminent exclusion from school absent the provision of sufficient proof of immunization—"cease[d]," leaving Larsen without the "requisite stake in the outcome" of the lawsuit. *See Conn. Citizens Def. League*, 6 F.4th at 444.

\* \* \*

In sum, Plaintiffs have standing to seek both declaratory and injunctive relief against the State Defendants and School Defendants for alleged violations of the Fourteenth Amendment Due Process Clause and Section 3214(3)(c)(1). However, I grant the State Defendants' Rule 12(b)(1) Motion as to the relief requested in paragraphs 109 and 113 of the Amended Complaint. I also sua sponte dismiss the relief requested in paragraph 112 as to the School Defendants. None of the remaining requests for relief specifically name Commissioner McDonald or the

---

[36] By contrast, the Amended Complaint alleges that "A.L has been excluded from school since [September 9, 2024]" and cites an affidavit from Larsen in support of this position. (Am. Compl. ¶ 75.) However, no affidavit signed by Larsen is attached to the Amended Complaint and Plaintiffs acknowledge in their opposition to the School Defendants' Motion to Dismiss that "A.L. has returned to school." (Pls' MTD Opp'n at 9.) Plaintiffs fail to respond to the School Defendants' mootness argument in their opposition to the Defendants' Motion to Dismiss. (*See* Pls' MTD Opp'n.)

71

Superintendent Defendants. (*See* Am. Compl. ¶¶ 110, 111, 114, 115.) However, the Amended

Complaint pleads that Commissioner McDonald is the "final policy maker for the DOH and

government official charged with implementing and executing the expulsion of Students." (*Id.* ¶

90.) It also pleads that the Superintendent Defendants are the "chief executives of their

respective school districts and persons responsible for executing the expulsion of Students." (*Id.*

¶ 91.) I therefore understand Plaintiffs' requests for relief against the DOH to also seek relief

against Commissioner McDonald and their requests for relief against the School District

Defendants to also seek relief against the Superintendent Defendants.

Thus, Plaintiffs have standing to pursue the following claims:

1. Fourteenth Amendment due process claims against the DOH and Commissioner McDonald seeking a declaration pursuant to 28 U.S.C. § 2201 "that the DOH's directive to the School Districts instructing the Districts to exclude the students and reject their certificates of immunization to be unconstitutional" (Am. Compl. ¶ 110);

2. claims under NYS Education Law Section 3214(3)(c)(1) against the School Defendants seeking a declaration pursuant to 28 U.S.C. § 2201 that "Defendant School Districts violated the NYS Education Law by barring students from attendance in school upon full instruction without providing the process required under the Education Law" (Am. Compl. ¶ 111); and

3. Fourteenth Amendment due process claims and claims under NYS Education Law Section 3214(3)(c)(1) against the School Defendants seeking a preliminary and permanent injunction pursuant to 28 U.S.C. § 1343(a), "restraining Defendant School Districts from enforcing the DOH's directives or otherwise excluding Students from school based on mere allegations that Students immunization records are falsified unless and until School Districts provide Students with the process due under the Fourteenth Amendment and NYS Education Law" (Am. Compl. ¶ 114).[37]

Finally, I grant the School Defendants' Rule 12(b)(1) Motion against Gina Larsen and

also sua sponte dismiss Larsen's claims against the State Defendants as moot. I deny the State

---

[37] In light of the fact that certain claims withstand a standing analysis, Plaintiffs' generic request for "[s]uch other and fuller relief as the Court deems just, proper and equitable" (Am. Compl. ¶ 115) is permissible.

Defendants 12(b)(1) Motion to Dismiss for lack of standing with respect to the remainder of the claims and requests for relief set forth in the Amended Complaint.

### B. Eleventh Amendment Sovereign Immunity

The State Defendants assert that Plaintiffs' due process claims against them are barred by Eleventh Amendment sovereign immunity because Plaintiffs "do not seek injunctive relief to enjoin prospective, ongoing violations of their constitutional rights" but rather seek to "retroactively litigate" the State Defendants' determinations made at the start of the 2024–25 school year. (State Defs.' MTD Mem. at 13–14.) They are incorrect. However, Plaintiffs' claims against the DOH are nonetheless barred by Eleventh Amendment sovereign immunity because non-consenting state agencies are immune from all claims seeking declaratory or injunctive relief.[38]

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. Though not set forth in the text, the Eleventh Amendment also bars "suits in federal court against a state brought by that state's own citizens." *Mary Jo C. v. New York State & Loc. Ret. Sys.*, 707 F.3d 144, 151 (2d Cir. 2013). It also applies not just to lawsuits filed in federal court against states themselves, but also to "certain actions against state agents

---

[38] The School Defendants do not invoke a sovereign immunity defense to Plaintiffs' due process or Section 3214(3)(c)(1) claims. Because the Eleventh Amendment "grants the State a legal power to assert a sovereign immunity defense should it choose to do so," a court "need not raise [sovereign immunity] on its own . . . Unless the State raises the matter, a court can ignore it." *Donohue v. Cuomo*, 980 F.3d 53, 77 n.15 (2d Cir. 2020 (citing *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998)). Thus, I do not consider whether the School Defendants constitute an arm of the state protected by sovereign immunity.

and instrumentalities . . . ." *Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 134 (2d Cir. 2015) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)); *see also Mary Jo C.*, 707 F.3d at 151–52 (same). An entity "asserting Eleventh Amendment immunity . . . bear[s] the burden of demonstrating entitlement." *Leitner*, 779 F.3d at 134. "[T]he question is whether the state instrumentality is independent or whether it is an arm of the state." *Id.*; *see, e.g.*, *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (holding that the New York State Unified Court System is an "arm of the State" entitled to Eleventh Amendment sovereign immunity). The Second Circuit has applied two different tests to answer this question. *Leitner*, 779 F.3d at 134–35, 137.[39] However, in cases involving state agencies, the Second Circuit has held, without conducting an arm-of-the-state analysis, that "sovereign immunity extends to state agencies," so state agencies are "immune from suit to the same extent as the state itself." *In re Charter Oak Assocs.*, 361 F.3d 760, 764 & n.1 (2d Cir. 2004); *see also Fla. Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 684 (1982) ("A suit generally may not be maintained against the State itself, or against an agency or department of the State, unless the State has waived its sovereign immunity.").

Under the sovereign immunity doctrine, as a general rule, entities shielded from suit "may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Gollomp*, 568 F.3d at 366. The Eleventh Amendment thus "generally bars suits in federal court" against "non-

---

[39] The Second Circuit has recognized that both arm-of-the-state tests "have much in common" and that "the choice of test is rarely outcome-determinative." *Leitner*, 779 F.3d at 137. Each is ultimately guided by what the Supreme Court has recognized as the Eleventh Amendment's "twin reasons for being": the need to "preserv[e] the state's treasury and protect[] the integrity of the state." *Id.* at 134 (citing *Hess v. PATH*, 513 U.S. 30, 47–48 (1994)).

consenting states." *Leitner*, 779 F.3d at 134. This bar applies to federal court suits against a state and its agents and instrumentalities "regardless of the nature of the relief sought." *74 Pinehurst LLC v. New York*, 59 F.4th 557, 570 (2d Cir. 2023), *cert. denied*, No. 22-1130, 2024 WL 674658 (U.S. Feb. 20, 2024); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120 (1984) ("[I]f a § 1983 action alleging a constitutional claim is brought directly against a State, the Eleventh Amendment bars a federal court from granting *any relief* on that claim." (emphasis added)). Accordingly, states and their agents and instrumentalities are immune from suits seeking monetary damages and injunctive relief, *McGinty v. New York*, 251 F.3d 84, 91 (2d Cir. 2001), as well as declaratory relief, *Ashmore v. Prus*, 510 F. App'x 47, 48 (2d Cir. 2013) (citing *Pennhurst*, 465 U.S. at 100–01); *Manners v. New York*, 175 F.3d 1008, 1999 WL 96136 at *1 (2d Cir. 1999) (summary order) (citing *Atlantic Healthcare Benefits Trust v. Googins,* 2 F.3d 1, 4 (2d Cir. 1993)).

Notwithstanding the Eleventh Amendment's bar against federal court suits against states and their agents and instrumentalities, the Supreme Court established "a well-known exception to this rule" in *Ex parte Young*, 209 U.S. 123 (1908), by which a plaintiff may bring a claim for "prospective relief against an individual acting in his official capacity . . . to end an ongoing violation of a federal law." *T.W. v. New York State Bd. of L. Examiners*, 110 F.4th 71, 91 (2d Cir. 2024); *see also W. Mohegan Tribe & Nation v. Orange Cnty.*, 395 F.3d 18, 21 (2d Cir. 2004) ("[*Ex parte Young*] allows a suit for injunctive or declaratory relief challenging the constitutionality of a state *official's* actions in enforcing state law." (emphasis added)). The *Ex parte Young* exception applies to a claim against a state official when "the complaint (1) alleges an ongoing violation of federal law; and (2) seeks relief properly characterized as prospective." *T.W.*, 110 F.4th at 91. It does not extend to suits against state agencies. *See Deadwiley v. New*

*York State Off. of Child. & Fam. Servs.*, 97 F. Supp. 3d 110, 116 (E.D.N.Y. 2015) (holding that sovereign immunity barred a suit seeking injunctive relief against a New York state agency).

Moreover, if a plaintiff seeks "declaratory relief that would have the same effect as an award of damages against the state," the *Ex parte Young* exception does not apply to the claim against the state official. *Williams v. Marinelli*, 987 F.3d 188, 197 (2d Cir. 2021) (citing *Green v. Mansour*, 474 U.S. 64, 73 (1985)); *see also T.W.*, 110 F.4th at 93 ("[A] declaratory judgment is not available when the result would be a partial 'end run' around the Eleventh Amendment's bar on retrospective awards of monetary relief.").

Applying these standards, Plaintiffs' request for declaratory relief against the DOH is barred by the Eleventh Amendment, but their request for declaratory relief against Commissioner McDonald falls within the *Ex parte Young* exception for the reasons addressed below.

### i. *Claims Against the Department of Health*

The Eleventh Amendment precludes Plaintiffs' claims against the DOH because state agencies are "immune from suit to the same extent as the state itself." *In re Charter Oak Assocs.*, 361 F.3d at 764. Indeed, the Second Circuit has repeatedly held without discussion that claims against both DOH employees and internal offices within the DOH are barred by sovereign immunity. *See, e.g.*, *New York Ass'n of Homes & Servs. for the Aging, Inc. v. DeBuono*, 444 F.3d 147, 148 (2d Cir. 2006) (claims against the DOH Commissioner and several DOH employees); *Wang v. Off. of Pro. Med. Conduct, N.Y.*, 228 F. App'x 17, 19 (2d Cir. 2007) (claims against the DOH's Office of Professional Medical Conduct). District courts in this circuit have dismissed claims seeking injunctive and declaratory relief against the DOH on sovereign immunity grounds. *See, e.g.*, *Jeannot v. New York State*, 762 F. Supp. 3d 217, 232 (E.D.N.Y. 2025) (holding that Eleventh Amendment immunity extends to "entities considered arms of the state,

76

which include state agencies"). Therefore, Plaintiffs' due process claims for declaratory relief against the DOH are barred by the Eleventh Amendment. *See Ashmore*, 510 F. App'x at 48 ("[A] nonconsenting state has Eleventh Amendment immunity against . . . declaratory relief."); *Deadwiley v. New York State Off. of Child. & Fam. Servs.*, 97 F. Supp. 3d 110, 116 (E.D.N.Y. 2015) ("[T]he Eleventh Amendment bars suits that seek either money damages, or injunctive relief against state agencies.").

The DOH has not waived its sovereign immunity defense in this action. The State Defendants invoked sovereign immunity in their Motion to Dismiss. (State Defs.' MTD Mem. at 12.) It also well established that "Congress did not abrogate the state's Eleventh Amendment immunity by enacting 42 U.S.C. § 1983," which is the cause of action for Plaintiffs' due process claims. *Barone*, 2023 WL 1975783, at *2 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)). Accordingly, I grant the State Defendants' Rule 12(b)(1) Motion to Dismiss the DOH.

### ii.  *Claims Against Commissioner McDonald*

By contrast, Plaintiffs' claims against Commissioner McDonald are not barred by Eleventh Amendment sovereign immunity because: (1) Plaintiffs sue Commissioner McDonald in his official capacity; (2) contrary to the State Defendants' assertions, Plaintiffs' affidavits do not simply attempt to "retroactively litigate" the State Defendants' school exclusion determinations made at the start of the 2024–25 school year; and (3) Plaintiffs allege a continuing legal violation by Commissioner McDonald. State Defs.' MTD Mem. at 13–14; *see T.W.*, 110 F.4th at 91 (describing the three requirements for invoking the *Ex parte Young* exception to sovereign immunity).

First, Plaintiffs sue Commissioner McDonald in his official capacity as "[t]he New York
State Department of Health, Commissioner," as shown in the caption of the Amended
Complaint. (Am. Compl. at 1.) Moreover, the Amended Complaint's allegations target conduct
by Commissioner McDonald "acting under color of law as the final policy maker for the DOH
and governmental official charged with implementing and executing the expulsion of students"
for insufficient proof of compliance with the school immunization law. (*Id*. ¶ 90.) These
allegations make clear that Plaintiffs sue Commissioner McDonald for conduct undertaken in his
official capacity, rather than in his individual capacity. *See T.W.*, 110 F.4th at 91 (holding that
the *Ex parte Young* exception applies to claims for "prospective relief against an individual
acting in his official capacity . . . to end an ongoing violation of a federal law").

Second, the relief Plaintiffs request with respect to Commissioner McDonald is entirely
prospective. As discussed, the only request for relief on Plaintiffs' due process claims against the
State Defendants that survives the standing analysis is the request for a declaration pursuant to
28 U.S.C. § 2201 "that the DOH's directive to the School Districts instructing the Districts to
exclude the students and reject their certificates of immunization to be unconstitutional." (Am.
Compl. ¶ 110.) The State Defendants' attempt to frame this request for relief as barred by
Eleventh Amendment sovereign immunity is unpersuasive.

Relying on the Second Circuit's recent decision in *T.W. v. New York State Bd. of L.
Examiners*, the State Defendants argue that the conduct Plaintiffs challenge "occurred at a fixed
point in the past," and that the relief requested on the due process claims against them is
therefore entirely retrospective and barred by Eleventh Amendment sovereign immunity. (State
Defs.' MTD Mem. at 14.) However, in *T.W.*, the Second Circuit held that a declaration "finding
that Defendants' actions violated Title II" of the Americans with Disabilities Act was retroactive

78

because the plaintiff sought "only a declaration—in the past tense—that the Board '*violated* Title II.'" 110 F.4th at 92. That reasoning might apply to the declaratory relief that I dismissed as not redressable—Plaintiffs' request for a declaration that "Defendants *deprived*," in the past tense, "Plaintiffs of their property right to a free education without due process of law . . ." (Am. Compl. ¶ 109 (emphasis added).) But it is entirely misplaced when considering Plaintiffs' surviving request for relief on the due process claims against the State Defendants, which seek a declaration that the DOH Directive is "unconstitutional." (Am. Compl. ¶ 110.)[40] That directive presently prohibits the School Defendants from accepting immunization certificates from DeVuono/Wild Child that have no corresponding records in NYSIIS or from allowing the children to attend school without submitting proof of immunity through serologic testing records, new vaccination records, or records showing that a child is in the process for becoming vaccinated. (*See* Ex. N, Giovannetti Decl.)

Third, the Amended Complaint alleges that Commissioner McDonald continues to engage in conduct violating Plaintiffs' rights. Although the State Defendants' determination that Plaintiffs' children would be excluded from school absent the provision of new proof of immunity was made in the past, the Amended Complaint alleges that the DOH Directive remains in force and continues to deprive Plaintiffs of their property interest in a free public education without sufficient notice or pre-deprivation opportunity to be heard. (Am. Compl. ¶ 105.) The requested declaration seeks to invalidate the DOH Directive, which continues to cause this alleged legal violation. By contrast, the plaintiff in *T.W.* asserted that the defendants' past failure

---

[40] This specific request for relief appears to suffer from grammatical errors in that it seeks a declaration that "the DOH's directive to the School Districts instructing the Districts to exclude the students and reject their certificates of immunization *to be* unconstitutional." (Am. Comp. ¶ 110 (emphasis supplied).

to provide her accommodations under the ADA during two occasions on which she took the bar exam caused her to fail the bar exam twice, but did not allege that the Board was continuing to deny her requested test accommodations.[41] *See* 110 F.4th at 91–92. Thus, whereas T.W.'s "only potential use" for the requested declaration was to secure damages for the denial of accommodations at prior bar exam administrations, *see id.* at 93, here Plaintiffs' requested declaration could only be used to strike down the directive that allegedly keeps their children from returning to school. Thus, the requested declaration would not serve as an "end run around the Eleventh Amendment's bar on retrospective awards of monetary relief." *T.W.*, 110 F.4th at 93.

Consequently, Plaintiff's surviving request for declaratory relief against Commissioner McDonald falls within the *Ex parte Young* exception and is not barred by sovereign immunity. Therefore, I deny the State Defendants' Rule 12(b)(1) Motion to Dismiss Plaintiffs' Fourteenth Amendment due process claims against Commissioner McDonald.

## II.    Personal Jurisdiction Over State Defendants

The State Defendants move to dismiss the Amended Complaint under Rule 12(b)(5) for insufficient service of process under Rule 4(j)(2), Fed. R. Civ. P. (State Defs.' MTD Mem. at 10;

---

[41] The Second Circuit acknowledged that T.W. had elsewhere alleged a continuing violation of the law in that defendants continued to deny *other test takers* accommodations. 110 F.4th at 94. However, because T.W. only sought declaratory and injunctive relief related to the maintenance of records concerning her past bar exam failures—not an end to defendants' alleged ADA violations with respect to other test takers—the court held that the requested relief would not prevent the alleged ongoing violations of law and therefore lacked the "necessary nexus" to those ongoing violations. *Id.* Here, by contrast, the Amended Complaint alleges that Commissioner McDonald continues to violate the children's due process rights by barring them from attending school absent new proof of immunization through serologic testing, new vaccination records, or proof that the children are in the process of being immunized, and Plaintiffs seek declaratory relief to redress that alleged continuing legal violation.

Fattorusso Decl. ¶ 2.) Because I find that Plaintiffs properly served the State Defendants after I extended time for service under Rule 4(m), I deny the motion.

Under Rule 4(j)(2), to effect service on a "state, a municipal corporation, or any other state-created governmental organization," a plaintiff must serve that entity by: either "(A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2). State officials sued in their official capacity must be served in the same manner. *Rutherford v. Fla. Union Sch. Dist.*, No. 16-cv-9778, 2018 WL 11249126, at *3 (S.D.N.Y. Oct. 24, 2018).

Section 307(2) of the New York Civil Practice Law and Rules sets forth the requirements for serving process in New York on a state agency or a state officer sued in their official capacity. It provides that service must be made by:

> (1) delivering the summons to such officer or to the chief executive officer of such agency or to a person designated by such chief executive officer to receive service, or (2) by mailing the summons by certified mail, return receipt requested, to such officer or to the chief executive officer of such agency, *and* by personal service upon the state in the manner provided by subdivision one of this section.

N.Y. C.P.L.R.  § 307(2)(1)–(2) (emphasis added). Section 307(1) in turn provides that service upon the state is accomplished by delivering the summons to an assistant attorney general at an office of the Attorney General or to the Attorney General within the state. *Id*. § 307(1). Additionally, under Section 307(2)(2), service by certified mail "shall not be effective unless the front of the envelope bears the legend 'URGENT LEGAL MAIL' in capital letters." *Id.* § 307(2)(2).

As discussed above, on May 2, 2025, I held that Plaintiffs' initial attempts at service were insufficient under Rule 4(j)(2) and Section 307(2)(2) for the following reasons: (1) Plaintiffs did

not mark their envelope mailing service to the DOH and Commissioner McDonald "URGENT LEGAL MAIL"; and (2) Plaintiffs did not submit a sworn statement or some other evidence showing that they personally served any summons "upon the state" as required by delivering a summons to an assistant attorney general or to the Attorney General. (Show Cause Order at 12.)

Plaintiffs' affidavit of service establishes that, after several insufficient attempts, Plaintiffs corrected both of those issues and therefore satisfied the requirements of Section 307(2)(2). First, according to the Mermigis affidavit, on May 14, 2025, Mermigis served Commissioner McDonald by mailing him the Summons and Amended Complaint by certified legal mail, marked "URGENT LEGAL MAIL." (Mermigis Aff. ¶ 4.) Attached to Mermigis' affidavit is a picture of the envelope addressed to Commissioner McDonald bearing the "URGENT LEGAL MAIL" label. (ECF No. 112-2.)[42]  Because Commissioner McDonald is the DOH's chief executive officer, that mailing satisfied the first requirement for mailed service upon both the DOH and Commissioner McDonald. *See* N.Y. C.P.L.R. § 307(2)(2). Second, Mermgis attests that on May 15, 2025, he "personally served" the summons and Amended Complaint upon "Tashi Lhewa, Assistant Attorney General by hand delivery at 11:34 a.m. at the Suffolk County Regional Attorney General Office at 300 Motor Parkway, Suite 210, Hauppauge, NY 11788." (Mermigis Aff. ¶ 7.) Attached to the Mermigis affidavit is a copy of the summons signed by Lhewa. (ECF No. 112-4.) This documentation demonstrates service by mail upon the DOH and Commissioner McDonald, which requires that the plaintiff deliver the summons to an assistant attorney general at an office of the Attorney General. *See* N.Y. C.P.L.R. § 307(2)(2).

---

[42] Mermigis attests that the envelope was marked "Urgent Legal Mail," but the picture shows that "URGENT LEGAL MAIL" was written in all capital letters, as directed by Section 307(2)(2). Mermigis Aff. ¶ 4; ECF No. 112-2; N.Y. C.P.L.R. § 307(2)(2).

Thus, because Plaintiffs performed both forms of service required by Section 307(2) by the May 19, 2025 deadline established in the May 14, 2025 Order (*See* ECF No. 110), I deny the State Defendants' Rule 12(b)(5) Motion to Dismiss for insufficient service of process.

### III.    Defendants' Rule 12(b)(6) Motions for Failure to State a Claim

All Defendants move to dismiss Plaintiffs' Fourteenth Amendment due process claims under Rule 12(b)(6) for failure to state a claim. The School Defendants also move to dismiss Plaintiffs' claims under Education Law Section 3214(3)(c)(1) under Rule 12(b)(6) for failure to state a claim.

For the reasons discussed below, I dismiss Plaintiffs' claims under Rule 12(b)(6). The Amended Complaint fails to plausibly plead due process claims against either Commissioner McDonald or the School Defendants for failure to provide adequate notice or opportunity to be heard prior to the alleged exclusion of Plaintiffs' children from public school for failure to provide proof of immunity following the invalidation of their DeVuono/Wild Child vaccination records.[43] The Amended Complaint also fails to plausibly plead that the School Defendants did not afford Plaintiffs the notice and hearing procedures required under Section 3214(3)(c)(1) because the allegations of the Amended Complaint and documents attached or integral to it allege that Plaintiffs' children were excluded from school under Section 2164 for lack of the required proof of immunization—not because the School Defendants subjected them to

---

[43] Because Plaintiffs' claims against the DOH are barred by Eleventh Amendment sovereign immunity, I lack jurisdiction over those claims. *See Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 238 (2d Cir. 2006) (explaining that the Eleventh Amendment is a "jurisdictional bar" although the Supreme Court has not decided if it is a matter of subject matter jurisdiction (collecting cases)). However, even if Plaintiffs' claims against the DOH were not barred by sovereign immunity, the Amended Complaint fails to state a due process claim against the DOH for the same reasons it fails to state a due process claim against Commissioner McDonald.

83

suspensions governed by Section 3214(3)(c)(1). The Amended Complaint thus fails to plead plausible Fourteenth Amendment due process or Section 3214(3)(c)(1) claims against any of the Defendants.

A.  Fourteenth Amendment Due Process Claims

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV § 1. The Amended Complaint's first cause of action is a Section 1983 claim to enforce rights under the Due Process Clause of the Fourteenth Amendment. (*See* Am. Compl.) The Due Process Clause protects rights to procedural due process and substantive due process. *Nnebe v. Daus*, 931 F.3d 66, 80, 89 (2d Cir. 2019).

The allegations of the Amended Complaint and Plaintiffs' briefing focus on procedural due process. The first sentence of the Amended Complaint refers to the Due Process Clause of the Fourteenth Amendment as the "Procedural Due Process Clause," (Am. Compl. at 3), and the pleading alleges that "Defendants deprived Plaintiffs of their property right without any pre or post deprivation due process," (*id.* ¶ 94; *see also id.* ¶¶ 85–95). Plaintiffs' briefing on the Motions to Dismiss and PI Motion only refer to procedural due process—not substantive due process. (Pls.' MTD Opp'n at 13–14; Pls.' PI Mem. at 8; Pls.' PI Reply at 10.) Plaintiffs also fail to respond to the State Defendants' arguments that they fail to state a substantive due process claim. (*See* Pls.' PI Mem.; Pls.' PI Reply; Pls.' MTD Opp'n.)

Nevertheless, I consider whether the Amended Complaint pleads either procedural due process or substantive due process claims as both are protected by the Fourteenth Amendment Due Process Clause. As explained below, the Amended Complaint fails to state any due process

84

claims against any Defendants under Rule 12(b)(6), whether under a procedural due process or substantive due process theory.

### i. *Procedural Due Process*

A Section 1983 claim to enforce the right to procedural due process is "composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Radwan v. Manuel*, 55 F.4th 101, 123 (2d Cir. 2022); *Nnebe v. Daus*, 931 F.3d 66, 80 (2d Cir. 2019).

The Amended Complaint plausibly alleges a deprivation of the children's protected property interest in a free public education, which triggers the protections of the Due Process Clause. Nevertheless, it fails to plausibly allege that Defendants deprived Plaintiffs of the notice or opportunity to be heard required by the Due Process Clause's protection for procedural due process. Notwithstanding the Amended Complaint's repeated allegation that Defendants failed to provide Plaintiffs with any pre-deprivation notice, documents attached or integral to the Amended Complaint confirm that every Plaintiff received notice from the State Defendants and/or the School Defendants that their child's DeVuono/Wild Child vaccination records were invalidated and that their child would be excluded from school absent proof of immunity through serologic testing, new vaccination records, or proof that the child was in the process of being immunized as required by Section 2164.

Moreover, Defendants also afforded every Plaintiff the opportunity to contest the DOH's invalidation of their child's DeVuono/Wild Child vaccination records by permitting them to show through serologic testing records that their child had been properly immunized. According to the Amended Complaint and documents attached or integral to the pleading, no Plaintiff whose claims proceed to a Rule 12(b)(6) analysis alleges to have pursued this pre-deprivation

opportunity to be heard. Additionally, under New York law, Plaintiffs also had the opportunity to immediately appeal to the Commissioner of Education the School Defendants' decisions to exclude their children from school absent the provision of new proof of compliance with the school immunization law. Finally, Plaintiffs also had the opportunity to pursue a post-deprivation Article 78 proceeding in state court to contest both the State Defendants' invalidation of their children's DeVuono/Wild Child vaccination records and the School Defendants' alleged exclusion of their children from public school due to the failure to provide new proof of immunity, and indeed all but two Plaintiffs did avail themselves of this opportunity.

### 1. *Deprivation of a Protected Property Interest*

The Fourteenth Amendment does not protect a free public education as a substantive fundamental right. *See San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 35 (1973) ("Education, of course, is not among the rights afforded explicit protection under our Federal Constitution."); *Plyler v. Doe,* 457 U.S. 202, 221 (1982) ("Public education is not a 'right' granted to individuals by the Constitution."). However, the Supreme Court has held that once a state establishes a public school system and requires children to attend school, it must "recognize a student's legitimate entitlement to a public education as a property interest . . . which may not be taken away without the minimum procedures required by the Due Process Clause." *Goss*, 419 U.S. at 574.

New York law provides a free education to any person over age five and under age twenty-one, and requires compulsory attendance in school of all students between the ages of six and sixteen. N.Y. Educ. Law §§ 3202(1); 3205(1). The Second Circuit has recognized that Education Law Section 3202(1) creates a property interest in education protected by the Fourteenth Amendment. *Handberry*, 446 F.3d at 353; *Kajoshaj*, 543 F. App'x at 16. Because the

"total exclusion from the educational process for more than a trivial period . . . is a serious event in the life of the [] child," procedural due process protections attach to even a temporary deprivation of the property interest in public education. *Goss*, 419 U.S. at 576. However, district courts in this circuit have held, drawing on *Goss*'s language regarding "total exclusion from the education process," that a child is only deprived of their property interest in public education "where the student 'is excluded from the entire educational process.'" *D.C. by Conley v. Copiague Union Free Sch. Dist.*, No. 16-cv-4546, 2017 WL 3017189, at *9 (E.D.N.Y. July 11, 2017) (quoting *Mazevski v. Horseheads Cent. Sch. Dist.*, 950 F. Supp. 69, 72 (W.D.N.Y. 1997)); *Doe v. Salina*, No. 23-cv-3529, 2024 WL 5077629, at *26 (E.D.N.Y. Dec. 11, 2024); *cf. Patrick*, 354 F. Supp. 3d at 214–215 (surveying three different lines of cases for determining when a child is deprived of their property interest in a free public education and concluding that placement in alternative education does not deprive a child of a property interest unless the education received is "materially inferior").

Plaintiffs contend that their children have a property interest in a free public education and that Defendants have allegedly deprived them of this interest by requiring their children to be excluded from public school for failure to provide proof of immunity to diseases identified in New York's school immunization law through records other than the children's DeVuono/Wild Child vaccination records. Defendants appear to argue that children who fail to comply with New York's school immunization requirements lack a property interest in a free public education, relying on *Doe v. Zucker*, 520 F. Supp. 3d 217 (N.D.N.Y), which noted that the right to an education under New York law "is limited by [] New York's mandatory school vaccination requirement, and the case law clearly establishes that conditioning school enrollment on vaccination has long been accepted by courts." (School Defs.' MTD Mem. at 32 (citing *Doe*, 520

F. Supp. 3d at 258 (N.D.N.Y. 2021), *aff'd sub nom. Goe*, 43 F.4th 19); *see also* State Defs.' MTD Mem. at 18 ("Though it may be true that the Plaintiffs possess a 14th Amendment property interest in their public school educations, that right is qualified by compliance with state law, i.e., the Public Health Law.").) Plaintiffs entirely fail to address these arguments in their opposition brief.

Here, the Amended Complaint plausibly alleges both that the children have a property interest in public education and that Defendants' alleged conduct deprived them of that interest by requiring them to take specific steps in order to continue attending public school— specifically, to provide proof of immunity through serologic testing records, vaccination records other than the invalidated DeVuono/Wild Child records, or proof that the children were in the process of being immunized. It alleges that Plaintiffs' children were all attending free public school in person when Defendants determined that they would be excluded from in-person school attendance absent new proof of immunity. (*See* Am. Compl. ¶¶ 46–47, 69–82.) The Amended Complaint and the attached affidavits from Plaintiffs also allege that Plaintiffs provided valid vaccination records from DeVuono/Wild Child for their children to the DOH and School Defendants. (*See* Am. Compl. ¶¶ 45–55 (alleging, among other things, that DeVuono's conviction for "falsified COVID-19 vaccination cards" "is wholly unrelated to administering childhood vaccinations," and that "[i]nstead of waiting for findings of fact through the administrative process, the DOH circumvented it by concluding Plaintiffs' records of immunization were falsified"); Brian Walker Aff. ¶ 6 ("My child is up to date on his or her vaccinations."); Plaintiff Affs. at 6 ¶ 6, 9 ¶ 6, 12 ¶ 6, 15 ¶ 6, 18 ¶ 6, 21 ¶ 6, 24 ¶ 6, 27 ¶ 6, 30 ¶ 6, 33 ¶ 6, 36 ¶ 6, 40 ¶ 6 (same)). The Amended Complaint thus alleges that the children's DeVuono/Wild Child records invalidated by the DOH—as conveyed to Plaintiffs by the DOH

and school notices attached to the Amended Complaint—are valid proof of immunization. Thus, even accepting Defendants' theory that a property interest in public education is premised on compliance with Section 2164's requirement that children show proof of school immunizations prior to attending public school in person, the Amended Complaint alleges that Plaintiffs' children provided such proof to Defendants in the form of vaccination records issued by DeVuono/Wild Child.[44] Accordingly, the Amended Complaint plausibly alleges that the children's property interest in public education was deprived by Defendants' requirement that Plaintiffs provide alternative proof of immunity and the School Defendants' alleged exclusion of the children from their respective schools when Plaintiffs failed to comply.

The State Defendants also make a cursory and undeveloped argument that they did not "interfere" with Plaintiffs' rights to a public education because Plaintiffs could have "quickly and easily [brought] themselves into compliance with the Public Health Law." (State Defs.' MTD Mem. at 17.) The State Defendants do not cite supporting caselaw or explain how the allegations of the Amended Complaint—including the allegation that the children's DeVuono/Wild Child records are indeed valid—show that Plaintiffs caused their children's

---

[44] In their reply on the PI Motion—but not in the Motion to Dismiss briefing—the School Defendants rely on *McArthur v. Brabrand*, 610 F. Supp. 3d 822 (E.D. Va. 2022), to argue that "the due process protections in *Goss* did not apply to [a] plaintiff's procedural due process claim challenging a court's decision to exclude plaintiff for failing to comply with Virginia's vaccination requirements." (School Defs.' PI Opp'n at 45.) *McArthur* is inapposite because that case concerned the alteration of substantive rights through a "rule[] of general applicability"—in that case, a quarantine policy that was applied to all students. 610 F. Supp. 3d at 844; *see also Collins v. City Univ. of N.Y.*, No. 21-cv-9544, 2023 WL 1818547, at *10 (S.D.N.Y. Feb. 8, 2023) (dismissing a procedural due process challenge to a university vaccination policy on the same basis). By contrast here, although the DOH Directive, which is integral to the Amended Complaint, prohibited the School Defendants from accepting paper certificates of immunization from DeVuono/Wild Child for Plaintiffs' children, it did not remove all DeVuono/Wild Child records from the NYSIIS; in fact, the DOH Directive explicitly noted that the DOH was only removing the DeVuono/Wild Child records known to be fraudulent. (*See* Giovannetti Decl., Ex. N.)

89

absence from school because Plaintiffs withdrew their children rather than submit proof of their children's immunity through serologic testing records, new vaccination records, or proof that the children were in the process of being immunized.[45]

Whether Defendants did not plausibly deprive Plaintiffs' children of their property interest in public education because any injuries were self-inflicted is a close question. Courts have held that children who were withdrawn from public school by their parents did not suffer a deprivation of their protected property interest in free public education where the plaintiffs did not plausibly allege that schools forced them to choose home schooling or private schooling over public schooling. *See, e.g.*, *Saggio v. Sprady*, 475 F. Supp. 2d 203, 210 (E.D.N.Y. 2007); *S.C. v. Monroe Woodbury Central Sch. Dist.*, No. 11-cv-1672, 2012 WL 2940020, at *10, *39–40 (S.D.N.Y. July 18, 2012). For example, in *Saggio v. Sprady*, a court in this District held that a plaintiff who withdrew from public school because she had been harassed and assaulted there did not suffer a deprivation of her property interest in public school because "the District did not impose the home schooling option—it merely offered it" and the plaintiff failed to submit

---

[45] As noted, the Amended Complaint attaches the DOH and school notices but does not allege that Plaintiffs availed themselves of the mechanisms for keeping their children in school by submitting proof of immunity through serologic testing records, new vaccination records, or proof that the children were in the process of being immunized. The Amended Complaint only alleges, in a conclusory manner, that Defendants "excluded" the Plaintiffs from school. (Am. Compl. ¶¶ 69–83.)

For purposes of evaluating standing, I reviewed factual materials submitted by the State and School Defendants in considering the State Defendants' argument that the children's injuries were self-inflicted because at least some Plaintiffs allegedly "withdrew" their children from school rather than submit their children to serologic testing or vaccination. *See supra* note 27. However, for purposes of evaluating Defendants' Motions to Dismiss, I accept as true the Amended Complaint's allegations that Defendants "excluded" the children from school. *Melendez*, 16 F.4th at 1010; Am. Compl. ¶¶ 69–83.

evidence "as to why she was forced to choose home schooling over the other options," such as attending another public school in the district. 475 F. Supp. 2d at 210.

Similarly, in *Doe v. Salina*, another court in this District held that plaintiffs must show that they were "excluded from the entire educational process" and concluded that children who voluntarily protested a state mask mandate by attending schools without wearing masks, were not excluded "from the entire education process as envisioned by *Goss* and its progeny" when they were placed in a separate classroom and given worksheets to complete without the supervision of a teacher. 2024 WL 5077629, at *26. The court reasoned that because the plaintiffs "ultimately made the decision to protest the mask mandate, which made them ineligible to attend regular in-person classes under New York State law and District policy, and [because] the District provided them with an alternative means of education for a two-day period," the defendants did not "actually deprive[] [the children] of a cognizable property interest." *Id.* at 27; *see also Collins*, 2023 WL 1818547, at *10 (holding that a plaintiff cannot show the deprivation of a property interest because he has not been expelled, but rather must attend his classes online as a consequence of his decision not to be vaccinated in accordance with his school's vaccination policy).

Here, on the one hand, the Amended Complaint alleges that Plaintiffs received the DOH and school notices stating that their children would be "excluded" from school for lack of proof of school immunization unless they took specific steps, (DOH Form Notice; *see generally* School Notices), and that each child was ultimately "excluded from school" for failing to abide by those requirements even though their DeVuono/Wild Child vaccination records were valid,

91

(Am. Compl. ¶¶ 69–72).[46] Thus, unlike in *Saggio* and *Monroe*, the Amended Complaint offers plausible allegations that Defendants forced the children out of school. *Saggio*, 475 F. Supp. 2d at 210; *Monroe Woodbury Central Sch. Dist.*, 2012 WL 2940020, at *10. On the other hand, neither the Amended Complaint nor the documents attached or integral to it allege that Plaintiffs availed themselves of any of the multiple procedures for averting exclusion. As a result, Plaintiffs may have "made the decision to [not submit their children to serologic testing], which made [the children] ineligible to attend [school]." *Salina*, 2024 WL 5077629, at *26. At the Rule 12(b)(6) stage, however, I accept as true the Amended Complaint's allegation that the Defendants affirmatively "excluded" Plaintiffs' children from school. I therefore conclude that the Amended Complaint plausibly alleges a sufficient deprivation of the children's property interest in public education so as to trigger the protections of procedural due process.[47]

### 2. Notice and Opportunity to be Heard

The Amended Complaint does not plausibly allege that Plaintiffs' children were deprived of adequate process. Once there is a deprivation of a protected property interest "the question remains what process is due." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 319 (2d Cir. 2002) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985)). The key inquiry is whether the defendant provided the impacted individual notice and an opportunity to be heard "at

---

[46] Although the Amended Complaint alleges that Plaintiff Gina Larsen's child A.L. "has been excluded from school," Larsen's claims are moot because A.L. in fact returned to school, as previously discussed. (*See supra,* Discussion § I.A.iii.)

[47] Were Plaintiffs claims able to proceed past Defendants' Motions to Dismiss, factual questions would remain regarding whether Defendants deprived Plaintiffs' children of their property interest in public education or whether Plaintiffs voluntarily withdrew their children from school. For example, Plaintiffs do not allege *why* they did not submit their children to serologic testing, so, to the extent Plaintiffs voluntarily withdrew their children from school rather than submit to serologic testing, they may be unable to show "why [they were] forced to choose home schooling over other options." *Saggio*, 475 F. Supp. 2d at 210.

a meaningful time and in a meaningful manner." *Victory v. Pataki*, 814 F.3d 47, 63 (2d Cir. 2016) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). To make that determination, courts balance the factors laid out in *Mathews v. Eldridge*: (1) "the private interest that will be impacted by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute safeguards"; and (3) "the [g]overnment's interest, including the fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail." 424 U.S. at 335; *Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 191 (2d Cir. 2020). Because this test "entails balancing multiple factors . . . . due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). However, the "essence of due process" are the requirements of notice and an opportunity to be heard. *Mathews*, 424 U.S. at 348; *see also Almazon v. Town of Oyster Bay*, No. 24-2789-CV, 2025 WL 1215309, at *3 (2d Cir. Apr. 28, 2025) (summary order).

a.   Notice

"For more than a century, the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)). Procedural due process requires notice reasonably calculated under all the circumstances "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Walter v. Queens Coll.*, 390 F. Supp. 3d 382, 399 (E.D.N.Y. 2019). "[N]otice is essential to afford the [plaintiff] an opportunity to challenge the contemplated action." *Bailey v. Pataki*, 708 F.3d 391, 408 (2d Cir. 2014) (quoting *Vitek v. Jones*,

445 U.S. 480, 496 (1980)). However, "[t]he particularity with which alleged misconduct must be described [in a notice] varies with the facts and circumstances of the individual case . . . [and] also increases with the significance of the interests at stake." *Spinelli v. City of New York*, 579 F.3d 160, 172 (2d Cir. 2009); *see, e.g.*, *Nicholas v. Bratton*, 376 F. Supp. 3d 232, 282 (S.D.N.Y. 2019) (applying the *Mathews* balancing factors to determine the adequacy of notice). Notice "need not be elaborate" because the "primary function" of pre-deprivation process is to serve as an "initial check against mistaken decisions." *O'Connor v. Pierson*, 426 F.3d 187, 198 (2d Cir. 2005) (quoting *Loudermill*, 470 U.S. at 545–46).

In the context of school disciplinary suspension, which implicates students' property interest in public education, students must at a minimum "be given some kind of notice" but the "timing and content of the notice and the nature of the hearing will depend on appropriate accommodation of the competing interests involved." *Goss*, 419 U.S. at 579. For example, all due process requires when a child receives a *disciplinary* suspension of ten days or less is "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* at 581. These procedures are required pre-deprivation, but they are "rudimentary." *Id.* "In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it occurred." *Id.* In the context of the removal of a police officer who is an unsatisfactory employee, only "notice of the charges, and an explanation of the *nature* of the [defendant's] evidence" is required by due process because requiring more "would impede the government's interest in quickly removing from service an unsatisfactory employee." *Locurto v. Safir*, 264 F.3d 154, 174 (2d Cir. 2001); *see also DiBlasio v. Novello*, 413 F. App'x 352, 357 (2d Cir. 2011) (applying the "well-recognized principle that due process permits a state to take

94

summary administrative action without pre-deprivation process, but subject to a prompt post-deprivation hearing, where such action is needed to protect public health and safety").

Therefore, procedural due process "does *not* require state officials to inform individuals of all the procedural guarantees they enjoy under state law." *Lamont*, 970 F.3d at 192 (emphasis in original). For example, in *Liberian Community Association of Connecticut v. Lamont*, the Second Circuit held that there was no procedural due process violation where, in response to the Ebola epidemic, state officials ordered plaintiffs who had recently emigrated from Liberia to quarantine for 21 days without providing notice of the availability of judicial review or of post-quarantine hearing procedures under state law. *Id*.

Additionally, "where judicial remedies are readily available in case law and statutes, due process is not offended where no notice of those remedies is provided." *United States v. Lopez*, 445 F.3d 90, 96 (2d Cir. 2006). Moreover, the government does not have to inform impacted individuals about procedures providing an "opportunity to appeal" an adverse decision even if not set forth in caselaw and statutes, "where public resources provide information about [the opportunity]." *Oles v. City of New York*, No. 22-1620-CV, 2023 WL 3263620, at *1 & n.1 (2d Cir. May 5, 2023). The Second Circuit has thus upheld notices that did not inform individuals of their right to appeal an adverse parking ticket determination where the court took judicial notice that a New York City Department of Finance webpage explained how to appeal such decisions. *Id*.

The Amended Complaint alleges in a conclusory fashion that none of the Defendants provided the children "with any process whatsoever" and that "Plaintiffs were not even provided notice and an opportunity to be heard." (Am. Compl. ¶ 65–66.) The DOH notices and school notices attached to the Amended Complaint flatly contradict this assertion. (*See* DOH Form

95

Notice; School Notices.)[48] Nevertheless, Plaintiffs repeat this erroneous assertion throughout the Amended Complaint and their brief opposing the Motions to Dismiss. (*See* Pls.' MTD Opp'n at 14 ("No Defendant provided a single Plaintiff with the bare minimum of notice and an opportunity to be heard.").)[49] In fact, Plaintiffs fail to make any substantive arguments or cite any legal authority supporting that incorrect assertion in the section of their brief opposing Defendants' Motions to Dismiss their due process claims. (Pls.' MTD Opp'n at 13–14.) Instead, Plaintiffs simply assert that "Plaintiffs have adequately pled a violation of the Fourteenth Amendment Due Process Clause" and then restate verbatim allegations made in the Amended Complaint. (*Compare* Pls.' MTD Opp'n 13–14, *with* Am. Compl. ¶¶ 86–95.) That is reason alone to conclude that Plaintiffs fail to state a Fourteenth Amendment due process claim. When a party refers to an issue "only in a perfunctory manner, unaccompanied by any effort at developed argumentation, it must be deemed waived[]—or, more precisely, *forfeited*." *In re Demetriades*, 58 F.4th 37, 54 (2d Cir. 2023).

Plaintiffs belatedly attempt to address the DOH and school notices in their reply brief on the PI Motion. (Pls.' PI Reply at 5.) There, Plaintiffs argue for the first time that the DOH and school notices were insufficient because they did not apprise "the person of the details concerning the charges, possible penalties, and the evidence against" them. (Pls.' PI Reply at 5.)

---

[48] Plaintiff Noreen Pieper's affidavit, which is attached to the Amended Complaint, alleges that she did not receive notice from the DOH that her child K.P. would be removed from school. (Pieper Aff. ¶ 4.) However, the DOH told the schools to notify the children that it had voided their DeVuono/Wild Child vaccination records, and K.P. received notice from her school. (*See* Pieper Aff. ¶¶ 7, 9; Sept. 9 DOH Ltr. to Schools.)

[49] Plaintiffs also repeat the same erroneous assertion throughout their briefing in support of the PI Motion. (*See, e.g.*, Pls.' PI Mem. at 10 ("Defendants provided Students with no process whatsoever. Not even notice . . ."); Pls.' PI Reply at 2 ("[The DOH] acknowledges that it did not provide Plaintiff with any process whatsoever.").)

As an initial matter, Plaintiffs forfeited these arguments by making only conclusory assertions in their brief in opposition to Defendants' Motion to Dismiss. *See In re Demetriades*, 58 F.4th at 54.[50] But even if Plaintiffs had timely raised these arguments, they nevertheless fail for three reasons.

First, *all* of the notices *did* inform Plaintiffs of reasons why their children faced pending exclusion from school. Each DOH notice states that the DeVuono/Wild Child immunization records for the child at issue were deemed "fraudulent"[51] and all but one of the school notices went even further to identify the specific vaccination records that the DOH had voided for the child at issue.[52] (*See* DOH Form Notice; School Notices at 1, 3, 5, 6, 8–9, 11–12, 14, 16, 19, 21, 23, 25–26, 28–29, 32.)

Second, both the DOH and school notices also provide notice of the penalty—school exclusion—absent proof of immunity in the form of serologic testing records, new vaccination

---

[50] Plaintiffs filed their opposition to Defendants' Motions to Dismiss on January 27, 2025, which failed to identify any specific deficiencies in the DOH and school notices. (Pls.' PI Opp'n.) Plaintiffs filed their reply in support of the PI Motion on January 31, 2025. (Pls.' PI Reply.)

[51] Every DOH notice included the following two sentences: "The Department has determined that these vaccinations reported by Wild Child are invalid and do not satisfy New York's requirements for school entrance or attendance. If your child has attended school for more than 14 days using these fraudulent vaccination records as proof of meeting vaccination requirements, they must immediately be excluded until and unless valid proof of vaccination or immunity is provided to the school." (DOH Form Notice.) Although the Amended Complaint does not attach a DOH notice to Plaintiff Noreen Pieper, Pieper received a school notice stating that the school nurse had contacted Pieper about immunizations required for her child, K.P., and that if she did not "submit[] [a] document validating immunization compliance by September 30, 2024" the school district would "legally need[] to exclude your child from attending school." (School Notices at 32.)

[52] For example, the school notice to the parents of R.J. stated: "[Y]our child, [R.J.], is out of compliance with the immunization requirements in that she is missing the following required immunizations: _MMR, Hepatitis B, Polio, Tdap, Varicella - all doses_." (School Notices at 6.)

records, or proof that the child is in the process of being immunized. (*See* DOH Form Notice; School Notices at 1, 3, 5, 6, 8–9, 11–12, 14, 16, 19, 21, 23, 25–26, 28–29, 32.)

Third, although the notices do not detail the specific information that the DOH relied upon to conclude that the DeVuono/Wild Child records for Plaintiffs' children were fraudulent, notice of the nature of the charge is sufficient when applying the three *Mathews v. Eldridge* balancing factors—the private interest affected by the invalidation of the DeVuono/Wild Child records and requirement to provide new proof of immunization, the risk of erroneous deprivation, and the government's interest in protecting the public from infection diseases. *See Mathews*, 424 U.S. at 334–35.

First, the private interest at stake—the children's property interest in a free education—is weighty, but the weight of this interest depends on the length of time for which the student is excluded from school. *See Goss*, 419 U.S. at 576 ("A short suspension is, of course, a far milder deprivation than expulsion."). According to the DOH and school notices, each child could avoid exclusion altogether by providing a serologic test demonstrating immunity to specific diseases, which would show that the DOH's invalidation of the child's DeVuono/Wild Child records was incorrect. Even the parents of the child who received the DOH and school notices only one day before the child's potential exclusion from school for lack of sufficient proof of immunization were notified that their child could remain in school while in the process of being immunized by, among other means, having blood drawn for a serologic test. (*See* School Notices at 25.) Such notice significantly minimized the risk of lengthy exclusion from school. Nevertheless, the Amended Complaint and documents attached/integral to it fail to allege that Plaintiffs took any of these measures.

Second, the DOH and school notices create a minimal risk of erroneous deprivation of the children's interest in a free public education because they informed all Plaintiffs of the availability of serologic testing to prove their children's immunity and prevent exclusion from school. (*See* DOH Notice (linking to 2024–25 New York Immunization Requirements Document); Walker Aff. ¶ 7 ("The school district informed me . . . to remain in school—my child would need to . . . submit serologic samples of antibodies (titers) or get revaccinated"; Plaintiff Affs. at 6 ¶ 7, 9 ¶ 7, 12 ¶ 7, 15 ¶ 7, 18 ¶ 7, 21 ¶ 7, 24 ¶ 7, 27 ¶ 7, 30 ¶ 7, 33 ¶ 7, 36 ¶ 7, 40 ¶ 7 (same).) Additionally, all but two Plaintiffs—the parents of A.M. and K.P.—received notice that their children could remain in school while in the process of being immunized by, among other means, having blood drawn for a serologic test and either awaiting test results, or if those results are negative, submitting proof of follow-up vaccination appointments. *See* School Notices at 1, 3, 5, 6, 11, 14, 16, 19, 21, 25, 28; 10 N.Y. C.R.R. § 66-1.1(j)(2).[53] These procedures minimize the risk that a child would be excluded from school due to the invalidation of their DeVuono/Wild Child vaccination records in error.

Third, the government has a significant interest in "protect[ing] public health and safety." *Novello*, 413 F. App'x at 357, which is advanced by notifying children who lack proper proof of school immunizations that they will be excluded from public school within the timeframes set

---

[53] Although each of the cited school notices informed Plaintiffs that their children could remain in school while "in process" of being immunized, they provide different amounts of information regarding what qualifies as being "in process." Half the notices provided the full definition of what it means to be "in process" of immunization under N.Y. C.R.R. § 66.1.1(j). (*See* School Notices at 8–9, 11, 14, 16–17, 21, 25.) Others notified Plaintiffs of one of the means of showing that their child was "in process" of being immunized. (*See id.* at 3, 6, 28.) Others did not state what qualifies as being "in process" of receiving immunization or did not use the term "in process" but did provide equivalent notice. (*See id.* at 1, 5, 19.)

forth in Section 2164 unless they demonstrate immunity through proper documentation in compliance with state law.

Indeed, a district court evaluating a motion for a preliminary injunction has held that plaintiffs "received ample notice" for purposes of assessing their likelihood to succeed on the merits of a procedural due process challenge to a vaccination mandate where the notice informed the plaintiffs of the vaccination mandate, the availability of a religious and medical exemption, the consequences of failure to comply, the opportunities to respond, and the right to an appeal. *Broecker v. New York City Dep't of Educ.*, 573 F. Supp. 3d 878, 888 (E.D.N.Y. 2021), *aff'd*, No. 23-655-CV, 2023 WL 7485465 (2d Cir. Nov. 13, 2023). Here, the notices included analogous information with notice of serologic testing as a way to stay in school. And, although the school notices sent to six of the Plaintiffs—the parents of R.J., M.W., A.C., V.F., K.O., and G.H—did not include notice of the right to appeal the DOH's invalidation of vaccination records or Defendants' alleged exclusion of children from school absent new proof of school immunizations, neither the DOH nor the school notices were required to do so because a publicly available document on the DOH website provides notice of the right to appeal a child's exclusion from school "based on vaccination status." School Notices at 1, 3, 5, 6, 19, 32; *see Oles*, 2023 WL 3263620, at *1 & n.1.[54] Notice of this right is also "readily available in case law and statutes." *Lopez*, 445 F.3d at 96; *see* N.Y. Educ. Law § 310(6-a).

The Amended Complaint does not allege, and Plaintiffs fail to address in their briefing, any other objections to the content or timing of the DOH or school notices. Plaintiffs therefore

---

[54] New York State Dep't of Health, *Frequently Asked Questions About Legislation Removing Non-Medical Exemptions from School Vaccination Requirements* (June 8, 2019), https://www.health.ny.gov/publications/2170/docs/nonmedical_vaccine_exemption_faq.pdf. I take judicial notice of this website just as the Second Circuit did in *Oles*, 2023 WL 3263620, at *1 & n.1.

forfeited any other arguments regarding the adequacy of the notice they received. *See In re Demetriades*, 58 F.4th at 54. Indeed, to require the court consider every potential objection to the notices would be "tantamount to an invitation for [the Court] to scour the record, research any legal theory that comes to mind, and serve generally as an advocate for [Plaintiff]." *Genomma Lab USA, Inc. v. Carruitero*, No. 22-3109-CV, 2023 WL 8520181, at *2 (2d Cir. Dec. 8, 2023). That is particularly true here. As detailed above, although each of the fourteen Plaintiffs received an identical DOH notice, the school notices they received vary in content and length and were sent to Plaintiffs with different amounts of advanced notice before their children were excluded from public school. (*See supra*, Factual Background § II.C (discussing the school notices' different levels of detail regarding the specific vaccination records voided, the right to appeal, and procedures for satisfying Section 2164).) Many Plaintiffs also received notice from the DOH before the notice from their respective school. (*Compare, e.g.*, DOH Notices at 19 (indicating that the DOH sent a notice to child V.F. on September 9, 2024), *with* School Notices at 20 (indicating that V.F.'s school sent notice on September 16, 2024)).

Nonetheless, even if Plaintiffs had challenged the timing of the notices they received, the Amended Complaint fails to plead a plausible claim that the timing of the DOH or school notices failed to afford due process. All Plaintiffs other than Steven Orlowski and Nancy Randazzo-Fuca received the DOH and/or school notices at least one week before their child would be excluded from school absent submission of proof of immunity. (*See supra*, Factual Background § II.C.) Orlowski received the DOH and school notices just one day before his child, C.O., was allegedly excluded from school on September 17, 2024, and Randazzo-Fuca received the school notice two days and the DOH notice four days before her child V.F. was allegedly excluded from school on September 18, 2024. (*See* Orlowski Aff. ¶¶ 4, 7; Randazzo-Fuca Aff. ¶¶ 4, 7; DOH

Notices at 20, 27; School Notices at 19, 25–26.) However, the school notice that Orlowski received was one of the more detailed notices attached to the Amended Complaint and provided notice that C.O. could remain in school if Orlowski submitted a "blood test (titer) lab report that proves your child is immune" or showed that C.O. had taken any one of three available steps to show that C.O. was in the process of being immunized. (*See* School Notices at 25–26.) It also notified Orlowski of his right to appeal the decision. (*See id.*) Providing this detailed information mitigated the risk that the Defendants' late notice would result in a "mistaken decision[]." *See O'Connor*, 426 F.3d at 198 (2d Cir. 2005) (quoting *Loudermill*, 470 U.S. at 545–46) (explaining that the primary purpose of pre-deprivation process is to serve as an "initial check against mistaken decisions."). The school notice sent to Randazzo-Fuca included slightly less information, but it nevertheless informed Randazzo-Fuca that her child could remain in school if she submitted an "[i]mmunization catch-up schedule and proof of appointments." (School Notices at 19.) Randazzo-Fuca also received more notice than Orlowski from the DOH. (*Id.*) Regardless, the Amended Complaint fails to plead a lack of timely notice because, as discussed below, due process did not require the children to be provided a pre-deprivation hearing before being excluded from school for lack of proper immunization records. (*See infra*, Discussion § III.A.i.2.b.)

For all of these reasons, the Amended Complaint fails to state a claim that Plaintiffs did not receive adequate notice before their children were excluded from school.

b.  Opportunity to be Heard

The Amended Complaint also fails to state a procedural due process claim that Plaintiffs' children did not receive an opportunity to be heard. "[T]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 52 (2d Cir. 2018). "[O]rdinarily [that] requires an opportunity for some kind of a hearing *prior* to the deprivation of a significant property interest." *Chunn v. Amtrak*, 916 F.3d 204, 207 (2d Cir. 2019) (emphasis in original). However, there is a "well-recognized principle" that permits "summary administrative action without pre-deprivation process" where such action "is needed to protect public health and safety" and where a post-deprivation hearing is provided. *Novello*, 413 F. App'x at 357 (citing *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 300, 303 (1981)); *see also Hodel*, 452 U.S. at 300 ("Protection of the health and safety of the public is a paramount governmental interest which justifies summary administrative action."). So too, "[w]here a pre-deprivation hearing is impractical and a post-deprivation hearing is meaningful, the State satisfies its constitutional obligations by providing the latter." *Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir. 1984); *see also Cohn v. New Paltz Cent. Sch. Dist.*, 363 F. Supp. 2d 421, 433 (N.D.N.Y. 2005), *aff'd in part*, 204 F. App'x 56 (2d Cir. 2006) (finding that a post-deprivation Article 78 proceeding in state court cured any deficiencies in the school disciplinary hearing and administrative appeal process preceding student's expulsion from school for the remainder of the school year).

As noted, the Amended Complaint alleges in a conclusory fashion that none of the Defendants provided the children with *any* opportunity to be heard. (Am. Compl. ¶¶ 65–66.) Balancing the *Mathews* factors, the Amended Complaint fails to plausibly allege that Plaintiffs were denied an opportunity to be heard because Plaintiffs were afforded with several meaningful opportunities to be heard both before and after their children were excluded from school for failing to show new proof of immunity from certain diseases.

103

This analysis proceeds in three parts. First, I discuss the pre- and post-deprivation opportunities to be heard that were available to Plaintiffs. Second, I apply a *Mathews* balancing analysis to those procedures. And third, I consider the arguments Plaintiffs belatedly raise in their reply on the PI Motion.

### (i)  Pre- and Post-Deprivation Opportunities to be Heard

First, the DOH and school notices provided Plaintiffs the immediate option of preventing their children's exclusion from school by submitting serologic testing records showing their children's immunity. By making this procedure available from the moment Plaintiffs were notified that certain of their children's vaccination records were invalid and therefore insufficient to show compliance with Section 2164, the State and School Defendants offered each Plaintiff a way to disprove the DOH's determination that their child's DeVuono/Wild Child immunization records were fraudulent *before* each child was excluded from school. (*See, e.g.*, Walker Aff. ¶ 7.) Moreover, even if Plaintiffs did not receive the serologic test results before their exclusion date, proof that Plaintiffs' children had received a blood draw for a serologic test was enough for the children to remain in school for fourteen days while the results were pending. 10 N.Y. C.R.R. § 66-1.1(j)(2). And, if a child ultimately received a negative test result (i.e., lack of immunity to the disease at issue), the child would still remain "in process"—and therefore able to attend school in person—if the parent made an appointment for their child to be immunized within 30 days of being notified that the child must begin completion of missing immunizations according to the ACIP catch-up schedule. *Id.* § 66-1.1(3). Under these procedures, Plaintiffs children were permitted to remain in public school while going through procedures to demonstrate their immunity. Thus, Defendants afforded Plaintiffs a pre-deprivation opportunity to demonstrate that their children's DeVuono/Wild Child records were not fraudulent.

104

Second, New York's Public Health and Education Laws together provide Plaintiffs a procedure for appealing the exclusion of their children from school for insufficient proof of immunization. Section 2164 provides that a person in a parental relationship to "a child denied school entrance or attendance may appeal by petition to the [C]ommissioner of [E]ducation" pursuant to Education Law Section 310. PHL § 2164(7)(b). Section 310, in turn, authorizes the Commissioner of Education to hear and decide appeals from the decision of a "principal, teacher, owner or other person in charge of any school in denying a child admission to, or continued attendance at, such school for lack of proof of required immunizations." N.Y. Educ. Law § 310(6-a); *see also Monroe Woodbury Central Sch. Dist.*, 2012 WL 2940020, at *10 (holding that the availability of appeal under Section 310 defeated a procedural due process claim brought by parents who withdrew their child from school due to school bullying). Moreover, the Commissioner of Education has the power to stay the exclusion of a child from school while that appeal is pending, N.Y. Educ. Law § 311(2), and the Commissioner of Education's regulations permit a petitioner to apply for such a stay when filing an appeal. N.Y. Comp. Codes R. & Regs. tit. 8 § 276.1. In the appeals process, Plaintiffs may be represented by an attorney, *id.* § 275.15, and may file written submissions in the form of an initial petition and a reply, with supporting affidavits, *id.* §§ 275.3, 275.14. The Commissioner of Education then issues a written decision resolving the appeal. *Id.* § 276.7; *see, e.g.*, *Appeal of E.Y.*, 60 Educ. Dep't Rep., Decision No. 17,891 (July 30, 2020) (Weisbord Decl. Ex. E, ECF No. 99-5).[55]

---

[55] The Commissioner of Education's regulations also permit the Commissioner to direct the parties to participate in a "confidential resolution conference" for the purpose of "considering settlement, simplifying the issues, resolving procedural issues, and/or discussing any matters which may aid in the expeditious disposition of the appeal." N.Y. Comp. Codes R. & Regs. tit. 8 § 276.2(a). However, "no evidence may be introduced or received, and any statements made therein shall not be admissible in the appeal." *Id.* § 276.2(d).

Plaintiffs do not address whether the existing procedures for appealing a school exclusion for inadequate proof of immunization satisfies the requirements of procedural due process, whether alone or in combination with other procedures, as the State Defendants observe. (State Defs.' MTD Reply at 6.) Rather, Plaintiffs only assert, in conclusory fashion and without citing any authority, that the Commissioner of Education lacks jurisdiction over the DOH and cannot hear Fourteenth Amendment due process claims. (*See* Pls.' MTD Opp'n at 19.)[56] To be clear, whether the Commissioner of Education can hear Fourteenth Amendment claims is entirely irrelevant to the question of whether the administrative appeal process afforded Plaintiffs an adequate opportunity to be heard. The question before this Court on Plaintiffs' procedural due process claim is *not* whether the Commissioner could have assessed the claim that the administrative appeals process provided inadequate notice and opportunity to be heard. Rather, the question before this Court is whether the administrative appeals process provided Plaintiffs an adequate opportunity to contest *the basis for the challenged administrative decision*—here, Defendants' determination that Plaintiffs' children would be excluded from public school absent proof of compliance with Section 2164 in the form of serologic testing records, vaccination records other than the invalidated DeVuono/Wild Child records, or records showing that the children were in the process of being immunized.

Moreover, Plaintiffs' argument that the Commissioner of Education lacks "jurisdiction" over the DOH or Commissioner McDonald is unpersuasive. The Amended Complaint alleges that the DOH invalidated the DeVuono/Wild Child vaccination records for Plaintiffs' children, but that the School Defendants relied on the DOH Directive in determining that Plaintiffs

---

[56] Plaintiffs make this argument in a section of their opposition brief addressing whether they were required to exhaust administrative remedies before bringing claims under Section 3214(3)(c)(1). (*See* Pls.' MTD Opp'n at 19.)

children must be excluded from school absent new proof of immunity and that the School

Defendants actually carried out the exclusions. (Am. Compl. ¶¶ 44, 57–62, 69–82.) The

Amended Complaint does not allege, and Plaintiffs fail to provide any legal authority for the

proposition, that on appeal from a School Defendant's exclusion of a Plaintiff's child from

public school for failure to provide new proof of immunity, the Commissioner of Education is

prohibited from considering the basis for the School Defendants' reliance on the DOH Directive

as well as the DOH's basis for issuing that directive.

Third, the availability of judicial review in state court under Article 78 independently

afforded Plaintiffs a sufficient post-deprivation opportunity to be heard to challenge Defendants'

determination that their children would be excluded from school absent the provision of new

proof of immunity to specific diseases. (State Defs.' MTD Mem. at 21.) In New York, an

aggrieved individual may bring an Article 78 proceeding to challenge state administrative action

on the basis that it "was made in violation of lawful procedure, was affected by an error of law or

was arbitrary and capricious or an abuse of discretion," among other grounds. N.Y. C.P.L.R.

7803(3); *see also Whitfield v. City of New York*, 96 F.4th 504, 519 (2d Cir. 2024). Article 78

proceedings permit a petitioner to "submit affidavits and other written evidence, and where a

material issue of fact is raised, have a trial of the disputed issue, including constitutional claims"

before a neutral adjudicator. *Locurto*, 264 F.3d at 174.

The Second Circuit has held that an Article 78 proceeding "constitutes a wholly adequate

post-deprivation hearing for due process purposes" in a variety of contexts. *Id*. at 175 (holding

that failure to afford neutral adjudicators at pre-termination hearings for police officer and two

firefighters did not violate procedural due process in light of the availability of Article 78

proceedings); *see also Horton v. Westling*, 765 F. App'x 531, 532–34 (2d Cir. 2019) (holding

107

that Article 78 proceedings were an adequate post-deprivation remedy in a procedural due process challenge to a child's suspension from school). And district courts within this circuit have held that Article 78 proceedings provide an adequate post-deprivation opportunity to be heard in a variety of contexts relevant to the school vaccination context. *See, e.g., Moskowitz v. Great Neck Union Free Sch. Dist.*, No. 20-cv-1659, 2021 WL 4268138, at *15–16 (E.D.N.Y. Aug. 4, 2021), *report and recommendation adopted*, 2021 WL 3878777 (E.D.N.Y. Aug. 31, 2021) (considering child's academic suspension from school); *Monroe*, 2012 WL 2940020, at *10 (addressing procedural due process claim concerning a school response to bullying and harassment); *Broecker*, 573 F. Supp. 3d at 889 (considering Department of Education employee's challenge to pending placement on leave without pay for noncompliance with applicable COVID-19 vaccination mandate).

Plaintiffs fail to address the availability of Article 78 proceedings in either their opposition to Defendants' Motions to Dismiss or their PI Motion submissions, and only generally contend in reply on the PI Motion that Defendants' argument that "there are adequate 'post-deprivation' remedies is meritless." (Pls.' PI Reply at 3; *see also* Pls.' MTD Opp'n.)[57]

---

[57] Plaintiffs make two arguments in their PI Motion reply: (1) Plaintiffs were not "required to first exhaust administrative remedies" before bringing their due process claims and (2) Plaintiffs do not "allege that Defendants' deprivation was random, or arbitrary." (Pls.' PI Reply at 3.) Both of these arguments are misplaced. First, as to exhaustion, the point is not that Plaintiffs must exhaust post-deprivation remedies before bringing procedural due process claims, but rather that these post-deprivation remedies provide an adequate opportunity to be heard. Second, although Plaintiffs do not explain why it is pertinent that they do not allege a "random or arbitrary" deprivation, I note from my own review of the caselaw that some of the cases holding that Article 78 proceedings afford sufficient post-deprivation relief have done so where "a party sues the state and its officials and employees for the arbitrary and random deprivation of a property or liberty interest." *Grillo v. New York City Transit Auth.*, 291 F.3d 231, 234 (2d Cir. 2002). However, the Second Circuit has made clear that a "distinction that some of [these] cases typically involved random and unauthorized conduct, rather than conduct according to predetermined rules is immaterial." *Locurto*, 264 F.3d at 175. In either situation, Article 78 proceedings can constitute a "wholly adequate post-deprivation hearing." *Id.*

108

Plaintiffs therefore forfeited any argument that the procedural protections afforded by judicial review through Article 78 proceedings in state court failed to afford them a post-deprivation opportunity to be heard regarding their challenge to Defendants' determination that Plaintiffs' children would be excluded from public school absent the provision of new proof of immunity. *In re Demetriades*, 58 F.4th at 54.

Even if Plaintiffs have not forfeited such an argument, judicial review in state court through Article 78 proceedings afforded Plaintiffs a robust opportunity to be heard before a neutral adjudicator to challenge the invalidation of their children's DeVuono/Wild Child vaccination records and alleged exclusion from public school absent the provision of new proof of compliance with the school immunization law. Indeed, all but two of the Plaintiffs[58] in this action filed an Article 78 petition in state court seeking:

> judgment pursuant to CPLR § 7803 finding DOH's determination that Students' immunization records were fraudulent, that School Districts cannot accept certificates of immunization as valid proof of inoculation, that positive titers or revaccination are the only valid means of proof, and their subsequent action prohibiting Students from attending school (collectively, "Determinations") were made in violation of law procedure, were arbitrary and capricious, and an abuse of discretion.

*Mule* Order at 4, 15.[59] The DOH and school districts opposed orally and in writing. *Id.* at 5–6. Although the court found that the petitioners had "notice of the DOH's submissions which are clearly postured as a motion to dismiss," they "did not submit a reply or otherwise oppose the

---

[58] The two Plaintiffs who were not part of the Article 78 proceeding were Noreen Pieper on behalf of her child K.P. and Kelly McKeon on behalf of her child A.C. (*Compare* Am. Compl., *with Mule* Order at 1.)

[59] In addition to seeking Article 78 relief, the petitioners also brought claims under other state law provisions for declarations that the DOH Determinations constitute an unlawful amendment of Section 2164 and that DOH and the school districts violated Section 3214(3)(c)(1) and the right to due process under the New York Constitution. *Mule* Order at 4, 15. All of these claims were dismissed for failure to state a cause of action. *Id.* at 11–14.

DOH's submissions." *Id.* at 9–10.[60] The court concluded that the petitioners failed to meet their burden under Article 78 to show that the challenged decisions were "made in violation of lawful procedure, [] affected by an error of law or [] arbitrary and capricious or an abuse of discretion" because the DOH had shown "more than a rational basis for their determinations." *Id*. at 10–11.[61] The court reasoned that the DOH Determinations "were founded upon a years-long investigation regarding the fraudulent vaccination records administered by DeVuono." *Id.* at 11. It also considered evidence submitted by the Plaintiffs and an ex-parte affirmation submitted by the DOH for in-camera review, which was accompanied by specific documents reviewed during the DOH's investigation and which, according to the court, "support[ed] DOH's rationale for finding the subject vaccination records to be fraudulent." *Id.* at 6, 11.[62]

---

[60] In fact, the docket shows that the petitioners in *Mule* were not only on notice of the DOH's submissions, but that the state court issued an order to show cause and briefing schedule, which expressly gave the petitioners a chance to submit a reply. Order to Show Cause with Emergency TRO at 5, *Mule*, Index No.: 616552/2024 (Sup. Ct., Nassau Cnty. Sept. 20, 2024), NYSCEF No. 28. Nonetheless, the petitioners failed to submit a reply, and the court ruled on the submissions that were filed.

[61] Although Plaintiffs contend that the Commissioner of Education lacks jurisdiction over the DOH and Commissioner McDonald (Pls.' MTD Opp'n at 19), the state court provided robust judicial review of the DOH's invalidation of vaccination records and other actions in resolving the Article 78 petition.

[62] Plaintiffs forfeited any argument that the state court's in-camera review of certain documents rendered the proceeding an inadequate post-deprivation remedy for several reasons. First, although the DOH requested to file documents in-camera and the state court "indicated that it was interested in receiving an *ex parte* submission," Respondent New York Department of Health's Memorandum of Law in Opposition to Petition at 1, *Mule*, Index No.: 616552/2024 (Sup. Ct., Nassau Cnty. Sept. 24, 2024), NYSCEF No. 31, there is no indication in the record that the petitioners ever objected to the submission of ex-parte documents, and as noted, the petitioners failed to submit any reply to the DOH's submissions. Second, because Plaintiffs in this action failed to address the availability of Article 78 proceedings to provide judicial review of Defendants' challenged conduct, they also forfeited any argument that the state court's reliance on certain ex-parte submissions in *Mule* rendered it an inadequate post-deprivation opportunity to be heard.

110

The Amended Complaint thus alleges that Plaintiffs had three opportunities to contest Defendants' alleged exclusion of their children from public school for lack of proof of immunity to certain diseases following DOH's invalidation of their children's DeVuono/Wild Child vaccination records: (1) a pre- and post-deprivation opportunity to provide serologic testing records demonstrating their children's immunity, (2) a pre- and post-deprivation administrative appeal to the Commissioner of Education, and (3) a post-deprivation opportunity for judicial review through an Article 78 proceeding.

### *(ii)  Mathews Balancing Analysis*

The availability of the three different pre- and post-deprivation procedures permitting Plaintiffs to challenge the DOH's invalidation of their children's DeVuono/Wild Child vaccination records and Defendants' alleged exclusion of their children from public school satisfies due process under the *Mathews* balancing test.

First, as noted, the procedures almost entirely eliminate the risk of erroneous deprivation because they permit Plaintiffs to submit serologic test results to prove their children's immunity and thereby correct any erroneous determination by the DOH that their children's DeVuono/Wild Child vaccination records are fraudulent. As discussed, under the DOH regulations, a child who has had "blood drawn for a serologic test" and is awaiting test results is considered "in process" of being immunized for up to fourteen days and may attend public school during that time. 10 N.Y. C.R.R. § 66-1.1(j)(2). If the child receives a negative result, the child remains "in process" if the child has an appointment to be immunized within 30 days of being notified that the child must begin completion of missing immunizations according to the ACIP catch-up schedule. *Id.* § 66-1.1(3). This procedure limits the risk that a child is erroneously excluded from school while attempting to prove through serologic testing that their

111

DeVuono/Wild Child records were not fraudulent. Even for children who decide not to take a blood test, the Defendants' procedures limit the risk of erroneous deprivation by permitting the children to submit new proof of vaccination or proof that the child has received a first vaccination dose and is "in process" of receiving the remaining doses. *See id.* § 66-1.1(1). Finally, the Amended Complaint does not allege that taking a blood test to prove immunity was cost prohibitive or unduly burdensome or that it can fail to detect immunity in a child that has been vaccinated. As noted, the Amended Complaint and attached Plaintiffs' affidavits provide no religious, ideological, or other objection to taking a blood draw to test for immunity. And the fact that several of the School Defendants notified parents that their children could be "immunized with [the parent's] consent and *without charge* by the county health official" further underscores that procedures imposing little burden on Plaintiffs and their children existed to minimize the risk of erroneous deprivation. (*See* School Notices at 12, 17, 29.)

Second, the children's property interest in a free public education is significant, and each child in this action has allegedly been excluded from school for at least eight months, but the weight afforded this private interest is lessened in the *Matthews* balancing test because the length of time during which the children were allegedly excluded from public school could have been eliminated or dramatically reduced by Plaintiffs own actions. (*See* Am. Compl. ¶¶ 69–82 (alleging that the children were excluded from school beginning on dates ranging from September 16, 2024 to October 18, 2024)). Plaintiffs could have either: (1) had their children take a blood test to show that their children were  immune or at least "in process" of being immunized, *see supra*, Factual Background § I, 10 N.Y. C.R.R. § 66-1.1(j); or (2) appealed to the Commissioner of Education Defendants' decision to exclude their children from public school absent new proof of immunity and sought a stay of the exclusion pending appeal, N.Y.

Educ. Law §§ 310(6-a), 311(2); PHL § 2164(7)(b). Both routes were available to Plaintiffs to entirely prevent, or at least significantly limit, the duration of time during which their children were excluded from school for lack of adequate proof of immunity.

Finally, Defendants also have a strong interest in protecting school children, their families, school staff, and the broader public from infectious disease. As Plaintiffs concede, "[u]nvaccinated children pose a health threat to other students." (Am. Compl. ¶ 64.) As one court in this circuit has recognized, disease spread is "precisely the scenario" for which "summary administrative action" is justified. *Page v. Cuomo*, 478 F. Supp. 3d 355, 371 (N.D.N.Y. 2020) (procedural due process challenge to COVID-19 quarantine policy); *see also Bayley's Campground Inc. v. Mills*, 463 F. Supp. 3d 22, 35–36 (D. Me. 2020), *aff'd*, 985 F.3d 153 (1st Cir. 2021) (same). Similarly, in *Novello*, the Second Circuit rejected a radiologist's procedural due process challenge to the DOH's summary suspension of his medical license without pre-deprivation process because of the need to "protect public health and safety." *Novello*, 413 F. App'x at 357. Here, Defendants engaged in more than just summary administrative action because they provided Plaintiffs with the multiple procedural protections discussed above, including the pre-deprivation opportunity for Plaintiffs to provide blood tests that disprove DOH's invalidation of their children's DeVuono/Wild Child vaccination records by showing their children's immunity.

For all of these reasons, the procedures provided to Plaintiffs satisfy the *Mathews* balancing test. Although Plaintiffs' children have a weighty interest in attending public school in person, Defendants' procedures permitting Plaintiffs to demonstrate their children's immunity through serologic testing, new vaccination records, or proof that their children are in the process of receiving the required immunizations provided Plaintiffs the opportunity to minimize the

length of time during which their children were excluded from school and guarded against any risk that their children's vaccination records from DeVuono/Wild Child were erroneously determined to be fraudulent. Moreover, the availability of an appeal to the Commissioner of Education, where individuals may be represented by counsel and submit written pleadings and affidavits, and judicial review through Article 78 proceedings in state court also minimized the risk of erroneous deprivation. Finally, in light of the government's strong interest in protecting school children, and thereby school staff, children's families, and the broader public from infectious diseases as codified in Section 2164, the availability of some pre-deprivation process alongside the availability of appeal to the Commissioner of Education and robust post-deprivation remedies through an Article 78 proceeding in state court provided Plaintiffs adequate opportunities to be heard.

### (iii) *Plaintiffs' PI Reply*

As noted, Plaintiffs do not make *any* specific arguments in the procedural due process section of their opposition brief and instead erroneously assert that "[n]o Defendant provided a single Plaintiff with . . .  an opportunity to be heard." (Pls.' MTD Opp'n at 14.) Plaintiffs only offer arguments concerning the nature of the notice and opportunity to be heard they received in their reply brief on the PI Motion, thereby forfeiting those arguments. (*See supra*, Discussion § III.A.i.2.a.) But even were I to consider the arguments set forth in Plaintiffs' reply brief on the PI Motion, they are not persuasive.

First, Plaintiffs' argument that Defendants failed to afford them sufficient pre-deprivation process relies on the Supreme Court's decision in *Goss v. Lopez*, without accounting for distinctions between the facts alleged in the Amended Complaint and the school discipline context considered in *Goss*. (*See* Pls.' PI Reply at 1 (citing *Goss*, 419 U.S. 565).) The Supreme

Court held in *Goss* that when a student is removed from school for disciplinary misconduct, "as a general rule notice and hearing should precede removal of the student from school." 419 U.S. at 582. However, the reasoning in *Goss* relied upon a concern that school officials imposing discipline "frequently act on the reports and advice of others" and that the "controlling facts and nature of the conduct" are often disputed. *Id.* at 580. This action does not concern any determination that Plaintiffs' children engaged in disciplinary misconduct, but rather a determination that the children lack proper proof of immunization as required by Section 2164—something Plaintiffs can correct by presenting a blood test showing that their children possess immunity to the diseases at issue. Thus, the factors counseling in favor of pre-deprivation hearing in *Goss* are not present in this case. Moreover, even *Goss* reiterated that due process does not mandate "inflexible procedures universally applicable to every imaginable situation," and the Supreme Court acknowledged that a child may be "immediately removed from school" with "rudimentary hearing [to] follow" where sufficiently justified. *Id.* at 582.

Second, Plaintiffs' contention that "this [case] is not a public health context. It is a due process context," (Pls.' PI Reply at 6), is belied by their own admission that unvaccinated children pose a health risk to other children (Am. Compl. ¶ 64).

Third, Plaintiffs argue that it "presupposes guilt" to assume a child is a health risk before a post-deprivation hearing. (Pls.' PI Reply at 6.) However, the fact that Defendants permitted children to remain in school by providing proof of immunity through serologic testing underscores that they did not presume the children's "guilt." Rather, Plaintiffs could have shown proof of a blood draw and immediately ensured that their children remained in school pending results that showed immunity, thereby disproving the DOH's determination that their children's DeVuono/Wild Child vaccination records were fraudulent.

115

Finally, Plaintiffs rely on *Cleveland Board of Education v. Loudermill* to argue that Defendants did not give them an opportunity to be heard because they purportedly had no chance to "present reasons, either in person or in writing, why proposed action should not be heard." (Pls' PI Reply at 5–6 (citing *Loudermill*, 470 U.S. at 546).) However, *Loudermill* made clear that due process may be satisfied where the notice and opportunity to be heard prior to the deprivation at issue is less elaborate than post-deprivation procedures. *See Loudermill*, 470 U.S. at 547 (holding that prior to termination of a tenured government employee, due process requires only oral or written notice of the charges, an explanation of the government's evidence, and an opportunity for the employee to "present his side of the story"). Here, Plaintiffs received notice that their children were facing exclusion from school absent adequate proof of their immunization and an explanation that this decision was based on the invalidation of their children's DeVuono/Wild Child vaccination records as fraudulent. Plaintiffs were also afforded the required opportunity to be heard through three mechanisms: (1) the opportunity to submit serologic test results to show that their children's exclusion from school "should not [happen]" because the children are immune; (2) the opportunity to appeal to the Commissioner of Education the requirement to provide new proof of their children's immunity in order to avoid exclusion from school, *see id.*; N.Y. Educ. Law §§ 310(6-a), 311(2); and (3) judicial review in state court through an Article 78 proceeding challenging the State Defendants' invalidation of the vaccination records at issue and all Defendants' decision to exclude the children from school absent new proof of immunity. Had Plaintiffs provided records demonstrating that their children had a blood draw to test for titers, the children could have remained in public school. Similarly, had Plaintiffs immediately appealed the Defendants' determinations and sought a stay of their

children's exclusion from school pending appeal, the Commissioner could have granted a stay so that the children remained in public school while the appeal was resolved.

\* \* \*

For the aforementioned reasons, the Amended Complaint fails to state plausible claims for procedural due process against the State and School Defendants, and these claims are dismissed under Rule 12(b)(6).[63]

### ii.   Substantive Due Process

As noted above, the Amended Complaint appears only to plead procedural due process claims, and Plaintiffs do not argue in their briefing on the Motions to Dismiss or the PI Motion that they bring substantive due process claims against any of the Defendants. (*See supra*, Discussion § III.A.) Nor do Plaintiffs request an opportunity to amend the Amended Complaint to bring a substantive due process claim in any of their submissions on the Motions to Dismiss or the PI Motion. (*See* Pls.' MTD Opp'n; Pls.' PI Reply; ECF Nos. 106–07.) Under the Second Circuit's precedents, Plaintiffs have therefore forfeited the argument that the Amended Complaint pleads substantive due process claims. *See In re Demetriades*, 58 F.4th at 54.

Nevertheless, even if Plaintiffs had not forfeited this argument, the Amended Complaint fails to plead a plausible substantive due process claim. It is well established that the right to a free public education is not a fundamental right afforded the Fourteenth Amendment's protections for substantive due process. Moreover, Defendants' decision to exclude Plaintiffs' children from public school absent the receipt of specific proof of immunity in the form of

---

[63] As discussed previously, the School Defendants argue that the due process claims against them should be dismissed because they were legally required to exclude students under New York law and the DOH Directive. I do not address this argument because the Amended Complaint fails to plausibly allege that the School Defendants did not provide Plaintiffs adequate notice or an opportunity to be heard.

117

serologic testing records, new vaccination records, or proof that a child was "in process" for being immunized following invalidation of the children's DeVuono/Wild Child vaccination records is not outrageous or arbitrary and does not shock the conscience under longstanding Second Circuit precedents.

To determine whether a government regulation on its face infringes a right protected by substantive due process, the court first "determine[s] whether the asserted right is fundamental" and, if it is, applies strict scrutiny. *Goe*, 43 F.4th at 30. When a "claimed right is not fundamental," the court applies rational basis review, and the "governmental regulation need only be reasonably related to a legitimate state objective." *Id.* Where, as here, plaintiffs make an applied challenge, the court looks to the "facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the [plaintiff] to whom it was applied of a protected right." *Id.* In doing so, the court must first identify the "constitutional right at stake or the deprivation of property interest at issue." *Id.* Courts apply the "shocks the conscience test" to determine whether a plaintiff has stated a plausible claim for violation of the right to substantive due process. *Id.*; *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005) (explaining that the plaintiff must "allege governmental conduct that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience"). To survive a Rule 12(b)(6) motion, a complaint must plead facts supporting a plausible claim that the alleged conduct was outrageous, arbitrary, or conscience shocking. *See Goe*, 43 F.4th at 34 (affirming district court ruling that the pleading failed to plausibly allege that the challenged conduct was "outrageous," "arbitrary," "irrational," or "conscience-shocking"). Allegations that the challenged conduct was merely "incorrect or ill-advised" are insufficient. *Lowrance v. C.O. S. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994).

Although the right to education is not a fundamental right, *Goe*, 43 F.4th at 31, because New York law creates a property interest in free public school, courts have found the deprivation of education to be a valid basis for a substantive due process claim. *See, e.g., DeFabio v. E. Hampton Union Free Sch. Dist.*, 623 F.3d 71, 82 (2d Cir. 2010). Nevertheless, the Amended Complaint does not plausibly allege that the Defendants engaged in conduct that was outrageous, arbitrary, irrational, or conscience shocking as required for a substantive due process claim.

The Second Circuit has upheld the constitutionality of Section 2164's "mandatory vaccination regime." *Phillips v. City of New York*, 775 F.3d 538 (2d Cir. 2015). Mostly recently in *Goe v. Zucker*, the Second Circuit held that rational basis review applies to facial challenges to Section 2164 because there is "no fundamental right to an education." 43 F.4th at 31 (citing *Plyler v. Doe*, 457 U.S. 202, 223 (1982)). It upheld the law's criteria for medical exemptions, and recognized that Section 2164's requirement that students be vaccinated for certain infectious diseases advances a legitimate government interest in "protecting communities from serious, vaccine-preventable diseases through immunization." *Id.* at 31–32. The Second Circuit also affirmed the district court's decision concluding that the amended complaint failed to plausibly allege that the denial of medical exemptions by school district officials was outrageous, arbitrary, or conscience shocking. *Id.* at 34.

The Amended Complaint pleads that the DOH voided the children's records of vaccinations administered by DeVuono/Wild Child after DeVuono was convicted of several crimes, including money laundering, for receiving payment for falsified COVID-19 vaccination cards. (Am. Compl. ¶ 49.) The DOH press release, which is integral to the Amended Complaint, indicates that the DOH further investigated DeVuono for alleged misconduct relating to pediatric vaccinations. *See* DOH Sept. 9, 2024 Press Release; *supra* note 11. These allegations provide

119

ample basis for Defendants to have excluded the children from school absent the receipt of specific proof of immunity in the form of serologic testing records, new vaccination records, or proof that a child was in the process of being immunized. The Amended Complaint therefore fails to plausibly allege that Defendants engaged in conduct so outrageous, arbitrary, irrational, or conscience shocking that it violates the right to substantive due process.

Therefore, to the extent the Amended Complaint's first cause of action pleads a Fourteenth Amendment substantive due process claim, I grant the State and School Defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6). Because all due process claims against the School Defendants are dismissed, I do not reach the School Defendants' arguments that these claims against the Superintendent Defendants in their official capacities should be dismissed on the basis that the Amended Complaint fails to plead personal involvement, that such claims are duplicative of the claims against the School District Defendants, and that these claims are barred by qualified immunity. (*See* School Defs.' MTD Mem. at 39–44.)

B.  Education Law Section 3214(3)(c)(1) Claims

Plaintiffs' second cause of action alleges that the School Defendants excluded their children from school without providing them the statutory protections guaranteed under Education Law Section 3214(3)(c)(1). Section 3214(3)(c)(1) directs that a "pupil who is insubordinate or disorderly or violent or disruptive, or whose conduct otherwise endangers the safety, morals, health or welfare of others" may not be suspended unless the pupil receives a "fair hearing upon reasonable notice, at which such pupil shall have the right of representation by counsel." N.Y. Educ. Law § 3214(3)(c)(1). The Amended Complaint fails to state a Section 3214(3)(c)(1) claim for two reasons.

First, Plaintiffs failed to exhaust their administrative remedies. "It is the general rule in New York state courts that individuals challenging an administrative determination must exhaust their administrative remedies," and this requirement "applies to state claims brought in federal court." *Caviezel v. Great Neck Pub. Sch.*, 701 F. Supp. 2d 414, 425 (E.D.N.Y. 2010), *aff'd*, 500 F. App'x 16 (2d Cir. 2012). Courts in this Circuit have held that, as a prerequisite to bringing a state claim in federal court, individuals suing school districts and their employees for denying a religious exemption from Section 2164's school immunization mandate must first exhaust administrative remedies by appealing that decision to the Commissioner of Education. *Caviezel*, 701 F. Supp. 2d at 425; *see also id.* ("While a failure to exhaust state administrative remedies does not generally bar federal civil rights claims, the Court is aware of no authority providing that this state law claim may be pursued in federal court [without exhausting state administrative remedies]."); *Watkins-El v. Dep't of Educ.*, No. 16-cv-2256, 2016 WL 5867048, at *3 (E.D.N.Y. Oct. 7, 2016) (finding plaintiff failed to show a likelihood of success on a claim challenging the denial of a medical exemption to the Section 2164 vaccination requirement because the plaintiff "did not appeal the determination . . . thereby failing to exhaust his administrative remedies").

As a result, before filing this action, Plaintiffs should have pursued an administrative appeal under Education Law Section 310, which provides that "[a]ny party conceiving himself aggrieved may appeal by petition to the commissioner of education . . . any . . . official act or decision of any officer, school authorities . . . or any other act pertaining to common schools." N.Y. Educ. Law § 310. This provision grants the Commissioner broad powers "to make all matters pertaining to the general school system of the state within the authority and control of the department of education and to remove the same so far as practicable and possible from controversies in the courts." *Donohue v. Copiague Union Free Sch. Dist.*, 47 N.Y.2d 440, 444

(1979) (quoting *Bullock v. Cooley*, 225 N.Y. 566, 576–77 (1919)). As discussed above, both the Education Law and the Public Health Law also specifically authorize parents to appeal decisions to exclude students for insufficient proof of immunization. N.Y. Educ. Law § 310(6-a); PHL § 2164(7)(b).

Plaintiffs argue that the Commissioner of Education lacks jurisdiction over the DOH and Commissioner McDonald (Pls.' MTD Opp'n at 19), but Plaintiffs' Section 3214(3)(c)(1) claims run against the School Defendants. Moreover, as discussed above, the Commissioner of Education can still review a school's exclusion of a child for "lack of proof of required immunizations" and consider the school's basis for that decision, including any reliance on the DOH and Commissioner McDonald's determinations and reasoning. N.Y. Educ. Law § 310(6-a); *see, e.g.*, *Mule* Order. Plaintiffs also argue that the Commissioner of Education lacks jurisdiction over Fourteenth Amendment Due process claims, but again, the issue here is whether Plaintiffs had to exhaust their Section 3214(3)(c)(1) claims *not* their Fourteenth Amendment due process claims. The Commissioner of Education can hear Section 3214(3)(c)(1) claims because Section 310 authorizes the Commissioner of Education to decide the lawfulness of any "official act or decision . . . [by] school authorities . . . under this chapter, or any other act pertaining to common schools," N.Y. Educ. Law § 310(7), and Section 3214(3)(c)(1) falls under the same chapter as Section 310, *id.* § 3214(3)(c)(1).

Plaintiffs also belatedly argue in their PI Motion reply that they "are not required to first exhaust state remedies" but do not give a reason, beyond citing *Kraebel v. New York City Dep't of Hous. Preservation & Dev.*, 959 F.2d 395 (2d Cir. 1992). (Pls.' PI Reply at 3 (citing *Kraebel*, 959 F.2d at 395)). However, *Kraebel* does not apply. In that decision, the Second Circuit only held that plaintiffs are not required to exhaust administrative remedies before bringing a Section

1983 claim in federal court; it did not address any exhaustion requirement prior to bringing a state law claim in federal court. *Kraebel*, 959 F.2d at 404.[64]

Second, Plaintiffs also fail to state a Section 3214(3)(c)(1) claim because the notice and hearing protections established by that statute do not apply when a child is excluded from school due to insufficient proof of immunization. *See* N.Y. Educ. Law § 3214(3)(c)(1) (requiring a fair hearing upon reasonable notice before a "pupil who is insubordinate or disorderly or violent or disruptive, or whose conduct otherwise endangers the safety, morals, health or welfare of others" is "suspend[ed]"). The Amended Complaint alleges that the "School Districts necessarily [] determined" that Plaintiffs' children were endangering the "safety, morals, health or welfare of other students," and Plaintiffs reiterate this claim in their briefing. (Am. Comp. ¶ 102; Pls' MTD Opp'n at 15.) Defendants disagree. They argue that Section 3214(3)(c)(1) governs "disciplinary suspension because of student misbehavior" and non-compliance with the New York immunization requirement is not a disciplinary suspension. (School Defs.' MTD Reply at 4–5.) In fact, they argue, such exclusions are governed entirely by the Public Health Law—not Section 3214(3)(c)(1). (*Id.*)

---

[64] The School Defendants also argue that "aggrieved families may institute an Article 78 proceeding in state court to review a decision by the Commissioner [of Education]." (State Defs.' MTD Mem. at 38 (citing *Vandor, Inc. v. Militello*, 301 F.3d 37, 39 (2d Cir. 2002); *Monr*, 2012 WL 2940020, at *10; *Taylor v. Brentwood Union Free Sch. Dist.*, 908 F. Supp. 1165, 1176 (E.D.N.Y. 1995)).) To the extent the School Defendants argue that Plaintiffs must exhaust their state law claims not only by appealing their exclusion from school to the Commissioner of Education but also by then seeking review of that appeal in an Article 78 proceeding, none of the cases they cite support that proposition. *See Vandor*, 301 F.3d at 39 (holding that a Takings Clause claim was unripe where the plaintiff could have initiated an Article 78 proceeding to compel return of his property); *S.C.*, 2012 WL 2940020 * 10 (holding that Article 78 proceedings afford an adequate post-deprivation remedy in the context of a procedural due process claim); *Taylor*, 908 F. Supp. at 1176 (holding that the plaintiff's state law claims were time barred without discussing exhaustion).

The Amended Complaint fails to provide any factual allegations to support the conclusion that the School Defendants suspended any of the children from school under any of the enumerated grounds in Section 3214(3)(c)(1), such that the notice and hearing procedures set forth in Section 3214(3)(c)(1) apply. There is no allegation that any of the Plaintiffs' children were "insubordinate or disorderly or violent or disruptive," or that they were suspended due to any "*conduct* [that] otherwise endangers the safety, morals, health or welfare of others." N.Y. Educ. Law § 310(3) (emphasis supplied). The Amended Complaint does not address any alleged conduct by the children. Instead, it challenges the fact that the School Defendants required the children to provide proof of immunity following DOH's invalidation of their records of vaccinations administered by DeVuono/Wild Child. Moreover, nowhere in Section 2164 is there a determination that children who lack adequate proof of immunization as set forth in the statute are engaged in "*conduct*" presenting a danger to others as understood under Section 3214(3)(c)(1). Plaintiffs' attempt to shoehorn the School Defendants' alleged conduct to enforce the DOH Directive and Section 2164 into the framework of Section 3214(3)(c)(1) is unpersuasive and belied both by the school notices attached to the Amended Complaint and by New York law, which clearly provides that school staff "shall [not] permit" students who lack appropriate immunization records to attend school. PHL § 2164(7); *see generally* School Notices.

Accordingly, the Amended Complaint fails to state a plausible Section 3214(3)(c)(1) claim against the School Defendants. I therefore dismiss Plaintiffs' Section 3214(3)(c)(1) claims under Rule 12(b)(6). Because the Amended Complaint fails to state a claim for relief under Section 3214(3)(c)(1), I do not reach Defendants' arguments that the Section 3214(3)(c)(1) claims against the Superintendent Defendants in their official capacities should be dismissed as

124

duplicative of the claims against the School District Defendants. (*See* School Defs.' MTD Mem. at 40.)

## IV.    Plaintiffs' Preliminary Injunction Motion

The Second Circuit has long established that a party seeking a preliminary injunction must generally show three things: (1) irreparable harm in the absence of an injunction pending resolution of the action, (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party, and (3) that a preliminary injunction is in the public interest. *See N. Am. Soccer League, LLC v. U.S. Soccer Fed'n*, 883 F.3d 32, 37 (2d Cir. 2018). A higher standard applies to requests for a preliminary injunction that seek to alter government conduct "taken in the public interest pursuant to a statute or regulatory scheme." *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 631 (2d Cir. 2020). In such cases, a plaintiff must show a likelihood of success on the merits. *Id.* Additionally, when a party seeks "mandatory" rather than "prohibitory" preliminary relief, "the likelihood-of-success and irreparable-harm requirements become more demanding still, requiring that the plaintiff show a *clear or substantial* likelihood of success on the merits and make a *strong showing* of irreparable harm." *Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, No. 23-690, 2024 WL 1145347, at *3 (2d Cir. Mar. 18, 2024) (citing *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)) (emphasis in original).

Here, the parties dispute whether the lower standard requiring only a demonstration of serious questions on the merits and a balance of hardships applies to the PI Motion, rather than the higher standard of a likelihood of success on the merits. (Pls.' PI Mem. at 7–8, 10; School Defs.' PI Opp'n at 32–34.) I do not reach this question because all claims in the Amended Complaint are dismissed as addressed above. This Court either lacks subject matter jurisdiction

over the claims or the Amended Complaint fails to plead plausible claims for violation of Plaintiffs' rights under the Fourteenth Amendment Due Process Clause or Education Law Section 3214(3)(c)(1). I therefore dismiss the PI Motion as moot.

## CONCLUSION

For the reasons set forth above, the State Defendant's Rule 12(b)(1) Motion to Dismiss the Amended Complaint (ECF No. 96) and the School Defendants' Rule 12(b)(1) Motion to Dismiss the Amended Complaint (ECF No. 98) are both granted in part and denied in part. Plaintiffs' Fourteenth Amendment due process claims against the Department of Health are dismissed as barred by Eleventh Amendment sovereign immunity. Plaintiffs' request for declaratory relief in paragraph 109 of the Amended Complaint and request for a preliminary and permanent injunction in paragraph 113 of the Amended Complaint are dismissed because Plaintiffs lack standing to seek such relief against the State Defendants. Plaintiff Gina Larsen's claims against the School Defendants are dismissed as moot. All other bases for Defendants' Rule 12(b)(1) Motions are denied.

Furthermore, I resolve the following issues relating to subject matter jurisdiction sua sponte. Plaintiff Gina Larsen's claims against the State Defendants are dismissed as moot and the declaratory relief sought in paragraph 112 of the Amended Complaint is dismissed because Plaintiffs lack standing to seek such relief against the School Defendants.

Additionally, for the reasons set forth above, the State Defendants' Rule 12(b)(6) Motion to Dismiss the Amended Complaint (ECF No. 96) and the School Defendants' Rule 12(b)(6) Motion to Dismiss the Amended Complaint (ECF No. 98) are granted as to all of Plaintiffs'

claims. Accordingly, Plaintiffs' Motion for a Preliminary Injunction (ECF No. 75) is dismissed as moot.

Dated:  Central Islip, New York
        June 26, 2025

                                         /s/ Nusrat J. Choudhury
                                        NUSRAT J. CHOUDHURY
                                        United States District Judge